Docket No. 22-2254

# In The
# United States Court of Appeals
# for the Federal Circuit

**STUART R. HARROW,**

*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**

*Respondent*

Petition for Review of the
Merit Systems Protection Board
Final Order PH-0752-13-3305-I-1 before
Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

## RESPONSE TO ORDER TO SHOW CAUSE

Stuart R. Harrow, [NTC Pro Se]
Direct: 718-805-2957
Email: stuart.harrow@gmail.com
83-44 Lefferts Boulevard
Apartment 1-B
Kew Gardens, NY 11415

# UNITED STATES COURT OF APPEALS

# FOR THE FEDERAL CIRCUIT

| | | |
|---|---|---|
| STUART R. HARROW | | |
| Petitioner | | DOCKET NUMBER |
| v. | ‖ | 2-2254 KH |
| DEPARTMENT OF DEFENSE | | |
| Respondent | | |

# RESPONSE TO ORDER TO SHOW CAUSE

This Court's Show Cause Order issued on November 21, 2022 requested an answer as to why this case should not be dismissed for lack of jurisdiction. Your Appellant, Stuart R. Harrow ("Harrow") respectfully submits his argument to avert dismissal. Rather than counter the requirements of Rule 26, this response aims to map out a clear and convincing path, enabling the Court to evaluate the arguments pro and con toward allowing the Court to use its discretion in considering the exceptional circumstance surrounding Harrow's late filing; and to rule in favor of reinstating the case, allowing it to proceed to briefing, hearing and judgment.

Recognizing the overwhelming weight of case law and legal scholarship favoring dismissal, a realistic objective would be to propose a legally sustainable option to enable the Court to justify a decision to allow filing. Basically, to extend an opening, as in "open for me an opening of repentance the size of the point of a needle and I'll open for you doorways which are large enough that wagons can enter" (Shir HaShirim Rabbah 5:2)

The points of law and arguments in support of this response are attached

## **Points of Law and Arguments Regarding Jurisdiction**

TABLE OF CONTENTS

I.  Preliminary Statement .................................................................6

II.  THE ISSUE ..........................................................................7

A.    Harrow failed to notify MSPB of his new email address, resulting in a defective service; delaying his awareness of the final order by 111 days ..........7

B.    Lapse of quorum ...............................................................8

C.    From the time of awareness to appeal 17 days ..................................9

III. DISARMAMENT .....................................................................10

A.    Like a nuclear missile poised to strike, the strict and unyielding application of Rule 26 ends in this case's dismissal. Can it be disarmed? ..........10

1......... The same Congress that has limited the Court's jurisdiction has also explained how and when to take exceptional circumstances into account ................... 11

2......... Neither an assurance of victory, nor an instrument of punishment, statutes of limitation have protected litigants since Richard I's times ................... 15

B.    But there's another side to the story, and it must be told: split courts in Bowles and Fedora; merit; and a varied treatment of jurisdiction ..................16

1.........Disparities in Bowles and Fedora suggest that rather than binding, these precedents could be persuasive; allowing for judicial discretion ................... 16

2.........When balancing merit and procedure, please take the 'Motion for Granting an Extension of Time' into account: done efficiently, neither loses ................... 19

3.........Several venues trigger the statute of limitations with the discovery of the cause of action; excusable neglect can contribute to ignorance... 21

C.    Jointly and severally, can these arguments be combined to form a "convincing mosaic" enabling the Court's discretion in permitting filing?.........23

IV. Benefit to the Appellant .........................................................................23

A.    Work done, 33 Phil to 1 .................. **Error! Bookmark not defined.**

B.    Hearing lost appellant demur to MFR ........... **Error! Bookmark not defined.**

C.    One reason for time limits – stale evidence > MSPB quorum OBE **Error! Bookmark not defined.**

V.  Benefit to the DoD Workforce.................................................................25

    A.       MSPB frivolous .................................................................25

    B.       Note statistics – 99.7%.................... **Error! Bookmark not defined.**

    C.       POMA indicates Congress recognition of DoD workforce value...26

VI. Benefit to the Court.................................................................................26

    A.       Burden of proof for show cause – open to discretion.............. **Error! Bookmark not defined.**

    B.       Establish 'honest broker' entertain 'non frivolous' appeal ..... **Error! Bookmark not defined.**

    C.       Ability to balance procedure with merit 'handmaid to mistress **Error! Bookmark not defined.**

    D.       Substantive justification for the court's initial docketing decision **Error! Bookmark not defined.**

VII.    Conclusion – Cohen – American Indian.............................................28

    A.       Civil servant, too, is canary ............ **Error! Bookmark not defined.**

    B.       Mosaic joins argument.................... **Error! Bookmark not defined.**

VIII.    Respect the Court – A Plea in Five Stanzas ....................................30

## I.    PRELIMINARY STATEMENT

Your appellant, Stuart R. Harrow ("Harrow") recognizes the force of the Court's

argument for dismissal. On its side are the clarity of Rule 26 (b); the Supreme

Court's determination that time-based statutes of limitation are jurisdictional – see

*Bowles v. Russell*, 432 F.3d 668 (6th Cir. 2005); as well as the Government's right

to be free from the surprise of a lawsuit after the limitation period, see *Walker v.*

*Armco Steel Corp.,* 466 U.S. 740, at 751, n. 12

Can the excusable neglect of your appellant outweigh the statutory right of

the Government to enforce its limits? Yale Dean (later 2nd Circuit Judge) Charles

E. Clark quotes Sir Richard Henn Collins, Master of the Rolls (MR), in the English

Court of Appeals case, *In re: Coles and Ravenshear* [1907] 1 K.B. 1, at 4, in his

article, The Handmaid Of Justice, 23 Washington U. L.Q., 297 [1938] at 297:

'Although I agree that a Court cannot conduct its business without a code of
procedure, I think that the relation of rules of practice to the work of justice is
intended to be that of handmaid rather than mistress, and the Court ought not to be
so far bound and tied by rules, which are after all only intended as general rules of
procedure, as to be compelled to do what will cause injustice in the particular case.

The premise that rules of practice must be the 'handmaid" to the work of justice (and by extension) to equity is compelling; but how to apply this in practical terms? Ultimately there is a calculation to be made – does equity color its adherence to the statute of limitations in the face of extenuating circumstances?

I implore the Court to make this calculus.

## II.    THE ISSUE

Harrow's case is an appeal from a decision by the Merit Systems Protection Board (MSPB). The MSPB'S Final Order was issued on May 11, 2022 (ECF 5?). I submitted my Petition for Review to this Court on September 16, 2022. In response to my Petition, the case was docketed on September 27, 2022 as Case # 22-2254; the elapsed time from Final Order to Petition for Review was 128 days.

His Entry of Appearance was October 11, and the Certified List was received on November 3. Eighteen days later, on November 21, Harrow received the Court's Sua Sponte Show Cause letter (ECF 7). The Court's central issue is that its "statutory deadline is mandatory and jurisdictional and not subject to equitable tolling." (ECF 7 at 1)

A.    <u>Harrow failed to notify MSPB of his new email address, resulting in a defective service; delaying his awareness of the final order by 111 days</u>

Although the MSPB issued its decision on May 11, 2022, Harrow did not receive notice of its issuance. Since the inception of his case, he had participated in

the MSPB's e-Appeal Online system. The system had used his email address for all its correspondence. In February 2018, the Defense Contract Management Agency (DCMA) changed its email service to the Defense Information Services Agency (DISA); so stuart.harrow@dcma.mil became stuart.r.harrow@mail.mil. True to their word, DISA continued to forward emails addressed to the old address. They did that for two years, and then stopped. Harrow was careful to inform his correspondents of the new address EXCEPT ONE. Clearly, that exception forms the crux of this issue. He did not inform the MSPB of the changed address.

Harrow mistakenly believed that the emails addressed to the old address would be forwarded to his current email address. That was not the case. Harrow tried sending a test message to his old address and it was not forwarded – it was a dead letter; the message evaporated into e-space. He called his Help Desk. They said they had stopped forwarding emails for the old address a while ago. The Board responded to his claim defective service. See email dated 01 SEP 2022.

The Agency attorney, Ms. Lida Kianoury, also reported that she had not received notification, presumably, for the same reasons. See email dated 31 AUG 2022.

B.    <u>Lapse of quorum</u>

Between January 7, 2017, and March 3, 2022, the Board did not have a quorum of members and therefore could not vote on any petitions for review. *See*

U.S. MSPB: Frequently Asked Questions about the Lack of Board Quorum and Lack of Board Members. The last notice Harrow received from the e-Appeal system was to inform him of the quorum's lapse. Sent in January, 2017, it was sent before the email change, so it was addressed properly. Harrow was fully aware of the quorum's restoration – he attended the May 11, 2022 "Meet the New MSPB Board Members" Webcast sponsored by the Federal Circuit Bar Association.

    C.    <u>From the time of awareness to appeal 17 days</u>

Yet the imminence of a Final Order had not dawned upon him. He was told at the webcast of the backlog of cases (close to 3,500 accumulating over the five-year lapse) and presumed, incorrectly, in retrospect, that a decision in his case would be long in coming. He had underestimated the efficiency of the new Board. When he had not heard from the Board by late August, he felt a check to its case register of decided Petitions for Review (PFRs) would be appropriate. And so he discovered the existence of his order.  See email August 30, 2022 8:57 PM to MSPB, "Final Decision -- Request for Proof of Service." There was a flurry of emails culminating in Harrow's 'Motion for Granting an Extension of Time to File an Appeal' faxed to the MSPB on September 8, 2022, and their subsequent response, on September 8, 2022, declining to consider the motion, see ECF at 2.

Clearly, these are unusual circumstances. Had the MSPB quorum been in place, his PFR, as submitted on August 23, 2016, would have long since been gone by the time the email addresses were changed. But it wasn't and it didn't.

Harrow submitted his request to this Court on September 16, 2022, see 'Unrepresented Party Requests Permission to File a Petition for Review,' ECF at 1. The elapsed time from the awareness of the Final Order to the request was 17 days.

## III. DISARMAMENT

At the outset, Harrow knows that the requirements of Rule 26 apply in equal force to represented and pro se litigants. He is not asking for special treatment, nor is he asking for dispensation from the rules of procedure or court imposed deadlines, see *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994)

> Although civil litigants who represent themselves ("pro se") benefit from various procedural protections not otherwise afforded to the ordinary attorney-represented litigant, e.g., *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972) (per curiam) (requiring liberal construction of pro se litigant pleadings); *Timms v. Frank*, 953 F.2d 281, 283-84 (7th Cir. 1992)(extending rule of Lewis v. Faulkner,689 F.2d 100 (7th Cir. 1982), cert. denied sub nom. *Timms v. Coughlin*, U.S., 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992), requiring all pro se litigants to receive notice of summary judgment procedures before court may grant judgment against them), pro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines

Rather, he asks for the opportunity to explore an alternate pathway to its interpretation, and to allow the use of the provisions within the Federal Rule of Appellate Procedure that enable the court to account for exceptional circumstances.

A.    <u>Like a nuclear missile poised to strike, the strict and unyielding</u>

<u>application of Rule 26 ends in this case's dismissal. Can it be disarmed?</u>

Harrow notes that "strict and unyielding" application of the law does not

always yield the preferred outcome.

> However, in some cases, the FTC has shown itself, through its strict and unyielding interpretation of the law, to be the guardian of large and ever expanding businesses in particular sectors of our economy at the expense of true competition, lower cost to consumers, and quality improvements in services.

H. Rep. 104-754, *F.T.C. Reauthorization Act of 1996, H. Commerce Comm.,* 104th Cong, to H.R.3553 (Additional Views of the Hon. Charlie Norwood) at 8

1.    <u>The same Congress that has limited the Court's jurisdiction has also</u>

<u>explained how and when to take exceptional circumstances into account</u>

The authority of the Court to promulgate rules for the courts of appeals

became complete with the passage of the Act of November 6, 1966, which became

Pub. L. 89-773, § 1, 80 Stat. 1323. That act amended 28 U.S.C. § 2072. See n.1

Bernard J. Ward, The Federal Rules of Appellate Procedure, 54 American Bar

Association Journal, (JULY 1968), 661, at 661. The Act provides that

> The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts and courts of appeals of the United States in civil actions, including admiralty and maritime cases, and appeals therein, and the practice and procedure in proceedings for the review by the courts of appeals of decisions of the Tax Court of the United States and for the judicial review or enforcement of orders of administrative agencies, boards, commissions, and officers."

So that each of the avenues in the Federal Rules of Appellate Procedure that provide for a review and accommodation of extenuating circumstances have the equal force of those delimiting provisions.

<u>The argument for suspending the jurisdictional / claim-processing / mandatory trichotomy hinges upon how the rules of procedure become law</u>

Original jurisdiction stems from section 1295(A)(9) Of Title 28, U.S. Code, providing that the Federal Circuit shall have exclusive jurisdiction of appeals from MSPB Final Orders and decisions pursuant to 5 U.S.C. § 7703(B)(1) (relating to board orders and decisions not involving discrimination).

Well after the sixty-day appeal period, this appeals butts against the requirements of 5 U.S.C. § 7703(b)(1)(A), which requires that "[n]otwithstanding any other provision of law, any petition for review shall be filed within 60 days after the Board issues notice of the final order or decision of the Board"

Your appellant respectfully argues for the application of the provisions of the Federal Rule Of Appellate Procedure 4: (5) Motion for Extension of Time; (A) The district court may extend the time to file a notice of appeal if: (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

The Court argues that the provisions of 5 U.S.C. § 7703 confront this Court's "subject-matter jurisdiction" *** directly affecting its "power to hear a case, [and] can never be forfeited or waived." United States v. Cotton, 535 U. S. 625, 630. Moreover, courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party. Arbaugh v. Y H Corp., 546 U.S. 500, 501 (2006). Having established original jurisdiction, under what circumstance does the lapse of time remove that jurisdiction?

Oliver Wendell Holmes posed the question in a characteristically pithy and poignant way: "What is the justification for depriving a man of his rights, a pure evil as far as it goes, in consequence of the lapse of time?" Oliver W. Holmes, Jr., The Path of the Law, 10 HARV. L. REV. 457, 476 (1897); as quoted in Tyler T. Ochoa and Andrew Wistrich, The Puzzling Purposes of Statutes of Limitation, 28 Pac. L. J. 453 (1997), n.1, at 454

Scott Dodson, Professor of Law at the University Of California Hastings College Of Law, offers a cogent argument for tempering what he calls the Supreme Court's 'jurisdiction-first approach.' Brief for Professor Scott Dodson as Amicus Curiae in Support of Neither Party; cert to Davis v. Fort Bend Cnty., 765 F.3d 480 (5th Cir. 2014), at 3.

Rather than take a jurisdiction-first approach, this Court should take an effects-based approach that avoids the jurisdictional issue and instead

construes the effects of the rule directly. This Court has taken such an approach before. In Hallstrom v. Tillamook County, 493 U.S. 20 (1989), the Court was presented with the question of whether RCRA's 60-day notice requirement was a limit on federal subject-matter jurisdiction. However, the Court declined to answer that question and instead answered the narrow question presented by the facts of the case: whether the requirement was amenable to equitable exceptions. Id. at 31. The Court answered that question directly without addressing the jurisdictional character of the notice requirement.

Likewise, the petition for certiorari in John R. Sand asked this Court to decide "[w]hether the statute of limitations in 28 U.S.C. § 2501 limits the subject matter jurisdiction of the Court of Federal Claims." Pet. Br. at i, John R. Sand & Gravel Co. v. United States, No. 06-1164, 2007 WL 2236607 (Aug. 3, 2017). The precise issue in that case, however, was whether a court must enforce the limitations period even if the United States, as a party-defendant, waives the issue. In its opinion, the Court rephrased the question presented to reflect these terms and resolved that issue alone. John R. Sand, 552 U.S. at 132. In the process, this Court carefully avoided characterizing the limitations period as jurisdictional or nonjurisdictional. Id. at 133-35 (characterizing the time bar as a "more absolute" bar that justifies departure from usual waiver rules); cf. id. at 134 (suggesting that prior cases' use of the term "jurisdictional" was "[a]s convenient shorthand").

Regarding the term "mandatory and jurisdictional," Professor Mark A. Hall, Wake Forest Law School, points out that its first use was in Vaughan v. American Ins. Co., 15 F. 2d 526 - Circuit Court of Appeals, 5th Circuit (1926)

it is well settled that statutes limiting the time in which appeals and writs of error may be brought are mandatory and jurisdictional. The statute begins to run from the date of the judgment, and the time cannot be extended by waiver, by agreement of the parties, nor by order of the court.

He notes that rather than sua sponte, "the actual issue was the court's authority on application of the parties to extend the time for perfecting an appeal; no question of waiver by the parties existed." He argues that "by their habitual

repetition of "mandatory and jurisdictional," the federal courts have confused two distinct questions: the authority to excuse untimely appeals once raised and the authority to notice untimely appeals sua sponte. The phrase properly understood implicates only the former. Mark A. Hall, The Jurisdictional Nature of the Time to Appeal, 21 GA. L. REV. 399, (1986), at 410

The best characterization of the continuing, and for the purposes of this response, the yet to be fully resolved, nature of 'jurisdiction,' was best captured by Mr. Justice Frankfurter when he said, "I do not use the term "jurisdiction" because it is a verbal coat of too many colors" United States v. Tucker Truck Lines, 344 U.S. 33, 39 (1952) (Frankfurter, J., dissenting) (about "jurisdiction")

2.  Neither an assurance of victory, nor an instrument of punishment, statutes of limitation have protected litigants since Richard I's times

The laws limiting actions, which relate to title or contract, are merely the creation of statute. At the common law, though there was no such limit, except in the single instance of a fine, with proclamations, yet, in the case of torts, the maxim, "actio personalis moritur cum persona," [a personal right of action dies with the person] applied, and the action was there limited by the duration of the life of either party.

Presumption also, and probably the trial by wager of law, operated as a check on stale demands. When the abuses from stale demands become unendurable, the legislature did not at first fix any certain and progressive period within which actions should be commenced, but from time to time chose for that purpose certain notable times; and in this way, by virtue of various statutes. the beginning of the reign of King Henry the First, the return of King John from Ireland, the journey of Henry the Third into Normandy, and the coronation of King Richard the First, were successively chosen for barring suits and actions, the cause of which arose previous to their respective dates. The early statutes applied to realty

alone, and, though productive of immediate relief, the advantage was only temporary, and in the reign of Henry the Eighth a more commodious course was taken, so that in the language of Lord Coke, "by one constant law certain limitations might serve both for the time present and for all times to come." 2 Inst. 95. This was effected by the statute 32 Hen. VIII. c. 2, by which the limitation of time, in every case, was reduced to a fixed interval between the accrual of the right and the commencement of the action. These intervals were, in the various cases, periods of thirty, fifty, and sixty years. The statute 21 James I. superseded all prior statutes, and, with some exception is substantially in force or followed in many of the State, and practically in all of them; and, except where essential changes have been made, the decisions of the English courts under that statute are generally accepted by our courts as affording sound rules of construction. Walden v. Gratz's Heirs, 14 U.S. (1 Wheat) 292, 4 L. Ed. 94. In the statute 21 James I. c. 16, the rights of the crown were to be barred at the expiration of sixty years from the beginning of the then session, viz., February 19, 1623. The limit of legal memory still dates from the time of Richard I.

H. G. Wood, A Treatise on the Limitation of Actions at Law and In Equity, Fourth Edition, (1916) § 2. History and origin of statutes of limitation, 4-6

B.      <u>But there's another side to the story, and it must be told: split courts in Bowles and Fedora; merit; and a varied treatment of jurisdiction</u>

Solicitor General Mr. Paul D. Clement notes that "Even if Section 2107 and Rule 4(a)(6) are not jurisdictional, they still create a mandatory procedural rule that must be enforced." He argues the Bowles is "not a case in which the jurisdictional label is necessary to rescue an argument from forfeiture." Brief For the United States as Amicus Curiae Supporting Respondent at 10-11, Bowles, 127 S. Ct. 2360 (No. 06-5306), 2007 WL 608162.

1.  <u>Disparities in Bowles and Fedora suggest that rather than binding, these precedents could be persuasive; allowing for judicial discretion</u>

*Lair v. Bullock* 697 F.3d 1200, 1201 (9th Cir. 2012) illustrates the action of a court, recognizing the strong possibility of a case succeeding on its merits, to temper its competing case, *Randall v. Sorrell,* 548 U.S. based on the holding of a split court. The Court explains:

> *Marks v. United States* held that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (internal quotation marks omitted). The Supreme Court has acknowledged that in some cases "[t]his test is more easily stated than applied," and that under certain circumstances it may not be "useful to pursue the *Marks* inquiry to the utmost logical possibility." *Nichols v. United States*, 511 U.S. 738, 745–46, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (recognizing that where the application of the *Marks* test to a prior splintered decision "ha[d] so obviously baffled and divided the lower courts that ha[d] considered it," there is reason to reexamine that prior decision). *Lair v. Bullock,* 697 F.3d 1200, 1204-05 (9th Cir. 2012)

Bowles v. Russell, 551 U.S. 205, 215 (2007) is such a case, see "Justice Souter, with whom Justice Stevens, Justice Ginsburg, and Justice Breyer join, dissenting," at 217. The dissent argues at length to say that

> far from defining the set of cases that may be adjudicated, is much more like a statute of limitations, which provides an affirmative defense, see Fed. Rule Civ. Proc. 8(c), and is not jurisdictional, Day v. McDonough, 547 U.S. 198, 205, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006). Statutes of limitations may thus be waived, id., at 207-208, 126 S.Ct. 1675, or excused by rules, such as equitable tolling, that alleviate hardship

and unfairness, see Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Bowles, at 219

Professor Scott Dodson notes that "By eliding the complexity and far reach of jurisdictional characterization issues, Bowles creates tension with precedent and increases the risk of wasted litigant and judicial resources." Scott Dodson, Jurisdictionality and Bowles v. Russell, 102 Nw. U. L. Rev. Colloquy 42 (2007), at 43. He adds that "Withholding a jurisdictional characterization without a specific designation of jurisdiction by Congress ensures that Congress has duly considered these costs [disruption, unfairness, and tremendous waste of time and resources] and deemed them outweighed by the need for the benefits of a jurisdictional bar." Jurisdictionality at 46.

Further, he brings five cases to show how the "Court had tried to curtail that misuse by providing clearer guidelines as to when a limit was jurisdictional or not: See., e.g., Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 127 S. Ct. 1184 (2007) (admitting that phrases from precedent using the term "jurisdiction" were "less than 'felicitously' crafted"); Arbaugh v. Y&H Corp., 126 S. Ct. 1235, 1242 (2006) (confessing that the Court had "sometimes been profligate in its use of the term [jurisdictional]"); Eberhart v. U.S., 126 S. Ct. 403, 407 (2005) (per curiam) (noting that the lower court's improper characterization of a federal rule as jurisdictional "is an error shared among the circuits, and that is was caused in large part by imprecision in our prior cases"); Kontrick v. Ryan, 540 U.S. 443, 454

(2004) ("Courts, including this Court, it is true, have been less than meticulous . . . they have more than occasionally used the term 'jurisdictional' to describe emphatic time prescriptions in rules of court.")

Weighing the exceptional circumstances, can the discovery accrual rule be used to reset the petition due date to a more equitable deadline?

Citing six cases in support of his assertion, Professor Perry Dane, Rutgers Law School, says that the doctrine of jurisdictional time limits "has its chinks." Dane, Perry (1994) "Jurisdictionality, Time, and the Legal Imagination," Hofstra Law Review: Vol. 23: Iss. 1, Article 1.

> See, e.g., Vlaicu v. INS, 998 F.2d 758 (9th Cir. 1993) (finding that time limit for filing notice of appeal is mandatory and jurisdictional, but in "unique circumstances," if party is misled by court's conduct or words, appellate tribunal might have jurisdiction to hear an otherwise untimely appeal); Pinion v. Dow Chemical, 928 F.2d 1522 (11th Cir. 1991) (articulating "unique circumstances" exception to "strict," "jurisdictional" time limit, to be employed only when court has lulled a party into failing to file a timely appeal yet declining to apply exception to case at bar); Buckeye Cellulose Corp. v. Braggs Electric Const. Co., 569 F.2d 1036, 1038-39 (8th Cir. 1978) (holding that in certain "unique circumstances," district court can vacate and reenter the original order to create a fresh judgment from which a timely appeal might be perfected); In re Jordan, 840 P.2d 983 (Cal. 1992) (discussing doctrine of "constructive filing," sometimes available under California law when failure to file is due to negligence of counsel); Whitaker v. Human Rights Comm'n., 540 N.E.2d 361 (111. App. Ct. 1989), appeal denied, 545 N.E.2d 134 (11. 1989) (discussing narrow estoppel exception to jurisdictional time limits); cf. James v. United States, 459 U.S. 1044 (1982) (Brennan, J., concurring in denial of cert.).

## 2.   When balancing merit and procedure, please take the 'Motion for Granting an Extension of Time' into account: done efficiently, neither loses

Harrow's 'Motion for Granting an Extension of Time' (at ECF 2) provided his reasons for extending the time limit for filing his petition. He notes that one author suggests that there is "some confusion" regarding the thirty-day time limit in the Federal Rules of Civil Procedure

There is actually some confusion in this regard. The Supreme Court first promulgated a thirty-day appeal period in its 1946 amendment of former Fed. R. Civ. P. 73(a), shortening the time to appeal from three months. For reasons no one has adequately explained, Congress, rather than repealing the longer appeal period then provided by statute, later amended the statutory codification to conform to the rule. See 28 U.S.C. § 2107 (1982); 9 Moore's Federal Practice, (2d ed. 1986) 203.25. Nevertheless, Appellate Rule 4(a) remains the source of the limitations period.

This is true for several reasons. First, empirically, it is Rule 4(a) that the courts cite. Second, at the time the rule was promulgated, the longer statutory period was rendered nonfunctional. Amending the statute did not bring it back into play. Third, the Rules Enabling Act expressly gives the rules precedence. "All laws in conflict with [the] rules [promulgated by the Supreme Court] shall be of no further force or effect .... Nothing in [Title 28] ... shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court." 28 U.S.C. § 2072 (1982). Section 2107 is in conflict with rule 4(a) because the statute does not contain the provisions tolling the running of the appeal period during post-trial motions, a primary source of potential waiver problems. For these reasons, it appears the statutory redundancy of the thirty-day appeal period is simply irrelevant. Even if the thirty-day period to appeal is viewed as having a statutory origin, this is not dispositive of the argument. Although the easiest case against a jurisdictional stature exists for a rule-based limitations period, statutory limitations periods may also be nonjurisdictional, as will soon be seen, though this conclusion is less certain because it depends on a construction of the statute rather than

being inherent in the source of the limitation. Mark A. Hall, The
Jurisdictional Nature of the Time to Appeal, 21 GA. L. REV. 399 (1986).
n.60, at 412

    3. <u>Several venues trigger the statute of limitations with the discovery of</u>

<u>the cause of action; excusable neglect can contribute to ignorance</u>

    Cause of action occupies a prominent place in determining when the statute

of limitations accrue.

    A very important definition often found in the statutes is that of the
time when a cause of action is deemed to have accrued, or claim to have
arisen, for it is from that point that the statutory period is computed.
Accrual of actions based on accounts may be at the time of the last item
proved on the adverse side, of the last item proved on either side, or at the
last transaction or payment. The cause of action for recovery of a bank
deposit may accrue at demand. Actions for a statutory penalty or a
common law liability against corporation directors or stockholders
commonly accrue at the discovery of the facts by the person aggrieved.
Real property actions are deemed to have accrued at disseisin, at the death
of a predecessor in interest who died seised or possessed, at the
termination of an intermediate estate regardless of a forfeiture or breach
of condition giving a right of entry or action, at the time of such forfeiture
or breach if benefit of them is sought, at the time the ancestor or
predecessor in interest first gained the right to title or possession, or at any
other time when the claimant became entitled to entry or possession. An
action for waste or trespass accrues only at the time the facts are
discovered by plaintiff. Actions seeking relief based on grounds of fraud
or mistake are deemed to have accrued when the facts constituting such
fraud or mistake are discovered by plaintiff. Definition of "Accrual" or
"Arising" of Cause or Claim, William W. Blume & B. J. George Jr.,
Limitations And The Federal Courts, 49 Mich. L. Rev. 937 (1951), at 979

Harrow argues that these categories are not necessarily exclusive, and considering

an exceptional circumstance, such as failure to receive notice of the Final Order in

a timely manner, may be applied to the instant case. In Mayle v. State of Illinois,

956 F.3d 966 (7th Cir. 2020), the Court granted the extension because the plaintiff had "changed his address and his mail had been misrouted or not forwarded to the proper address," and because the plaintiff was on a business trip the week leading up to the deadline, which had "delayed him from access to his legal filings."

      a.    <u>Harrow failed to notify MSPB of his new email address, resulting in a defective service; delaying his awareness of the Final Order by 111 days</u>

Harrow's failure to notify the MSPB of his new address resulted in a misdirected email. He recognizes a flaw in his argument, in that Federal Circuit Rule 25 (e) Service. (1) Electronic Filings, provides that

> A filing does not require proof of service if it is served on all parties through the court's electronic filing system. Service of a filing to a user's email address registered with the court's electronic filing system at the time of the filing constitutes valid service, even if the user has failed to timely provide an updated valid email address and the served email address is invalid.

He argues that the extenuating circumstances of a prolonged absence from the MSPB's e-Appeal Online system would mitigate in his favor.

      b.    <u>IF the failure to notify of a changed email is excusable; AND the clock re-starts at the cause of action; THEN the petition is timely filed</u>

Satisfying these the two conditions would give the Court a plausible means of relieving the lateness; and provide no legal impediment to continuing the case.

C.    <u>Jointly and severally, can these arguments be combined to form a</u>

<u>"convincing mosaic" enabling the Court's discretion in permitting filing?</u>

Bits and pieces of evidence can combine to form a convincing argument. See

Troupe v. May Dep't Stores Co., 20 F.3d 734, 736-37 (7th Cir. 1994) (allowing a

case to survive summary judgment because the plaintiff presented a "combination

of ambiguous statements, suspicious timing, discrimination against other

employees, and other pieces of evidence none conclusive in itself but together

composing a convincing mosaic of discrimination against the plaintiff"). But see

Sylvester v. SOS Children's Vills. Ill., Inc., 453 F.3d 900, 904 (7th Cir. 2006) ("(I]t

was not the intention in Troupe to promulgate a new standard, whereby

circumstantial evidence in a discrimination or retaliation case must, if it is to

preclude summary judgment for the defendant, have a mosaic-like character.")

## IV.  BENEFIT TO THE APPELLANT

Aside from the opportunity to present his case, Harrow argues that there is a

professional benefit to be had in presenting a case before a Federal Court

A.    <u>Harrow's Pre-hearing statement enabled the Administrative Law Judge to disaggregate the his appeal from 33 Philadelphia appellants to one</u>

Harrow performed extensive research to determine the best way to proceed; the vast majority of cases relied on Debra J. Chandler v. Department of the Treasury, 2013 MSPB 74. He looked for an alternative approach to this case.

B.    <u>Notified of the hearing tape's loss, Harrow demurred, rather than object to using the ALJ's Memorandum of Record Summarizing the Hearing</u>

When given the choice of demanding a new hearing, Harrow chose to use the Administrative Law Judge's Memorandum of Record, thereby expediting the Initial Decision. Final Order at 4

C.    <u>A principal reason for time limits is to avoid reliance on stale evidence; yet the MSPB's lapse of a quorum prolonged the case by five years</u>

The following propositions have appeared so frequently in opinions that they must be taken to state at least a verbal consensus as to the policy of the statutes:

1. They are designed to protect against stale claims after evidence has been lost, memories have faded and witnesses have disappeared.

2. They are statutes of repose and not of presumption

The author notes that these propositions are composites rather than direct quotes; but their substance appears, wholly or in part, in many opinions, including those cited below.

24

Chase Securities Co. v. Donaldson, 325 U.S. 304 (1944); Telegraphers v. Ry. Express Agency, 321 U.S. 342 (1943); Guaranty Trust Co. v. U.S., 304 U.S. 126, (1937); Bell v. Morrison, 26 U.S. 350 (1828); Summers v. Connolly, 159 Ohio St. 396, 112 N.E. 2d 391 (1953). Charles C. Callahan, Statutes of Limitation-Background, 16 Ohio State Law Journal, 130 (1955), at 133

## V.    BENEFIT TO THE DoD WORKFORCE

Allowing Harrow's case to proceed can have benefit to the DoD workforce

A.    Allowing Harrow's case to proceed would challenge Acting Chairman Mr. Robbins' contention that all furlough-related appeals were frivolous

On his last day in office, in testimony before the House Committee on Oversight and Reform, Subcommittee on Government Operations, on February 28, 2019, then-MSPB Acting Chairman, Mark Robbins was asked by Congressman Glenn Grothman (WI-06), "Do you, in your own mind, think that *** a high number of these appeals, if that's what I can call them, are frivolous or not much to them?" He responded:

Mr. Robbins. You know, I believe that the vast majority of employees who file an appeal with us believe that they've been wronged. I don't think there's bad faith.

And then he added:

Mr. Robbins. You know, again, pointing to frivolity in filing, I would just go to the poster child, which was the sequestration for those 33,000 cases, and none of them had merit

B.    MSPB decided 99.3% of the 32,241 appeals, including 4,526 from DoD civilians in the agency's favor; yet Harrow's new approach might prevail

The FY 13 furlough disrupted much more than the routine of 624,404 Department of Defense (DoD) civilians for six days. Its adjudication proved especially challenging for the appellants, their agencies, and the Merit Systems Protection Board (MSPB). Yet the MSPB succeeded in resolving 99.3% of the 32,241 appeals from all employees, including 4,526 from DoD civilians in the agency's favor. Facing this, any appellant would have small chance of prevailing without a fresh approach to his or her appeal. Harrow's appeal, if allowed to proceed, would present such an approach.

C.    Following the six-day DoD civilian workforce FY 13 furlough, Congress passed the POMA to indicate its recognition of DoD workforce's value

Public Law No: 113-39 Pay Our Military Act (POMA), provided that civilian personnel and contractors of the Department of Defense (DOD) be paid for any period during which interim or full-year appropriations for FY2014 are not in effect, specifically, the FY 2014 furlough,  on the basis that they "contribute to the morale, well-being, capabilities and readiness of service members."

## VI.  BENEFIT TO THE COURT

Harrow would be remiss without attempting to show that allowing his appeal to proceed would benefit the court.

A.    <u>Acknowledging Harrow's response to the court would demonstrate its ability to discern when discretion could be applied to excusable neglect</u>

Citing excusable neglect, the 9th circuit upheld the "exercise of the district court's discretion to permit the filing of the notice of appeal in this case" Pincay v. Andrews, 389 F.3d 853, 855 (9th Cir. 2004)

B.    <u>The court's role as 'honest broker' is highlighted in its entertainment of pro se appeals. In effect, it is representing weaker stakeholders</u>

Leadership is also important for empowering and representing weaker stakeholders.

> Where incentives to participate are weak, power and resources are asymmetrically distributed, and prior antagonisms are high, leadership becomes all the more important. The requisite leadership qualities may depend on the precise context. The more that stakeholders fundamentally distrust each other, the more leadership must assume the role of honest broker. Chris Ansell and Alison Gash, Collaborative Governance in Theory and Practice; 18 Journal of Public Administration Research and Theory, 543 (2007), at 555

C.    <u>This cute limerick pictures how this Court could have the ability to balance procedure with merit; in concert with 'handmaid to mistress'</u>

There was a young student from Ealing

Who got on the bus to Darjeeling

The sign on the door

Said 'Don't spit on the floor'

So he lay back and spit on the ceiling

William Twining and David Miers, How to Do Things with Rules, at 68

D.    <u>The inner workings of the court appear as a "riddle, wrapped in a mystery, inside an enigma;" but continuation would justify the docketing</u>

Harrow cannot presume to know how the Court made its initial determination to docket his case. Nonetheless, allowing this case to proceed would certainly justify that determination.

## VII. CONCLUSION – COHEN – AMERICAN INDIAN

Felix Cohen was Chief of the Indian Law Survey. He compiled the federal laws and treaties regarding American Indians, resulting in The Handbook of Federal Indian Law.

A.    <u>He portrays the treatment of the American Indian, using the analogy of a miner's canary; can it be applied to the Federal civil servant?</u>

It is a pity that so many Americans today think of the Indian as a romantic or comic figure in American history without contemporary significance. In fact, the Indian plays much the same role in our American society that the Jews played in Germany. Like the miner's canary, the Indian marks the shifts from fresh air to

poison gas in our political atmosphere; and our treatment of Indians, even more than our treatment of other minorities, reflects the rise and fall in our democratic faith. Felix. S. Cohen, The Erosion of Indian Rights, 1950-1953: A Case Study in Bureaucracy. 62 Yale L. J., 348 (1953)

Without being presumptuous, Harrow would make the argument in his case, should it be allowed to proceed, that the treatment of the Federal civil servant is akin to the 'miner's canary,' in that is shows how the administration regards those who work to sustain it.

B.    This Court must decide whether the weight of this "convincing mosaic" is sufficient to enable the case to proceed; but ultimately its grace

Irrespective of any argument Harrow can provide, he recognizes that ultimately the decision falls to the grace of the Court

## VIII.    RESPECT THE COURT – A PLEA IN FIVE STANZAS

Respect the court, yet maintain your perspective
Cogent and compelling, that's the primary objective
Five years on this brief, I've thought of law as a profession
But I'm my only client, and I can't charge for a session
I learned how law, debt, and funding all start on the Hill
But it's the court – the least dangerous branch – that confirms and conforms to Congress' will

Respect the court, as your tell your story
But why am I doing this? Neither for money nor for glory
Well aware of the odds (and a gambler I'm not)
What choice do I have, but to give it a shot?
There's a wrong to be righted that's affected us all
Lack of an MSPB quorum has paced justice to a crawl

Respect the court, I repeatedly said
As I mulled these arguments over in my head
There's no shortcut for diligence or care to be had
Weave your arguments into a mosaic; lay them out like a plaid
But where to begin – I'm the novice's novice
Start with the events, which are naught but the oddest

Respect the court, there's more to the telling
Three C's are the framework: clear concise and compelling
How the sequester began, and the road to the furlough
Quite like a horse race's high drama: win place or show
But the DoD workforce, some six hundred thousand strong
Came in last in this race, with a furlough six days long

Respect the court, but seek sources for the cause
The furlough's source is apparent: no need to grasp at straws
Semper fidelis paratus and more
It was DoD's charge – they were minding the store
There were others (OMB) on deck, but they did the steering
Respect the court, for only they can grant a fair hearing



*Figure 1 Timeline of Events, Harrow v. Defense*