2022-2254

---

# United States Court of Appeals for the Federal Circuit

---

**STUART R. HARROW,**
*Petitioner,*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent.*

---

Petition for review of the Merit Systems Protection Board in No. PH-0752-13-3305-I-1.

---

## PRINCIPAL BRIEF FOR PETITIONER

---

Joshua P. Davis
Kyla J. Gibboney
**BERGER MONTAGUE PC**
505 Montgomery St., Ste. 625
San Francisco, CA 94111
Telephone: (800) 424-6690
*jdavis@bm.net*
*kgibboney@bm.net*

*Counsel for Petitioner*
*Stuart R. Harrow*

November 20, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST UNDER CIRCUIT RULE 47.4

Case Number:   2022-2254
Short Case Caption:   Harrow v. Dep't of Defense
Filing Party/Entity:   Petitioner Stuart R. Harrow

I certify the following information is accurate and complete to the best of my knowledge.

Date: November 20, 2024          /s/ Joshua P. Davis
                                 Joshua P. Davis

| | |
|---|---|
| 1. Represented Entities<br>Fed. Cir. R. 47.4(a)(1) | Stuart R. Harrow |
| 2. Real Party in Interest<br>Fed. Cir. R. 47.4(a)(2) | None/Not Applicable |
| 3. Parent Corporations and Stockholders<br>Fed. Cir. R. 47.4(a)(3) | None/Not Applicable |
| 4. Legal Representatives<br>Fed. Cir. R. 47.4(a)(4) | None/Not Applicable |
| 5. Related Cases<br>Fed. Cir. R. 47.5(a)–(b) | No |
| 6. Organization Victims and Bankruptcy Cases<br>Fed. Cir. R. 47.4(a)(6) | None/Not Applicable |

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTEREST UNDER CIRCUIT RULE 47.4...............i

TABLE OF CONTENTS ...........................................................................ii

TABLE OF AUTHORITIES...................................................................iv

STATEMENT OF RELATED CASES UNDER CIR. R. 47.5.................ix

PRINCIPAL BRIEF FOR PETITIONER....................................................1

I.    Jurisdictional Statement ......................................................1

II.    Statement of the Issues ......................................................1

III.    Statement of the Case .......................................................2

IV.    Summary of the Argument..................................................9

V.    Argument ...........................................................................12

    A.    Mr. Harrow's Appeal Should Be Heard. ................12

        1.    Equitable tolling applies to Section 7703(b)(1)(A)'s appeal deadline................................................12

            a.    Equitable tolling is presumptively available for claims like Mr. Harrow's...............13

            b.    Section 7703(b)(1)(A)'s statutory scheme is consistent with equitable tolling, leaving the presumption unrebutted. ...........................14

        2.    Tolling is justified here....................................17

        3.    The government has forfeited any argument that (1) Mr. Harrow's appeal was untimely filed or (2) that the time bar is mandatory.................................21

            a.    Legal Standard..........................................21

       b.     The Department forfeited any timeliness arguments. ................................................................. 22

B.    Mr. Harrow's Furlough Was Improper Because the Department of Defense Did Not Prove That It Promoted "the Efficiency of the Service." .............................................. 27

    1.    Standard of Review ............................................................ 28

    2.    The Board's decision should be reversed because it rests on an impermissible interpretation of the "efficiency-of-the-service" standard. ................................. 29

    3.    Section 7513(a)'s plain language required the Department to prove—and the Board to find—that Mr. Harrow's furlough promoted efficiency. It did not. .... 37

C.    Conclusion ............................................................................ 42

# TABLE OF AUTHORITIES

P<small>AGE</small>(S)

C<small>ASES</small>

*Archuleta v. Hopper,*
786 F.3d 1340 (Fed. Cir. 2015) ......................................... 28

*Arreola-Castillo v. United States,*
889 F.3d 378 (7th Cir. 2018) .............................................. 26

*Baggett v. Bullitt,*
377 U.S. 360 (1964) ........................................................... 21

*Berlin v. Dep't of Labor,*
772 F.3d 890 (Fed. Cir. 2014) ........................................... 37

*Bloate v. United States,*
559 U.S. 196 (2010) ........................................................... 24

*Boechler, P.C. v. Comm'r of Internal Revenue,*
596 U.S. 199 (2022) ................................................... passim

*Bowen v. City of New York,*
476 U.S. 467 (1986) ........................................................... 15

*Chevron U.S.A. Inc. v. Nat. Res. Def. Council,*
467 U.S. 837 (1984) ............................................... 28, 37, 38

*Cross v. Dep't of Transp.,*
127 F.3d 1443 (Fed. Cir. 1997) ......................................... 32

*Dixon v. McDonald,*
815 F.3d 799 (Fed. Cir. 2016) ........................................... 26

*Eberhart v. United States,*
546 U.S. 12 (2005) ....................................................... 22, 26

*ECC Int'l Constructors, LLC v. Sec'y of Army,*
79 F.4th 1364 (Fed. Cir. 2023) .......................................... 22

*Einboden v. Department of Navy,*
802 F.3d 1321 (Fed. Cir. 2015) ......................................... 37

iv

*Fedora v. Merit Sys. Prot. Bd.*,
848 F.3d 1013 (Fed. Cir. 2017) .................................................. 7, 12, 13

*Fort Bend Cnty. v. Davis*,
587 U.S. 541 (2019) ................................................................... 22

*Gose v. U.S. Postal Serv.*,
451 F.3d 831 (Fed. Cir. 2006) ................................................... 28

*Greenlaw v. United States*,
554 U.S. 237 (2008) ................................................................... 25

*Hamer v. Neighborhood Hous. Servs. of Chi.*,
583 U.S. 17 (2017) ..................................................................... 22

*Harrow v. Dep't of Def.*,
601 U.S. 480 (2024) ......................................................... passim

*Henderson ex rel. Henderson v. Shinseki*,
562 U.S. 428 (2011) ................................................................... 22

*Holland v. Fla.*,
560 U.S. 631 (2010) ................................................................... 21

*Irwin v. Dep't of Veterans Affs.*,
498 U.S. 89 (1990) ............................................................... 13, 21

*Kahn v. Dep't of Justice*,
618 F.3d 1306 (Fed. Cir. 2010) ................................................. 28

*Long v. Soc. Sec. Admin.*,
635 F.3d 526 (Fed. Cir. 2011) ................................................... 37

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024) ..................................................... passim

*Lozano v. Montoya Alvarez*,
572 U.S. 1 (2014) ....................................................................... 14

*Marbury v. Madison*,
5 U.S. 137 (1803) ....................................................................... 37

*Minerva Surgical, Inc. v. Hologic, Inc.*,
594 U.S. 559 (2021) ................................................................... 14

*Monzo v. Dep't of Transp.*,
    735 F.2d 1335 (Fed. Cir. 1984) ........................................ 12

*Oja v. Dep't of the Army*,
    405 F.3d 1349 (Fed. Cir. 2005) ........................................ 12

*Pace v. DiGuglielmo*,
    544 U.S. 408 (2005) .............................................. 13, 17

*Palomer v. McDonald*,
    646 Fed. App'x 936 (Fed. Cir. 2016) .................................. 20

*Santos-Zacaria v. Garland*,
    598 U.S. 411 (2023) .............................................. 22, 25

*SAS Inst., Inc. v. Iancu*,
    584 U.S. 357 (2018) .................................................. 36

*Sebelius v. Auburn Regional Medical Center*,
    568 U.S. 145 (2013) .............................................. 14, 16

*Sprietsma v. Mercury Marine*,
    537 U.S. 51 (2002) ................................................... 25

*Tippins v. United States*,
    93 F.4th 1370 (Fed. Cir. 2024) ..................................... 31, 32

*United States v. Brockamp*,
    519 U.S. 347 (1997) .............................................. 15, 17

*United States v. Jones*,
    565 U.S. 400 (2012) .................................................. 25

*United States v. Kwai Fun Wong*,
    575 U.S. 402 (2015) .................................................. 20

*Ward v. U.S. Postal Sys.*,
    634 F.3d 1274 (Fed. Cir. 2011) ...................................... 28

*Welch v. Dep't of the Army*,
    323 F.3d 1042 (Fed. Cir. 2003) ...................................... 32

*Wood v. Milyard*,
    566 U.S. 463 (2012) .................................................. 26

*Zipes v. Trans World Airlines, Inc.*,
455 U.S. 385 (1982) ................................................................. 15, 16

**STATUTES**

5 U.S.C. § 5596 ............................................................................. 12

5 U.S.C. § 7511 ......................................................................... 3, 38

5 U.S.C. § 7512 .................................................................... passim

5 U.S.C. § 7513 .................................................................... passim

5 U.S.C. § 7701 ......................................................................... 3, 30

5 U.S.C. § 7703 .................................................................... passim

**OTHER AUTHORITIES**

S. REP. 95-969 (1978 U.S.C.C.A.N. 2723) ................................. 29, 35, 39

**RULES**

Fed. Cir. R. 28 ............................................................................. 16

SUP. CT. R. 14.1 ......................................................................... 24

**REGULATIONS**

5 C.F.R. § 351.201 ................................................................... 32, 34

5 C.F.R. § 1201.56 .............................................................. 4, 10, 29, 30

**ADMINISTRATIVE DECISIONS**

*Chandler v. Dep't of Treasury*,
120 M.S.P.R. 163 (2013) ........................................................ passim

*Clark v. Off. of Pers. Mgmt.*,
24 M.S.P.R. 224 (1984) ................................................................. 33

*Gajdos v. Dep't of Army*,
121 M.S.P.R. 361 (2014) ............................................................... 34

*Griffin v. Dep't of Agriculture*,
2 M.S.P.R. 168 (1980) .................................................................. 33

*Losure v. Interstate Com. Comm'n,*
  2 M.S.P.R. 195 (1980) ........................................................ 34

*Schroeder v. Dep't of Trans.,*
  60 M.S.P.R. 566 (1994) ...................................................... 33

*Waksman v. Dep't of Com.,*
  37 M.S.P.R. 640 (1988) ................................................... 4, 31

# <u>STATEMENT OF RELATED CASES UNDER CIR. R. 47.5</u>

Counsel is not aware of any other appeal in or from the same proceeding in the originating tribunal before this or any other appellate court. Nor is counsel aware of any case pending in this or any other tribunal that will directly affect or be directly affected by this Court's decision in the pending case.

## PRINCIPAL BRIEF FOR PETITIONER

### I.  Jurisdictional Statement

This Court has jurisdiction to consider this Petition under 5 U.S.C. § 7703(b)(1)(A).

### II.  Statement of the Issues

1.      Is 5 U.S.C. § 7703(b)(1)(A)'s 60-day appeal deadline exempt from ordinary equitable tolling doctrine?

2.      Does Petitioner Stuart Harrow's showing—that he has diligently pursued his rights despite extraordinary circumstances that caused him to miss the filing deadline—warrant equitable tolling?

3.      Did Respondent Department of Defense's failure to raise untimeliness as a defense waive any argument against equitable tolling?

4.      Is the Board's decision not in accordance with the law because it affirmed Mr. Harrow's furlough even though the Department made no effort to prove that the furlough promoted the efficiency of the service, as the Department was required to do by Section 7513(a)?

5.      Is the Board's decision not in accordance with the law because it affirmed Mr. Harrow's furlough without proof by a preponderance of the evidence that it promoted the efficiency of the service, as Section 7513(a)'s plain language requires?

6.    Is the Board's decision unsupported by substantial evidence because the Department produced no evidence to support the efficiency of Mr. Harrow's furlough?

7.    Should the Court use its own judgment to interpret Section 7513(a) consistently with its plain text, in accordance with *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and find that the Department failed to prove that Harrow's furlough promoted efficiency?

## III.  Statement of the Case

This case began in May 2013, when Petitioner Stuart Harrow's supervisor at the Defense Contract Management Agency ("DCMA") notified him that the DCMA intended to furlough him without pay for up to 11 days. APPX0003. The DCMA is a component of the Department of Defense ("Department") and so was subject to the 2013 Government-wide budget cuts known as the "sequestration." APPX0015. In response to the sequestration, the DCMA furloughed nearly all its employees, including Mr. Harrow, who had worked at the agency for decades.

Mr. Harrow responded to the proposed furlough, as he was entitled to do, and requested an exemption. APPX0017; 5 U.S.C. § 7512(b)(2). But on July 2, 2013, the Department issued a decision letter informing Mr. Harrow he would indeed be furloughed. APPX0017. Mr. Harrow was ultimately furloughed for six days: July 12, July 19, July 26, August 2, August 9, and August 16, 2013. APPX0087.

A "furlough" places an employee "in a temporary status without duties and pay because of lack of work or funds or other nondisciplinary reasons." 5 U.S.C. § 7511(a)(5). But despite being nondisciplinary, furloughs of 30 days or less, like Mr. Harrow's here, are "adverse" employment actions. 5 U.S.C. § 7512(5). Accordingly, agencies may impose them "*only for such cause as will promote the efficiency of the service.*" 5 U.S.C. § 7513(a) (emphasis added).

Employees who believe they have been subjected to improper adverse employment actions may appeal to the Merit Systems Protection Board ("Board") and request a hearing. 5 U.S.C. § 7513(d); 5 U.S.C. § 7701(a). If unsuccessful, they may then petition the Board for review. 5 U.S.C. § 7701(e)(1)(A). They may then seek relief in this Court. 5 U.S.C. § 7703(a)(1).

Mr. Harrow timely exercised his right to appeal his furlough to the Board. APPX0003. Thirty-two of Mr. Harrow's colleagues from the DCMA did so too. APPX0003-APPX0004. But of that group, Mr. Harrow was the only one to file a prehearing submission and request a hearing. *Id.*

As is common in challenges presented to the Board, the Board referred Mr. Harrow's case to an Administrative Law Judge. 5 U.S.C. § 7701(b)(1). As is also common, Mr. Harrow, who is not an attorney, represented himself. Nevertheless, Mr. Harrow mounted "a multipronged legal and fact based attack on the legitimacy of the

agency's furlough action" in his written prehearing submissions and testimony to the ALJ. APPX0019.

The core of Mr. Harrow's argument was that the Department had failed to prove by a preponderance of evidence—as was its burden—that his furlough promoted the "efficiency of the service." *See* APPX0088-APPX0098 (citing 5 U.S.C. § 7513(a); 5 C.F.R. § 1201.56(a)(1)(ii)); APPX0166. In support, Mr. Harrow presented evidence and argument that the furlough had, in fact, *decreased* efficiency at the Department. APPX0042. The Department, in contrast, made no showing of efficiency, leaving Mr. Harrow's evidence unrebutted.

Despite this lack of evidence, the ALJ affirmed the furlough, deferring to the Department and its "broad discretion to take action to avoid a deficit." APPX0020 (citing *Waksman v. Dep't of Com.*, 37 M.S.P.R. 640, 645 (1988) (discussing reductions in force)). In support, the ALJ relied on Board cases addressing another type of employment actions: reductions in force (RIFs). *See, e.g.*, *id.* This approach had been approved in the Board's then-recent precedential decision in *Chandler v. Department of the Treasury*, 120 M.S.P.R. 163 (2013). The ALJ interpreted *Chandler* to mean that, like a RIF, Mr. Harrow's furlough was proper so long as the Department showed that it had been implemented in response to financial restrictions. APPX0023. Because the ALJ had "no doubt that the D[epartment] was facing a serious budget shortfall" in 2013, he rubberstamped the Department's furlough

of Mr. Harrow. APPX0023-APPX0025. The ALJ applauded Mr. Harrow's "Herculean effort" to "broaden" the scope of the efficiency determination but was "without authority" to rule in a manner that he believed contradicted the prevailing Board case law, including *Chandler*. *Id.*

Mr. Harrow timely petitioned the Board for review. APPX0173-APPX0184.

But in early 2017—with Mr. Harrow's action still pending—the Board lost its quorum, which rendered it unable to resolve cases. *See* Pet'r's Resp. to Order to Show Cause 8–9, ECF No. 8. The lack of quorum lasted for over five years. *Id.*

That long delay led Mr. Harrow to miss his next deadline. Unbeknownst to Mr. Harrow, on May 11, 2022, with a quorum finally restored, the Board affirmed the ALJ's decision. APPX0001-APPX0011. The Board agreed that the ALJ's deference to the Department was consistent with the law and affirmed the furlough despite the Department's failure to produce any evidence of efficiency. APPX0001; APPX0007-APPX0008. The Final Order included a "notice of appellate rights" stating that Mr. Harrow could petition this Court for review within 60 days. APPX0008-APPX0013.

But Harrow did not learn of the Final Order on that day. During his years-long wait for the Board's decision, Mr. Harrow's email address with the Department had changed, and after a protracted period of the

5

Department forwarding to his new email address, it stopped doing so. Pet'r's Resp. to Order to Show Cause 7–8, ECF No. 8.

So when the Board sent notice of its order to Mr. Harrow's old email address, he never received it. *Id*. Instead, after hearing that the Board reestablished a quorum, out of an abundance of caution, Mr. Harrow searched the Board's website himself. *Id*. at 8–9. By then, the 60-day period had run. *Id*.

Once Mr. Harrow learned of the Board's decision—and that his notice of it had been delayed—he acted promptly and diligently. He wrote to the Board and asked for an extension of the deadline to file his appeal. Sept. 1, 2022 Harrow Email to MSPB, ECF No. 1-2 at 26–27. He faxed an extension request to Board's office. Sept. 8, 2022 Facsimile Mot. for Granting an Extension of Time to File an Appeal, ECF 1-2 at 15–21. He emailed and asked for the underlying documents. Aug. 30, 2022 Harrow Email to MSPB, ECF No. 1-2 at 31. And he filed a Petition for Review in this Court. Pet. for Review, ECF No. 1. He did all of that without the help of an attorney.

Mr. Harrow filed his Petition in this Court on September 16, 2022, 17 days after he received the Board's decision and 139 days after it was issued. Pet. for Review, ECF No. 1. The Department did not respond. Nearly a month later, this Court issued a notice admonishing the Department that "[f]ailure to file required documents may result in

dismissal or other action as deemed appropriate by the court." Notice to Resp't, ECF No. 5. The Department did not respond.

The Court then *sua sponte* issued an order to show cause that Mr. Harrow's appeal not be dismissed for lack of jurisdiction. Order to Show Cause, ECF No. 7. Mr. Harrow timely responded. Pet'r's Resp. to Order to Show Cause, ECF No. 8. In his 31-page submission, he recounted the facts above that had led to him not learning of the Board's decision until after the 60-day appeal deadline had passed. *Id.* at 7–10. He asked the Court to excuse his late filing in light of the circumstances. *Id.* He also submitted legal argument, complete with cites to caselaw, statutes, and law review articles. *Id.* at 10–23. He even submitted an original poem. *Id.* at 30.

The Department still did not respond.

The Court dismissed Mr. Harrow's petition by order dated February 14, 2023. Order Dismissing Pet. for Review, ECF No. 9. In its Order, the Court cited its long-standing precedent that Section 7703(b)(1)(A)'s deadline is jurisdictional and so "not subject to equitable tolling." *Id.* at 2 (citing *Fedora v. Merit Sys. Prot. Bd.*, 848 F.3d 1013, 1016 (Fed. Cir. 2017). Based on that precedent, the Court declined to excuse a failure to timely file based on individual circumstances. *Id.*

On March 7, 2023, the Department entered an appearance. Entry of Appearance for Resp't, ECF No. 10.

Mr. Harrow then sought out *pro bono* counsel, who filed a petition for certiorari to the Supreme Court. ECF No. 14. In his petition, Mr. Harrow asked the Court to address whether Section 7703(b)(1)(A)'s 60-day appeal deadline is a jurisdictional requirement or a claims processing rule. Pet. Cert. 15, *Harrow v. Dep't of Def.*, No. 23-21 (July 3, 2023). The Department argued that the law was settled, and it was jurisdictional. Br. Resp't Opp. 7, *Harrow v. Dep't of Def.*, No. 23-21 (Oct. 6, 2023). The Supreme Court granted Mr. Harrow's petition. ECF No. 15.

Mr. Harrow's brief to the Supreme Court argued that Section 7703(b)(1)(A)'s 60-day appeal deadline was a claim-processing rule, not a jurisdictional requirement. Br. Pet. 1, *Harrow v. Dep't of Def.*, No. 23-21 (Jan. 12, 2024). The Government argued that the deadline was jurisdictional. Br. Resp't 10–12, *Harrow v. Dep't of Def.*, No. 23-21 (Feb. 12, 2024). It also argued, for the first time, that even if was nonjurisdictional, it was nonetheless mandatory. *Id.*

At the hearing, the Court remarked that Harrow had acted as quickly as possible after waiting seven years for the Board's decision, and asked why, as a practical matter, the Department had fought for 11 years and pursed the case to the Supreme Court over Mr. Harrow's $3,000 claim. APPX0249; APPX0251-APPX0252; APPX0260. The Court also stated that it was not Harrow's fault, by any stretch, that he

missed the 60-day deadline. APPX0263-APPX0264. The Department agreed. *Id.*

The Court's 9-0 opinion sided with Mr. Harrow, holding that Section 7703(b)(1)(A)'s filing deadline is not jurisdictional. *Harrow v. Dep't. of Defense*, 601 U.S. 480, 481 (2024). The Court declined to reach the Department's "newly raised back-up argument" that Section 7703(b)(1)(A) is not subject to equitable tolling and noted that the Department had failed to address the issue below. *Id.* at 489–90. The Court also stated that "nonjurisdictional [timing rules] are presumptively subject to equitable tolling." *Id.* (citing *Boechler v. Comm'r of Internal Revenue*, 596 U.S. 199, 209 (2022)).

The Supreme Court remanded the case to this Court. *Id.* On remand, this Court asked the parties to address the issue of timeliness of the appeal. Order Recalling Mandate and Setting Briefing Schedule 2, ECF No. 20.

## IV.  Summary of the Argument

This Court should:

(1)    Hear Mr. Harrow's appeal on the merits;

(2)    Require that the Department of Defense must justify adverse actions like the one taken against Mr. Harrow in terms of efficiency, as required by the relevant statutory text;

(3)    Conclude that the Department of Defense made no effort to carry its burden of proving by a preponderance of the evidence that Mr. Harrow's furlough was efficient; and

(4)    Rule that Mr. Harrow is accordingly entitled to recover his back pay plus interest.

Since Petitioner Stuart Harrow was last before this Court, two major developments have changed the legal landscape for his Petition. First, the Supreme Court in this case ruled that 5 U.S.C. § 7703(b)(1)(A)'s 60-day filing deadline is nonjurisdictional. *Harrow v. Dep't of Def.*, 601 U.S. 480, 481 (2024). This paves the way for Mr. Harrow to show that equitable tolling is available for Section 7703(b)(1)(A) and present the compelling evidence that he is entitled to it here.

The second is the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), that administrative agencies' statutory interpretations are not entitled to deference. That paves the way for Harrow to show that the Merit Systems Protection Board misinterpreted 5 U.S.C. § 7513(a) and so applied the wrong standard to his appeal.

At the core of Section 7513(a) is the obligation it placed on the Department of Defense to prove, by a preponderance of the evidence, that its furlough of Mr. Harrow promoted the efficiency of the service. *See* 5 C.F.R. § 1201.56(a)(1)(ii). The Department made no effort to do

that. It made no showing of efficiency whatsoever. Mr. Harrow, in contrast, provided evidence and made arguments that his furlough did *not* promote the efficiency of the Department. The ALJ simply deferred to the Department, and the Board deferred to the ALJ.

*Loper Bright* makes clear all of that was improper. The Department should have done its job of justifying Harrow's furlough in terms of efficiency. The ALJ should have held the Department accountable. The Board should have held the ALJ accountable. As none of that occurred, this Court should hold the Board, the ALJ, and the Department accountable. It should interpret Section 7513 to mean what it says: Mr. Harrow's furlough was lawful only if it was justified in terms of efficiency, it was the Department's duty to provide that justification, the Department failed to provide that justification, and so Mr. Harrow should prevail on his claim.

Before the Supreme Court's recent ruling on judicial oversight of administrative agencies, the Board decided *Chandler*, 120 M.S.P.R. 163, an opinion that either conflicts with the statutory law or supports reversal here. *Chandler* could be interpreted to mean that the Department has no meaningful burden to justify Mr. Harrow's furlough in terms of efficiency—that this Court and the lower fora for appellate review in this case should simply defer to the Department's decisions. That cannot be reconciled with Congress's decision—embodied in statute—to place a burden on the Department to justify its actions in

terms of efficiency, or with 5 C.F.R. § 1201.56(a)(1)(ii), which requires the Department to meet that burden by a preponderance of the evidence.

Or *Chandler*'s interpretation of Section 7513(a) that an agency satisfies the efficiency-of-the-service standard if it shows that an adverse action furlough is a reasonable management decision applied in a fair and even manner—*does* require an efficiency showing, and the ALJ and the Board misapplied it here.

Either way, the Board's decision affirming Mr. Harrow's furlough was not in accordance with law or supported by substantial evidence and should be overturned. This Court should then reverse Mr. Harrow's furlough and order the Department to award Mr. Harrow back pay with interest in accordance with the Back Pay Act, 5 U.S.C. § 5596.

## V. Argument

### A.    Mr. Harrow's Appeal Should Be Heard.

#### 1. *Equitable tolling applies to Section 7703(b)(1)(A)'s appeal deadline.*

The issue of whether equitable tolling applies to Section 7703(b)(1)(A)'s appeal deadline has not yet been properly before this Court. That is because this Court has long held that the deadline was jurisdictional. *Monzo v. Dep't of Transp.*, 735 F.2d 1335, 1336 (Fed. Cir. 1984); *see also Fedora*, 848 F.3d at 1015c16 (same); *Oja v. Dep't of the Army*, 405 F.3d 1349, 1360 (Fed. Cir. 2005) (same). A jurisdictional

deadline by its nature is not subject to equitable tolling, as this Court recognized in dismissing Mr. Harrow's petition initially: "The timely filing of a petition from the Board's final decision is a jurisdictional requirement and 'not subject to equitable tolling.'" Order Dismissing Pet. Review 2, ECF No. 9 (quoting *Fedora*, 848 F.3d at 1016). Because, as Mr. Harrow conceded, he had *not* timely filed his petition, the Court's inquiry stopped. *Id.* ("While we may be sympathetic to Mr. Harrow's situation, this court can only consider whether the petition was timely filed.").

Accordingly, this Court has not had occasion to address the issue of whether equitable tolling applies to Section 7703(b)(1)(A)'s appeal deadline as a *nonjurisdictional* limitations period. With the Supreme Court's decision in this case, Section 7703(b)(1)(A)'s 60-day appeal deadline is no longer a jurisdictional requirement. *Harrow*, 601 U.S. 480. So as discussed in greater detail below, the Court may look to the equities and "extraordinary circumstances," which warrant tolling in Mr. Harrow's case. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

> a. <u>Equitable tolling is presumptively available for claims like Mr. Harrow's.</u>

Like any other "nonjurisdictional limitations period[]," the 60-day deadline in Section 7703(b)(1)(A) is "presumptively subject to equitable tolling." *Boechler*, 596 U.S. at 201 (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95–96 (1990)). This presumption is based on equitable

tolling's role as "a traditional feature of American jurisprudence and a background principle against which Congress drafts limitations periods." *Id.* at 208–09 (citing *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10–11 (2014)).

In other words, "Congress legislates against the backdrop of judicial doctrines creating exceptions [to the procedural requirements that govern the litigation process], and typically expects those doctrines to apply." *Harrow*, 601 U.S. at 483 (citing *Minerva Surgical, Inc. v. Hologic, Inc.*, 594 U.S. 559, 571–72 (2021)).

Because of this established background, tolling is the rule, and Congress must speak clearly to create an exception.

> b.    Section 7703(b)(1)(A)'s statutory scheme is consistent with equitable tolling, leaving the presumption unrebutted.

The presumption that equitable tolling is available stands unless it is *inconsistent* with Congress' intent as determined by the statutory scheme of the claim at issue. Section 7703(b)(1)(A)'s statutory scheme is consistent with tolling; there is thus no evidence that Congress intended to articulate an exception to the here.

The following characteristics support a finding that tolling is consistent with Congressional intent and the statutory scheme:

a)    The statute at issue does not "expressly prohibit" it, *Boechler*, 596 U.S. at 209 (citing *Sebelius v. Auburn Regional Medical Center*, 568 U.S. 145, 160 (2013));

14

b)      The deadline at issue is directed at litigants, not the court, *id.*;

c)      The deadline is not "unusually emphatic" or reiterated several times in the statute such that it could not easily be read as accommodating exceptions, *cf. United States v. Brockamp*, 519 U.S. 347, 350 (1997);

d)      The deadline is within a statutory scheme that is "unusually protective of claimants," *Bowen v. City of New York*, 476 U.S. 467, 480 (1986) (citation omitted), *i.e.*, "a scheme in which laymen, unassisted by trained lawyers," often "initiate the process," *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397 (1982) (citation omitted); and

e)      Tolling is administratively feasible given the number of potential claims at issue, *see Boechler*, 596 U.S. at 210 (distinguishing *Brockamp*, 519 U.S. at 352).

Each of these circumstances is present here. Section 7703(b)(1)(A) does not expressly prohibit tolling. *See generally* 5 U.S.C. § 7703(b)(1)(A). Nor did Congress write its time limit in "unusually emphatic form," or reiterate it "several times in several different ways," using "detail[ed]" and "technical" language, "*explicit[ly]* list[ing]" numerous (six) exceptions to the deadline such that it "c[ould not] easily be read as containing *implicit* exceptions." *Brockamp*, 519 U.S. at 350–52. Rather, Section 7703(b)(1)(A)'s 60-day deadline is stated once in

15

simple language without enumerated exceptions. And it is "directed at litigants, not the Court." *Boechler*, 596 U.S. at 209.

Those litigants are also frequently "laymen," who "initiate the [appeals] process" without counsel. *See Zipes*, 455 U.S. at 397 (finding tolling available where, like here, statutory scheme was particularly solicitous of unrepresented litigants). Indeed, Mr. Harrow litigated his appeal on his own all the way through this Court before retaining counsel. This is consistent with the large majority of appeals to the Board, which is a forum designed to be particularly friendly to non-attorney litigants. This Court too makes the appeal process accessible by allowing for informal briefs and providing forms pro se litigants may use to draft them. *See* Fed. Cir. R. 28(g)(1).

Contrast this with the statutory scheme surrounding the "Medicare payment system" that the Supreme Court found to be inconsistent with equitable tolling in *Auburn*, 568 U.S. at 160. There, the statute at issue "applie[d] to *sophisticated institutional providers assisted by legal counsel*," "repeat players who [had] elect[ed] to participate in the Medicare system." *Id.* (emphasis added). Even then, the statute specified a 180-day period for the providers to take the relevant action. *Id.*

Administrative feasibility also supports tolling here. In *Brockamp*, the Supreme Court held equitable tolling inapplicable to the deadline for taxpayers to file refund claims in part because of the "administrative

problem" it posed. *Brockamp*, 519 U.S. at 348. "[T]he IRS processe[s] more than 200 million tax returns" and "issue[s] more than 90 million refunds" each year. *Id.* at 352. Allowing tolling risked overwhelming the system with millions of late-filed refund claims. *Id.* Section 7703(b)(1)(A)'s 60-day appeal deadline serves a much more modest role. *See Boechler*, 596 U.S. 210. Section 7703's scope is limited to "Judicial Review of Decisions of the [Board]." *See* 5 U.S.C. § 7703(a)(1). Those seeking such review—a group limited to employees and applicants for federal employment—may generally only do so after completing what can be lengthy, multipart administrative processes. *See id.* Indeed, here, of the 33 DCMA employees in his office to challenge the Department's furlough, only Mr. Harrow requested a hearing. APPX0003-APPX0004. This factor weighs in favor of tolling here.

### 2. *Tolling is justified here.*

Equitable tolling is warranted where the appellant can show he has been diligent and an extraordinary circumstance caused him to miss the filing deadline. *Pace*, 544 U.S. at 418 ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."). Mr. Harrow meets that burden here. He acted diligently to pursue his claims in this Court despite extraordinary circumstances—the Board's five-year delay issuing its final order, during which Mr. Harrow's government email

17

address was changed and stopped forwarding. These circumstances prevented him from filing his appeal within the 60-day deadline.

Mr. Harrow's diligence pursuing his claim has been well established over the last 11 years. *See Harrow*, 601 U.S. at 482. Mr. Harrow filed his initial furlough appeal in August 2013 along with 32 other DCMA employees. APPX0003. He was the only one to request a hearing and pursue the appeal. APPX0003-APPX0004. As part of that process, he met deadline after deadline: he timely filed his initial appeal, prehearing submissions, and four submissions to support his case-in-chief. APPX0017-APPX0018. He attended a prehearing conference and prepared for and testified on his own behalf at the hearing, presenting a "multi-pronged legal and factual argument" in support of his cause. APPX0019. He then timely appealed the ALJ's decision to the Board and filed a motion to reopen discovery in his case. *See* Certified List at 8, ECF No. 6. Had Mr. Harrow been aware of the Board's decision when it issued—nearly six years after he filed his petition for review—his course of conduct establishes that he would have timely appealed it to this Court.

Indeed, Mr. Harrow's diligence explains why he discovered the missed deadline as quickly as he did and acted so swiftly to remedy the situation. After years of waiting, and out of an abundance of caution, he searched the Internet to see how his appeal was progressing and learned that the Board had issued a final order. Pet. for Review at 17,

ECF No. 1. That same day, he contacted the Board by email to inquire about proof of service. *Id.* at 31. The Board informed him that notice had been sent to his prior email address; that same day, Mr. Harrow confirmed that his prior address was no longer forwarding emails and inquired about his options for extending the period for appeal. *Id.* at 26–28. The next day, he sent a follow-up email to the Board informing it that he had updated his email address and inquiring about how to file a "Motion for Granting Extension of Time to File an Appeal." *Id.* at 26.

Mr. Harrow then filed his motion for an extension with the Board *pro se* on September 8, 2022—only nine days after discovering the final order. *Id.* at 16–17. After learning that he needed to file a petition for review with the Federal Circuit, not the Board, Mr. Harrow wrote and submitted his petition within four days (17 days after discovering the final order). *Id.* at 22; *id.* at 1; Pet'r's Resp. to Order to Show Cause 7, 31, ECF No. 8. After this Court issued its order to show cause, Mr. Harrow, still proceeding *pro se*, authored a 31-page response himself. The response (1) documented the procedural posture and material facts of the case, incorporating docket citations and even a timeline graphic that he designed himself, *id.* at 7–10, 31; (2) made researched arguments based on caselaw and law review articles regarding the use of the term "jurisdictional," *id.* at 11–25; and (3) argued using all modes of persuasion, up to and including an original composition in five

stanzas, that a hearing on his appeal would benefit multiple stakeholders, including the Department's workforce, *id.* 25–30.

After this Court dismissed Mr. Harrow's petition for review, he submitted a 20-page "Petition for Panel Rehearing" which cited an additional 40 cases, including for the proposition that the words at issue in Section 7703(b)(1)(A) did not necessarily invoke a jurisdictional bar. *See generally* Pet. for Panel Rehearing, ECF No. 11. One case, *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015), figured prominently in the briefs filed in the Supreme Court. *Id.* at 9; Pet. Cert. 10, *Harrow v. Dep't of Def.*, No. 23-21 (July 3, 2023); Br. Resp't Opp. 8, 10, *Harrow v. Dep't of Def.*, No. 23-13 (Oct. 6, 2023).

Extraordinary circumstances explain why Mr. Harrow filed an untimely appeal. First, there was a five-year delay in restoring the Board quorum and issuing a decision on petitioner's appeal. *See Palomer v. McDonald*, 646 Fed. App'x 936, 940 (Fed. Cir. 2016) (ruling that mailing delays can "be an exceptional circumstance justifying equitable tolling" when a claimant receives notice "after the appeal period ha[s] already run, or nearly expired"). Second, there was the unhappy coincidence that the Department forwarded Petitioner's email from his old address to his new address for years but stopped doing so before the Board issued its decision. Pet'r's Resp. to Order to Show Cause 7-9, ECF No. 8.

Equitable considerations also counsel in favor of tolling the deadline for Mr. Harrow's appeal. The Supreme Court has "made clear that often the 'exercise of a court's equity powers . . . must be made on a case-by-case basis.'" *Holland v. Fla.*, 560 U.S. 631, 649–50 (2010) (citing *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964)).

Here, equity weighs in favor of tolling. The five-year delay "caused" Mr. Harrow to miss the deadline. *Harrow*, 601 U.S. at 482. His claim is for a relatively small sum—a few thousand dollars plus interest. He has prosecuted his case *pro se* before he ultimately identified an academic who had written extensively on the jurisdictional nature of filing deadlines and convinced him to take on his case *pro bono*. This is not a case of "garden-variety" negligence. *Irwin*, 498 U.S. at 96.

   3. *The government has forfeited any argument that (1) Mr. Harrow's appeal was untimely filed or (2) that the time bar is mandatory.*

The Government had ample opportunities to argue that Mr. Harrow's appeal was not timely. It failed to do so when it was appropriate. If it makes that argument now it will be, ironically, untimely.

   a. Legal Standard

The 120-day petition deadline here is known as a "claim-processing rule" because it is a nonjurisdictional "rul[e] that seek[s] to promote the orderly progress of litigation by requiring that the parties

21

take certain procedural steps at certain specified times." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). The Supreme Court has repeatedly held that "an objection based on a mandatory claim-processing rule may be forfeited." *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 549 (2019). *See also Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 19 (2017) ("[A] mandatory claim-processing rule [is] subject to forfeiture if not properly raised by the appellee."); *Eberhart v. United States*, 546 U.S. 12, 18 (2005) ("admonish[ing] the Government that failure to object to untimely submissions entails forfeiture of the objection"); *cf. Santos-Zacaria v. Garland*, 598 U.S. 411, 423 (2023) ("Because [the] exhaustion requirement is not jurisdictional, it is subject to waiver and forfeiture."). This Court similarly holds that "'[A]n objection based on a mandatory claim-processing rule may be forfeited' if the party waits too long to invoke the rule." *ECC Int'l Constructors, LLC v. Sec'y of Army*, 79 F.4th 1364, 1379 (Fed. Cir. 2023) (quoting *Fort Bend Cnty.*, 587 U.S. at 549).

> b.    The Department forfeited any timeliness arguments.

Here, the Department forfeited any arguments that the deadline is mandatory. The Government had multiple opportunities to argue that Mr. Harrow's petition was untimely but, on each occasion, failed to do so. When Mr. Harrow filed his notice of appeal, the Government did not respond. When this Court issued a notice to the Department admonishing that "[f]ailure to file required documents may result in

dismissal or other action as deemed appropriate by the court," Notice to Resp't, ECF No. 5, the Department did not respond. When the Board filed the complete record of its proceedings, including information necessary to apprise the Department of any nonjurisdictional bars, Certified List, ECF No. 6, the Department did not respond. When this Court issued an order, *sua sponte*, that "[w]ithin 30 days from the date of filing of this order, *the parties* are directed to show cause why this case should not be dismissed," Order to Show Cause, ECF No. 7 (emphasis added), the Department did not respond.[1] In fact, the only action the Department took in this Court was to file a notice of entry of appearance—after the Court had dismissed the petition. Entry of Appearance for Resp't, ECF No. 10. As the Supreme Court aptly summarized case: "The Government did not broach the issue below." *Harrow*, 601 U. S. at 490.

The Department similarly failed to raise timeliness arguments during certiorari briefing before the Supreme Court. Both Mr. Harrow and the Department's cert-stage briefs to the Supreme Court were focused entirely on the question of whether Section 7703(b)(1)'s deadline was jurisdictional. *See generally* Pet. Cert., *Harrow v. Dep't of Def.*, No. 23-21 (July 3, 2023); *and* Resp't's Br. Opp., *Harrow v. Dep't of Def.*, No. 23-21 (Oct. 6, 2023). The Government did not seek to expand the scope

---

[1] *See* Order Dismissing Pet. Review 1, ECF No. 9 ("In response to this court's order to show cause, Stuart R. Harrow argues against dismissal of his case. The Department of Defense has not responded.").

of any potential review by the court or to modify the question presented. Pet. Cert. i. *See also* Resp't's Br. Opp. I (framing the question as whether the deadline "is jurisdictional and therefore not subject to equitable tolling").

When the Department first arguably addressed nonjurisdictional timeliness, it was improperly raised. At the tail end of its merits brief, the Government argued that "even if section 7703(b)(1)'s time limit is not jurisdictional, it is mandatory[.]" Br. Resp't 42. This was not properly before the Court because, as the Court recognized, nonjurisdictional issues were "not included in the question presented." *Harrow*, 601 U.S. at 490; *see* SUP. CT. R. 14.1(a) ("Only the questions set out in the petition, or fairly included therein, will be considered by the Court."); *Bloate v. United States*, 559 U.S. 196, 217 (2010) (Ginsburg, J. concurring) (supporting remand of an issue first raised in the respondent's brief in opposition to the petition). After Mr. Harrow argued that these arguments were waived, instead of rejecting his position, the Court expressly left this Court to resolve "any waiver issues." *Harrow*, 601 U.S. at 490.

Had the Department wished to advance any nonjurisdictional arguments supporting dismissal of the appeal based on untimeliness, it had multiple opportunities, even invitations, to do so. But it declined to make *any* arguments for dismissing Mr. Harrow's petition as untimely

in this Court. The Government instead was content to hang its hat
solely on this Court's invocation of a jurisdictional bar.

Under these circumstances, the Department has forfeited any
nonjurisdictional arguments that Mr. Harrow's filing was untimely. *See*
*United States v. Jones*, 565 U.S. 400, 413 (2012) ("We have no occasion
to consider this argument. The Government did not raise it below, and
the D.C. Circuit therefore did not address it. . . . We consider the
argument forfeited." (citation omitted)); *Sprietsma v. Mercury Marine*,
537 U.S. 51, 56 n.4 (2002) ("Because this argument was not raised
below, it is waived."). *Cf. Greenlaw v. United States*, 554 U.S. 237, 244
(2008) ("[Courts] do not, or should not, sally forth each day looking for
wrongs to right. . . . Counsel almost always know a great deal more
about their cases than we do, and this must be particularly true of
counsel for the United States, the richest, most powerful, and best
represented litigant to appear before us." (brackets in original and
internal quotation marks omitted)).

Indeed, in nearly identical circumstances, the Government has
conceded that forfeiture should apply. In *Santos-Zacaria*, the court of
appeals dismissed the appeal on the ground that the petitioner had
failed to comply with a statutory exhaustion requirement. *Santos-
Zacaria*, 598 U.S. at 415. The Government had not raised exhaustion;
the court of appeals dismissed *sua sponte* because it considered
exhaustion to be jurisdictional. *Id.* In the Supreme Court, the

Government conceded that its failure to raise or rely on exhaustion in the court of appeals forfeited the issue if exhaustion were deemed to be nonjurisdictional. Br. Resp't Opp. 13, *Santos-Zacaria v. Garland*, No. 21-1436 (Aug. 12, 2022) ("[T]he government did not raise or rely on petitioner's failure to exhaust in the court of appeals, so waiver and forfeiture would apply.").

In *Dixon v. McDonald*, the government waived any argument that an appeal was untimely. 815 F.3d 799, 805 (Fed. Cir. 2016). This Court held that it is impermissible for a court to grant relief on nonjurisdictional timeliness defense that was waived. *Id.*; *cf. Arreola-Castillo v. United States*, 889 F.3d 378, 383 (7th Cir. 2018). It is of no moment that *Dixon* involved an explicit waiver by the government and a *sua sponte* dismissal by the Court of Appeals for Veterans Claims. In both *Dixon* and here, the Government did not properly raise a timeliness claim. Therefore, dismissing Mr. Harrow's claim on timeliness grounds would be improper. *Eberhart* similarly held that the government forfeited a timeliness defense that was not properly raised. 546 U.S. at 19 (2005). While in some contexts there is not a strict bar to considering waived arguments, it is "[f]or good reason [that] appellate courts ordinarily abstain from entertaining issues that have not been raised and preserved in the court of first instance." *Wood v. Milyard*, 566 U.S. 463, 473 (2012).

The Government's repeated failure to properly raise the timeliness issue in this Court means that any nonjurisdictional timeliness arguments it could make now have been waived.

### B. Mr. Harrow's Furlough Was Improper Because the Department of Defense Did Not Prove That It Promoted "the Efficiency of the Service."

The claim Mr. Harrow has worked for years to present to this Court is a simple one: Under Section 7513(a), the Department of Defense was required to prove, by a preponderance of the evidence, that its furlough of Mr. Harrow promoted the efficiency of the service. That meant that the Department was required to present evidence that the furlough was justified in terms of efficiency. The Department presented no such evidence. So Mr. Harrow's furlough was unlawful and should be overturned, and Mr. Harrow should be awarded back pay.

Mr. Harrow raised this argument to the Administrative Law Judge, who did not consider it, believing himself bound by *Chandler*, 20 M.S.P.R. 163, to defer to the Department and rubber stamp its spending decisions. When the Board ultimately reviewed that decision nearly six years later, it agreed. That conclusion is inconsistent with Section 7513(a)'s plain language and legislative history.

Accordingly, Mr. Harrow now asks this Court to grant his Petition and do what the Department, the ALJ, and the Board should have done: apply the efficiency-of-the-service standard to his furlough.

27

Recent Supreme Court precedent supports Mr. Harrow's request that this Court interpret Section 7513(a) without deference to the Board or the Department. *Loper Bright*, 144 S. Ct. at 2273. That level of review is particularly appropriate where the agency's interpretation is "inconsistent with" a statute, as it is here. *Id.* (there is "no deferential standard for courts to employ" when determining whether agency action is inconsistent with a statute).

### 1. Standard of Review

This Court's review of Board decisions is governed by 5 U.S.C. § 7703(c). The Court may reverse the Board when it finds the decision to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law; or unsupported by substantial evidence." *Ward v. U.S. Postal Sys.*, 634 F.3d 1274, 1278 (Fed. Cir. 2011) (citing *Kahn v. Dep't of Justice*, 618 F.3d 1306, 1312 (Fed. Cir. 2010)).

This Court reviews the Board's legal determinations, including issues of statutory construction, *de novo*. *See Gose v. U.S. Postal Serv.*, 451 F.3d 831, 836 (Fed. Cir. 2006) (citations omitted); *Archuleta v. Hopper*, 786 F.3d 1340, 1346 (Fed. Cir. 2015).

This Court's review is also guided by the Supreme Court's recent decision in *Loper Bright*, 144 S. Ct. at 2273. *Loper Bright* overturned *Chevron U.S.A. Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984), and held that courts must "exercise their independent judgment in deciding

whether an agency has acted within its statutory authority." *Loper Bright*, 144 S. Ct. at 2273. In other words, "courts need not and under the APA *may not* defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* (emphasis added).

> ### 2. *The Board's decision should be reversed because it rests on an impermissible interpretation of the "efficiency-of-the-service" standard.*

The Board's decision should be reversed because it rests on an impermissible interpretation of 5 U.S.C. § 7513(a). In that Section, enacted as part of the Civil Service Reform Act of 1978 ("CSRA"), Congress limits the circumstances in which federal agencies may take certain "adverse" employment actions, including nondisciplinary furloughs of 30 days or less, against their employees. 5 U.S.C. § 7512. The heart of Section 7513(a) is its requirement that adverse employment actions be taken *only for such cause as promotes the efficiency of the service*. 5 U.S.C. § 7513(a). The burden is on the agency to prove, by a preponderance of the evidence, that the standard is met. 5 C.F.R. § 1201.56(b)(1)(ii).

In the CSRA, Congress also created a new adjudicative body—the Merit Systems Protection Board—and made it "responsible for safeguarding the effective operation of the merit principles in practice." S. REP. 95-969, 6 (1978 U.S.C.C.A.N. 2723, 2728). Congress left no doubt that the Board was to be "a vigorous protector of the merit system"—the "corner stone of civil service reform." *Id.* at 6–7 (at 2729).

Accordingly, to sustain Mr. Harrow's furlough challenge, the Department of Defense was required to prove, by a preponderance of the evidence, that the furlough was justified by "such cause as promotes the efficiency of the service." 5 U.S.C. § 7513(a); 5 C.F.R. § 1201.56(b)(1)(ii). That meant that the Department had to come forward with evidence that supported the furlough in terms of efficiency. The Board was required to examine that evidence—and balance it against Mr. Harrow's evidence—and determine whether the Department had met its burden. 5 U.S.C. § 7701.

But neither the Department nor the Board applied the efficiency-of-the-service standard here. Instead, the ALJ affirmed the furlough based on a single finding: that the Department faced a budget shortfall due to the sequestration. APPX0023. The ALJ then rubberstamped the action the Department took to address the shortfall: furloughing thousands of Department employees, including Mr. Harrow, for 30 days or less. *Id.*

The ALJ did so even though the Department produced no evidence that the furlough promoted efficiency. Mr. Harrow, by contrast, produced evidence that his furlough *decreased* the Department's efficiency in terms of money and time spent. The Department offered nothing in response. It did not just fail to produce *preponderant* evidence; it failed to make any showing on efficiency whatsoever.

This should have led the ALJ to reverse the furlough and award Mr. Harrow back pay. But instead of enforcing the efficiency-of-the-service standard, the ALJ deferred to the Department and its "broad discretion to take action to avoid a deficit." APPX0020. In support, the ALJ relied on Board cases addressing reductions in force (RIFs), the approach articulated in the Board's then-recent decision in *Chandler*. *See, e.g.*, *id.* (citing *Waksman v. Dep't of Com.*, 37 M.S.P.R. 640, 645 (1988)). The ALJ interpreted *Chandler* to mean that—in the furlough context only—Section 7513(a)'s efficiency-of-the-service standard did not, in fact, require a showing of efficiency. On petition for review, the Board compounded these errors. It agreed that the ALJ's deference to the Department was consistent with the law and affirmed the furlough despite the Department's failure to produce any evidence of efficiency. APPX0001; APPX0007-APPX0008.

*Chandler*, a precedential and so binding decision by the Board, had been issued in the wake of the same wave of furloughs as Mr. Harrow's. In it, the Board rewrote the standard for furloughs of 30 days or less so that it essentially mirrored the standard applicable to RIFs. But unlike furloughs of 30 days or less and the other actions authorized by Section 7512, Congress does not classify RIFs as adverse employment actions. *Tippins v. United States*, 93 F.4th 1370, 1375 (Fed. Cir. 2024). Rather, a "reduction in force" is an "administrative procedure by which agencies eliminate jobs and reassign or separate

employees who occupied the abolished positions." *Id.* (quoting *Welch v. Dep't of the Army*, 323 F.3d 1042, 1046 (Fed. Cir. 2003) and collecting cases).

That means Congress does not require RIFs to be justified by "such cause as promotes the efficiency of the service." Indeed, Congress explicitly excepted RIFs from Chapter 75 and addressed them in a different chapter of the statute. 5 U.S.C. § 7512(B) (excluding "a reduction-in-force action under section 3502 of this title"). Instead, RIFs are reviewed by the Board pursuant to regulation and are subject to a more forgiving standard: "As long as a RIF is legitimately conducted for one of the reasons identified" in 5 C.F.R. § 351.201(a)(2) and uniformly and consistently applied, the Board will not disturb it "absent a clear abuse of discretion or a substantial departure from applicable procedures." *Cross v. Dep't of Transp.*, 127 F.3d 1443, 1447 (Fed. Cir. 1997) (internal quotation marks omitted); 5 C.F.R. § 351.201(c).

Even though Congress in the CSRA differentiated these two types of employment actions—both linguistically and structurally—when the Board in *Chandler* was faced with an appeal of a furlough of 30 days or less, it did not apply the efficiency-of-the-service standard articulated in Section 7513(a). Instead, a divided Board appeared to interpret the efficiency-of-the-service standard to essentially mirror the RIF standard. *Chandler*, 120 M.S.P.R. at 170–73.

*Chandler* started by endorsing its earlier decision in *Clark v. Office of Personnel Management*, which found that an agency satisfies the efficiency-of-the-service standard in an adverse action furlough appeal "by showing, in general, that the furlough was a reasonable management solution to the financial restrictions placed on [the agency] and that [the agency] applied its determination as to which employees to furlough in a fair and even manner." 24 M.S.P.R. 224, 225 (1984) (citing *Griffin v. Dep't of Agriculture*, 2 M.S.P.R. 168, 170–72 (1980)).

But the *Chandler* majority went further, appearing to erode any real Board oversight that was left after *Clark*. Relying almost exclusively on RIF decisions, the majority held that "it is within the agency's broad management discretion to take action to avoid a budget deficit, and the Board lacks the authority to look behind the agency's decision to remedy that deficit." *Chandler*, 120 M.S.P.R. at 172 (citing *Schroeder v. Dep't of Trans.*, 60 M.S.P.R. 566, 570 (1994), a RIF decision). The Board would *not* review "agency spending decisions . . . including spending on personnel matters," or "an agency's decision to allocate furlough days in a certain manner among employees who are not similarly situated." *Id*. Instead, the review would be limited to whether the "agency applied the adverse action furlough 'uniformly and consistently' just as it is required to apply a RIF," treating "similar

employees similarly," *id.* at 171 (citing 5 C.F.R. § 351.201(c)[2]), and "whether the agency used a furlough to target employees for personal reasons," *id.* at 172 (citing *Losure v. Interstate Com. Comm'n*, 2 M.S.P.R. 195, 200–01 (1980), another RIF decision). As the Department put it below, "In essence, the MSPB will not address management of the furlough unless that management indicates an unfair application of the furlough." APPX0051.

Taken literally, that interpretation of 7513(a) would contradict the statutory language requiring the Department to justify the furlough in terms of efficiency. As then-Vice Chairman Wagner noted in her dissents in *Chandler* and *Gajdos v. Dep't of Army*, nothing in the CSRA's plain language or the legislative history provides a basis for concluding that Congress intended that furloughs of 30 days or less be treated any differently from the other statutorily appealable adverse actions identified in 5 U.S.C. § 7512(1)-(4). 121 M.S.P.R. 361, 379 (2014) (Wagner, Vice Chairman, dissenting) (citing her separate opinion in *Chandler*, 120 M.S.P.R. at 179–93). Had Congress so intended, it presumably would have excluded furloughs, as it did RIFs, from coverage under Section 7513(a). *Id.*

Indeed, the legislative history—and context—support the opposite. *See Loper Bright*, 144 S. Ct. at 2261 n.4 ("[S]tatutes can be

---

[2] *Chandler* cited to 5 C.F.R. § 351.201(b), but the "uniformly and consistently" language appears in subsection (c).

sensibly understood only by reviewing text in context."). In passing the CSRA, Congress specified its intention to *include* "furloughs for 30 days or less" within the coverage of Section 7513(a) and to *exclude* "furloughs for more than a total of 30 days," which it said "shall continue to be reduction-in-force actions taken under Section 3502 of this title." S. REP. 95-969, 49 (1978 U.S.C.C.A.N. 2723, 2771).

The *Chandler* majority provided no basis for setting aside the plain statutory language other than that furloughs and RIF actions are both nondisciplinary and are generally triggered by a shortage of funds. Instead, the Board substituted its own reasoning and judgment for the statutory text. For example, the Board noted that furloughs of 30 days or less are shorter in duration than RIFs and so decided they should not be subject to "greater scrutiny." *Chandler*, 120 M.S.P.R. at 171. In so doing, the Board substituted its own judgment for Congress's: "We see no indication that Congress intended lesser protections for employees affected by more severe personnel actions or that it intended greater scrutiny of temporary measures." *Id.* at 170–71. The Board ignored that Congress *had in fact chosen* to treat furloughs of 30 days or less differently than RIFs. *See* 5 U.S.C. § 7512(B) ("[This subchapter] does not apply to . . . "a reduction-in-force action under section 7532 of this title.").

The Board in *Chandler* was not at liberty to ignore Section 7513(a)'s mandate. To the contrary, where "a statute's language carries

a plain meaning, the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer." *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 363 (2018) (citation omitted); *cf. Loper Bright Enters.*, 144 S. Ct. at 2261 (holding that there is "no deferential standard" for courts to employ when determining whether agency action is "inconsistent with" a statute).

In sum, *Chandler*'s interpretation of Section 7513(a) conflicts with the statutory text and the legislative history of the CSRA. The statutory text, by its plain meaning, requires furloughs of 30 days or less to be justified *in terms of efficiency*. The legislative history supports this conclusion. Neither the text nor the statutory history support treating adverse action furloughs like RIFs.

Yet the Board here followed *Chandler* and affirmed Mr. Harrow's furlough without finding, or requiring the Department to prove, that it promoted the efficiency of the service. That led the Board to reach a conclusion that is not in accordance with the law. *See* 5 U.S.C. § 7703(c)(1). The Board's conclusion is also unsupported by substantial evidence because the Department failed to provide any—let alone substantial—evidence that the furlough promoted efficiency. *See* 5 U.S.C. § 7703(c)(3).

For these reasons, the Court should grant the Petition and overturn the Board's decision.

### 3. Section 7513(a)'s plain language required the Department to prove—and the Board to find—that Mr. Harrow's furlough promoted efficiency. It did not.

After setting aside the Board's decision, this Court should interpret and apply Section 7513(a) in a way that is consistent with the legislative text. [3] In so doing, the Court should not defer to the Department or the Board. As the Supreme Court reiterated in *Loper Bright*, courts, not administrative agencies, are in the best position to—and must—interpret laws. *See Loper Bright*, 144 S. Ct. at 2273; *id.* at 2257 (citing *Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say

---

[3] Although this Court has reviewed appeals of furloughs that arose out of the sequestration, the Court has not had occasion to interpret Section 7513(a)'s efficiency-of-the-service standard in light of *Loper Bright*. This Court's earlier decisions on this issue afford broad deference to the Board. For example, in *Einboden v. Department of Navy*, 802 F.3d 1321, 1325–26 (Fed. Cir. 2015), this Court denied a petition challenging the Board's approval of the Department of the Navy's furlough on the basis that the Court "give[s] wide berth to agency decisions as to what type of adverse action is necessary to 'promote the efficiency of the service,' provided that the agency's decision bears some nexus to the reason for the adverse action." The Court noted that it "ha[d] also accepted the very standard utilized by the Board [t]here"—the efficiency-of-the-service standard—"under similar circumstances," and cited to *Berlin v. Department of Labor*. *Id.* at 1326 (citing *Berlin v. Dep't of Labor*, 772 F.3d 890, 894–95 (Fed. Cir. 2014)). In *Berlin*, this Court explained: "And we have made clear that, as a general matter, we defer to the Board's reasonable interpretation of 'good cause' because 'the Board has exclusive rulemaking and adjudicatory authority with respect to section 7521.'" *Berlin*, 772 F.3d at 894–95 (quoting *Long v. Soc. Sec. Admin.*, 635 F.3d 526, 534 (Fed. Cir. 2011) and citing *Chevron*, 467 U.S. at 842–43). Such deference is no longer appropriate in light of *Loper Bright* overruling *Chevron*. *Loper Bright*, 144 S. Ct. at 2273 ("*Chevron* is overruled.").

what the law is.")). This is particularly true where the agency's interpretation is "inconsistent with" a statute, as it is here. *Id.* at 2261.

Accordingly, this Court should interpret and apply Section 7513(a) without reference to *Chandler* or the Board's other decisions truncating the review of adverse action furloughs under 7513(a). The Court's interpretation—the one the Court, after applying all relevant interpretive tools, concludes is best—is the only permissible one. *Id.* at 2247 ("In an agency case as in any other . . . even if some judges might (or might not) consider the statute ambiguous, there is a best reading all the same—'the reading the court would have reached' if no agency were involved." (citing *Chevron*, 467 U.S. at 843 n.11)).

Interpretation should begin with the plain language of the statute. Section 7513(a) admonishes that "an agency may take an action covered by this subchapter" against employees, as defined by 5 U.S.C. § 7511(a)(1), "only for such cause as will promote the efficiency of the service." The statute continues:

This subchapter applies to—

(1) a removal;

(2) a suspension for more than 14 days;

(3) a reduction in grade;

(4) a reduction in pay; and

(5) a furlough of 30 days or less;

. . .

38

but does not apply to—

. . .

(B) a reduction-in-force action under section 3502 of this

title, . . .

5 U.S.C. § 7512.

In short, under the statute, an employing agency may not remove an employee, suspend an employee, reduce an employee's grade, reduce an employee's pay, or put an employee on a furlough of 30 days or less, without first establishing before the Board that the action promotes the efficiency of the service. *See id.* This standard does *not* apply to RIFs.

Viewing Section 7513(a) in the "context" and legislative history of the CSRA supports the conclusion that Congress did not intend furloughs of 30 days or less to be subject to a different, lesser standard than the "efficiency of the service." *See Loper Bright*, 144 S. Ct. at 2261 n.4. According to the legislative history, when Congress included furloughs of 30 days or less in the actions listed under Section 7512, it intended Section 7513(a) to be "identical to current statutory provisions to adverse actions." S. REP. 95-969, 49–50 (1978 U.S.C.C.A.N. at 2771–72). Congress differentiated furloughs of 30 days or *more*—but not furloughs of 30 days or *less*—from Section 7513(a)'s coverage. *Id.* at 49 (at 2771).

Thus, the plain statutory language, the statutory structure, and the legislative history support the conclusion that the Department was

required to justify Mr. Harrow's furlough in terms of efficiency in order to sustain his challenge. The Department did not do so here.

Instead, based on *Chandler*, the Department argued that it had "broad discretion to take action to avoid a budget deficit, and the Board lack[ed] the authority to look behind the Agency's decision to remedy that deficit." APPX0050 (citing *Chandler*, 120 M.S.P.R. at 172). Accordingly, the Department argued, the Board's review was limited to whether the Department implemented the furlough fairly and evenly, meaning that it treated similar employees similarly, justifying any deviations with legitimate management reasons, and that it had not used a furlough to target employees for personal reasons. APPX0051 (citing *Chandler*, 120 M.S.P.R. at 171–73).

But treating employees who are *not* alike in the same way is no more efficient than treating employees who *are* alike differently. Promoting the efficiency of the service means that the Department had to treat different employees differently if that was efficient, just as it had to treat comparable employees in the same way if that was efficient. In other words, the Department was required to prove that it was more efficient to treat Mr. Harrow and others in his position in *the same manner* as other furloughed employees.

The Department made no such efficiency showing here. And a review of the record shows that the Department could not have met the standard if it had tried. On the contrary, the record evidence shows that

the furlough in general, and Mr. Harrow's furlough in particular, was *inefficient.*

In Mr. Harrow's prehearing submissions and testimony before the Board, he detailed the cost-saving that he provided to the Department. APPX0042. Specifically, Mr. Harrow explained that, as part of his role, he provided support to Department acquisitions "by evaluating contractor proposals in the form of a Technical Support to Negotiations (TSNs)." *Id.* Mr. Harrow calculated that "[o]ver the past year, he ha[d] completed five TSNs valued at $ 3,808,099. Upon analyzing the TSNs, [Mr. Harrow] recommended a total of $ 2,777,299, with a combined cost avoidance of $ 1,030,800." *Id.* Because of this, and his other contributions, Mr. Harrow argued that the furlough was, "in fact, a weakening of DCMA's mission to provide Contract Administration Services to the Department of Defense Acquisition Enterprise and its partners to ensure delivery of quality products and services to the warfighter; on time and on cost." *Id.*

The Department provided no evidence to rebut Mr. Harrow's showing that his absence undermined the Department's efficiency in terms of time and money. Instead, the Department cited its "broad discretion to take actions to avoid a budget shortfall," saying that the Board "lacks authority" to review its spending decisions. APPX0052. The Department told the ALJ: "The Board's stated position is that under the circumstances, it will not second guess the Agency's spending

41

decisions." APPX0052. In sum, the Department argued that it had discretion to make *no* showing of efficiency whatsoever.

That interpretation of 7513(a) is inconsistent with the statutory text and the legislative history and should be rejected. Instead, the Court should find that the statutory text means what it says: that the Department was required to prove, by a preponderance of the evidence, that Mr. Harrow's furlough promoted the efficiency of service. Because the Department failed to make such a showing, the furlough was improper.

Accordingly, the Court should reverse Mr. Harrow's furlough and order the Department to award Mr. Harrow back pay with interest in accordance with the Back Pay Act, 5 U.S.C. § 5596.

## C.    Conclusion

For these reasons, the Board's order affirming Mr. Harrow's furlough is contrary to law and unsupported by substantial evidence. Accordingly, this Court should grant Mr. Harrow's Petition, reverse Mr. Harrow's furlough, and order the Department to award Mr. Harrow back pay with interest.

Date: November 20, 2024                    Respectfully Submitted,

                                          */s/ Joshua P. Davis*
                                          Joshua P. Davis
                                          Kyla J. Gibboney
                                          **BERGER MONTAGUE PC**
                                          505 Montgomery St., Ste. 625

San Francisco, CA 94111
Telephone: (800) 424-6690
*jdavis@bm.net*
*kgibboney@bm.net*

*Counsel for Petitioner*
*Stuart R. Harrow*

**ADDENDUM**

# <u>TABLE OF CONTENTS</u>

Final Order, PH-0752-13-3305-I-1 (May 11, 2022) ..................APPX0001

Initial Decision, PH-0752-13-3305-I-1 (July 19, 2016).............APPX0014

5 U.S.C. § 7512 ........................................................................ 1a

5 U.S.C. § 7513 ........................................................................ 2a

5 U.S.C. § 7703 ........................................................................ 3a

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

STUART R. HARROW,
                Appellant,

     v.

DEPARTMENT OF DEFENSE,
                Agency.

DOCKET NUMBER
PH-0752-13-3305-I-1

DATE: May 11, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Stuart R. Harrow</u>, Kew Gardens, New York, pro se.

<u>Lida V. Kianoury</u>, Esquire, Philadelphia, Pennsylvania, for the agency.

## BEFORE

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the agency's furlough action. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

¶2    The appellant was employed by the Defense Contracting Management Agency (DCMA) in its Philadelphia, Pennsylvania office.  Initial Appeal File (IAF), Tab 1 at 7-9, Tab 4 at 24-28.  The DCMA is a component of the Department of Defense (DOD). *Vassallo v. Department of Defense*, 122 M.S.P.R. 156, ¶ 2, *aff'd*, 797 F.3d 1327 (Fed. Cir. 2015).  DOD imposed department-wide furloughs during Fiscal Year (FY) 2013.  The furloughs resulted from the sequestration, which required across-the-board reductions in Federal spending pursuant to the Balanced Budget and Emergency Deficit Control Act, as amended, as well as from the misallocation of funds while DOD was operating under a continuing resolution and incurring unexpectedly high wartime costs.  Complete Defense Contract Management Agency Administrative Record for FY 2013 Furlough Appeals (CAR), part 1 at 1-8.[2]  The furloughs were widely imposed throughout DOD with only a few categories of exempt employees.  *Id.* at 63-67. As a component of DOD, the DCMA was required to follow the directive of the Secretary of Defense and implement the furloughs within its workforce.  *Id.* at 72.

---

[2]  The CAR is a set of documents pertaining to all DCMA appeals for the 2013 sequestration furlough.  The CAR may be found on the Board's website at https://www.mspb.gov/furloughappeals/dcma2013.htm.

¶3        The agency issued the appellant a proposal notice for the furlough, which he received on May 29, 2013.  IAF, Tab 4 at 30-32.  The appellant replied to the notice and requested that the agency exempt him on the ground that the furlough would impose a financial hardship on his family.  *Id.* at 29.  The deciding official issued the appellant a decision letter on July 2, 2013, informing him that he would be furloughed for up to 11 workdays; ultimately, he was furloughed for 6 days.  *Id.* at 20-23, 26-28.

¶4        The appellant filed a timely Board appeal challenging the furlough.  IAF, Tab 1.  He questioned the legitimacy of the furlough action and argued that he should have been exempt because the resulting loss of pay would subject him to financial hardship.  *Id.* at 5; IAF, Tab 4 at 29.  He also took issue with the decision to require him to serve his furlough days on a discontinuous basis rather than on consecutive days, arguing that he might have been able to find temporary employment during the furlough days if he had been allowed to serve them consecutively.  IAF, Tab 1 at 5.  The appellant additionally challenged the agency's assertion that the furlough promoted the efficiency of the service.  *Id.*; IAF, Tab 8 at 5-13, Tab 15.  He advocated broadening the definition of "efficiency of the service" and establishing a formula by which it could be measured.  IAF, Tab 8 at 8-9, 11-13, Tab 11 at 8-27.

¶5        Originally, the appellant's appeal was consolidated with those filed by other DCMA employees assigned to the agency's Philadelphia Office, and the consolidated appeal was designated as *DCMA Phila v. Department of Defense*, MSPB Docket No. PH-0752-14-0405-I-1.  Consolidated Appeal File (CAF), Tab 3.[3]  The administrative judge directed the appellants in *DCMA Phila* to file their prehearing submissions by May 11, 2015, and to participate in a prehearing teleconference on May 18, 2015.  CAF, Tab 13.  Of the 33 persons who comprised the pool of appellants in the consolidated appeal, only the appellant in

---

[3] All pleadings and orders in the CAF are docketed as *DCMA Phila v. Department of Defense*, MSPB Docket No. PH-0752-14-0405-I-1.

the instant case filed a prehearing submission or participated in the prehearing teleconference. CAF, Tab 16. The administrative judge thus cancelled the hearing for the other appellants, deciding their appeals on the written record. *Id.* The administrative judge held a hearing for the appellant on June 25, 2015. IAF, Tab 15 at 1.

¶6    The administrative judge issued an initial decision finding that the agency established it had a legitimate factual basis for the furlough and that the furlough promoted the efficiency of the service. IAF, Tab 20, Initial Decision (ID) at 10. He explained that he lacked authority to change Board law regarding defining and measuring the efficiency of the service. ID at 10-11. The administrative judge further found that the appellant failed to show he was erroneously excluded from any of the categories of employees exempt from the furlough for mission-specific reasons. ID at 10. As for the appellant's contention that the furlough caused his family financial hardship, the administrative judge found that such equitable considerations would not establish a basis for finding that the furlough action was improper or that it failed to promote the efficiency of the service. ID at 11. He likewise found that the Board lacked jurisdiction over such considerations as whether the appellant might have been allowed to serve the furlough on consecutive days. ID at 11-12. The administrative judge thus affirmed the furlough action. ID at 12.

¶7    Before issuing the initial decision, the administrative judge notified the parties that the Board had experienced a significant data loss from its computer systems, and the recording of the hearing in this appeal had been lost. The administrative judge prepared for the parties a detailed 6-page Memorandum of Record Summarizing the Hearing of June 25, 2015, which set forth the issues and testimony from the hearing. IAF, Tab 15. The memorandum states that both parties reviewed the administrative judge's notes from the hearing, which were reproduced therein, and both confirmed that the notes accurately represented the testimony and closing arguments presented at the hearing. *Id.* at 1. The

administrative judge prepared the initial decision from these hearing notes.  ID at 1 n.1.

¶8　　　The appellant filed a petition for review and a related motion to reopen discovery for the purpose of examining the Board's records.  Petition for Review (PFR) File, Tabs 1, 3.  The appellant argues that the administrative judge's preparation and use of the Memorandum of Record, though admirable, did not have a basis in the Board's procedures or rules.  PFR File, Tab 1 at 9-11.  The appellant further argues that because the Memorandum of Record was prepared only 4 days before the initial decision was issued, it was likely that the initial decision was prepared from an alternative source.  *Id.* at 7.  The appellant additionally asserts that the administrative judge "did not provide any details regarding the date of [the Board's data] loss, or the circumstances surrounding the loss." *Id.* at 10.  He thus explains that he "invokes his right of Discovery, and requests that the [Board] provide him with the full circumstances of the 'issue involving the Merit Systems Protection Board's computer server.'" *Id.*

¶9　　　At the outset, to the extent that the appellant may be asserting that the loss of hearing tapes violated 5 U.S.C. § 7701(a)(1) (providing for a hearing "for which a transcript will be kept") or 5 C.F.R. § 1201.53(a) (recognizing that a hearing is ordinarily recorded by a court reporter under an administrative judge's guidance, but that "[j]udges may prepare recordings in some hearings, such as those conducted telephonically"), we disagree.

¶10　　　In *Harp v. Department of the Army*, 791 F.2d 161, 163 (Fed. Cir. 1986), the U.S. Court of Appeals for the Federal Circuit rejected a petitioner's claim that the unavailability of a hearing transcript constituted harmful error per se, requiring reversal of the Board's decision.  The court noted that "such loss is not fatal" to the court's ability to review a Board appeal.  The court analyzed several factors in its consideration of whether a fatal flaw occurred, such as whether the appellant established that he was prejudiced by the loss of the hearing transcript, whether the appellant showed that the administrative judge failed to consider or misused

any particular testimony from the hearing, and whether other evidence existed in the record that would support the administrative judge's findings. *Id.*; *see also Kemp v. Department of Veterans Affairs*, 154 F. App'x 912, 914 (Fed. Cir. 2005)[4]; *Morales v. Merit Systems Protection Board*, 932 F.2d 800, 802 (9th Cir. 1991); *Henderson v. Office of Personnel Management*, 109 M.S.P.R. 529, ¶ 5 n.1 (2008).

¶11     Here, we find that the appellant did not show that he was prejudiced by the absence of the telephonic hearing tapes and he did not allege that the administrative judge failed to consider or misused any particular testimony of the two approved witnesses that might have caused a different result in this case. In addition, while the hearing tapes may not have been available, the record in this case was sufficiently developed to provide a basis for a meaningful review of the issues raised by the appellant. In his summary of the prehearing conference, the administrative judge noted that, in making his decision, he would consider all of the exhibits contained in the agency files in both this case and the consolidated appeal designated as *DCMA Phila*, along with any documents attached to the appellant's petition for appeal. The administrative judge also wrote that he would consider the exhibits included in the DCMA administrative record, located at http://www.mspb.gov/furloughappeals/dcma2013.htm. Our review of the initial decision indicates that the administrative judge did just that; the initial decision contains a detailed and thorough analysis that demonstrates a careful consideration of the testimony and weighing of the evidence. ID at 1-12. In fact, the appellant failed to show that the hearing testimony was in any way different from that related by the administrative judge in the initial decision.

¶12     The appellant further suggests that the hearing itself was too informal, and a recording of the hearing would show that he had been ill-prepared to testify under

---

[4] The Board may follow a nonprecedential decision of the Federal Circuit when, as here, it finds its reasoning persuasive. *Morris v. Department of the Navy*, 123 M.S.P.R. 662, ¶ 13 n.9 (2016).

such circumstances.  He argues that had he been able to give his prepared testimony, the outcome of the appeal may have been different.  PFR File, Tab 1 at 10-11.  He included with his petition for review a copy of the prepared testimony comprising Power Point slides and hand-written notes that he evidently was intending to provide at a more formal hearing.  *Id.* at 22-35.  The appellant's argument is unavailing.  The appellant asserted that he may have been confused by some of the administrative judge's instructions during the prehearing conference.  *Id.* at 8-9.  However, having subsequently agreed in writing that the Memorandum of Record accurately represented the hearing testimony from which the administrative judge would prepare the initial decision, *id.* at 17-21, he cannot reverse his position now in the hope that the Board will grant him the opportunity to present his testimony and arguments once more and in greater detail.

¶13    We likewise deny the appellant's motion to reopen discovery.  Discovery is the process by which a party may obtain information relevant to his case that another person or party has not already provided.  5 C.F.R. § 1201.71.  Relevant information includes information that appears reasonably calculated to lead to the discovery of admissible evidence.  *Id.*  Discovery is intended to assist the parties in preparing and presenting their cases.  *Id.*  Board records pertaining to its information technology systems[5] would not assist the appellant in finding admissible evidence regarding DCMA's decision to furlough him.  Therefore, the appellant's motion is denied.

¶14    The appellant also has asked the Board to reconsider its standard set forth in *Chandler v. Department of the Treasury*, 120 M.S.P.R. 163 (2013), for determining whether a furlough decision promotes the efficiency of the service.  PFR File, Tab 1 at 8, 11-14.  In *Chandler*, the Board deferred to agency discretion

---

[5] MSPB's Annual Report for FY 2015 explained that the agency "experienced an IT outage in late June 2015 resulting in the loss of [its] virtual IT environment and employee working and archived documents."  Annual Report for FY 2015 (Feb. 29, 2016), https://mspb.gov/about/annual_reports/MSPB_FY_2015_Annual_Report_1275851.pdf.

regarding decisions such as allocating budgetary resources and furlough days among employees who are not similarly situated. *Chandler*, 120 M.S.P.R. 163, ¶ 9. Instead, the Board found that the efficiency of the service determination encompassed issues relating to uniformly and consistently applying the furlough, including whether the agency used a furlough to target employees for personal reasons, or attempted to exempt certain employees from the furlough without legitimate management reasons. *Id.* The appellant asserts that the separate opinion in *Chandler*, which criticized the majority's recognition of the agency's broad discretion under the statute to impose a furlough, offered a better approach. PFR File, Tab 1 at 8. The appellant argued that the Board should expand the definition of the efficiency of the service and establish criteria by which to measure how the efficiency of the service is furthered, considering each agency's unique mission requirements. *Id.* at 12. He argues that the Board's definition is so broad as to be vague. *Id.* at 12-13.

¶15        The appellant's argument is unavailing. The appellant acknowledges that *Chandler* is the Board's current standard for analyzing whether a furlough promotes the efficiency of the service.[6] He also admits that the administrative judge followed *Chandler*. While he might criticize *Chandler* and agree with the then-Vice Chairman's separate opinion, we find his personal preferences on this issue are insufficient reason for the Board to disturb settled law.

### NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such

---

[6] The U.S. Court of Appeals for the Federal Circuit in *Berlin v. Department of Labor*, 772 F.3d 890, 895 (Fed. Cir. 2014) "[found] nothing improper" in the Board's adoption of the standard set forth in *Chandler* and determined that the Board's standard was "reasonable."

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

review and the appropriate forum with which to file.  5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

(1) **Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  [5 U.S.C. § 7702](b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under [5 U.S.C. § 2302](b)(8) or other protected activities listed in [5 U.S.C. § 2302](b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on

petition for review within **60 days** of the <u>date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:

_____
/s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## NORTHEASTERN REGIONAL OFFICE

| | |
|---|---|
| STUART R. HARROW,<br>            Appellant, | DOCKET NUMBER<br>PH-0752-13-3305-I-1 |
| v. | |
| DEPARTMENT OF DEFENSE,<br>            Agency. | DATE: July 19, 2016 |

Stuart R. Harrow, Kew Gardens, New York, pro se.

Lida V. Kianoury, Esquire, Philadelphia, Pennsylvania, for the agency.

## BEFORE
Daniel F. McLaughlin
Administrative Judge

## INITIAL DECISION

Appellant Stuart R. Harrow is an employee of the Department of Defense (agency or DOD), who timely filed a petition for appeal with the Merit Systems Protection Board (Board) challenging the agency's decision to furlough him. The Board has jurisdiction over this appeal. 5 U.S.C. § 7511, 7512(5), 7701. A telephonic hearing was held on June 25, 2015 at the appellant's request. IAF, Tab 15.[1] For the reasons set forth below, the agency's decision to furlough the appellant is AFFIRMED.

---

[1] The parties agreed to conduct the hearing telephonically. IAF, Tab 13. The recording of the hearing was lost due to a computer server crash. The testimony and arguments from the hearing are summarized in a Memorandum of Record. IAF, Tab 15. The parties reviewed and confirmed that the Memorandum of Record represents an accurate summary of the hearing, and have accepted it in lieu of holding another hearing. Id.

## ANALYSIS AND FINDINGS

<u>Background</u>

In August 2011, Congress and the President enacted the Budget Control Act (BCA), amending Balanced Budget and Emergency Deficit Control Act (BBEDCA) of 1985.  Pub. L. No. 112-25, 125 Stat. 240 (Aug. 2, 2011).  The BCA imposed discretionary spending limits for fiscal years 2012 to 2021 to reduce projected spending and meet set fiscal targets. See 2 U.S.C. § 901(c). The BCA also placed restrictions on the ability of the federal government to exceed the discretionary spending limits in any given fiscal year. 2 U.S.C. §§ 901, 901a.

To achieve its monetary reduction goals, the BCA established a Joint Congressional Committee known as the Joint Select Committee on Deficit Reduction (Joint Committee), which was tasked with proposing legislation to reduce the deficit by at least an additional $1.2 trillion through fiscal year 2021. 2 U.S.C. § 901a.  When the Joint Committee failed to reach an agreement on how to reduce the deficit, a mandatory sequestration process was triggered. 2 U.S.C. § 901a(5)   As a result, the President ordered sequestration on March 1, 2013, requiring across-the-board reductions in federal spending pursuant to the BBEDCA, as amended.   DCMA Administrative Record (AR), Part A, Tab 22. [2] See also, *Chandler v. Department of the Treasury,* 120 M.S.P.R. 163, 169 (2013).

To comply with the President's sequestration order, the Secretary of Defense (SECDEF), on May 14, 2013, issued a memorandum directing managers within the DOD to prepare to furlough most DOD civilian employees for up to eleven workdays during fiscal year 2013.   DCMA AR, Part A, Tab 11. As explained in the Secretary's memorandum, sequestration reduced the DOD operation and maintenance (O&M) accounts that pay many civilian DOD employees. *Id.* (pages 60 – 62).

---

[2] The DCMA Administrative Record (AR) is located online at the following Website: http://www.mspb.gov/furloughappeals/dcma2013.htm.

3

Originally, the DOD faced a shortfall of more than $40 billion for its O&M accounts. AR, Part A, Tab 1 (pages 1 – 11, ¶ 10) (Declaration of Robert F. Hale, Under Secretary of Defense Comptroller/Chief Financial Officer). Such a sizeable deficit would have required the DOD to furlough employees for 22 days. *Id.* at ¶ 13.

To minimize the impact on employees, the DOD considered and implemented various actions to reduce the budgetary shortfall. *Id.* at ¶¶ 12, 15 and 16. The DOD planned to make up most of this shortfall through cost-cutting measures such as freezing new hiring, laying off temporary and term employees, sharply cutting training, travel and facility maintenance expenditures, and shutting down some flying exercises. *Id.* It also reallocated funds from other accounts to the O&M accounts. *Id.* at ¶ 15.

Despite these measures, a sizeable fiscal deficit remained. *Id.* ¶ 17. The SECDEF determined that this deficit could not be reduced by making further cuts to training, maintenance and other areas without seriously eroding military readiness. *Id.* Therefore, the SECDEF concluded that the DOD would still need to furlough its employees to make up the rest of the shortfall. *Id.* However, as a result of the cost cutting measures the DOD had implemented, the number of days that employees would need to be furloughed was reduced to 11 days from the original estimate of 22 days. *Id.* at ¶ 13. These furloughs would be imposed in every military department and almost every DOD agency, impacting about 85% of all DOD civilian employees. AR, Part A, Tab 11 (pages 60 - 62).

In an attachment to his memorandum, the SECDEF provided a list of approved furlough exceptions, which included employees deployed to a combat zone, those whose jobs are necessary to protect safety of life and property, Navy Shipyard employees, National Intelligence Program employees, Foreign Military Sales employees, political appointees, non-appropriated fund instrumentality (NAF) employees, foreign national employees, and various types of employees not paid directly by DOD-Military accounts. AR, Part A, Tab 11 (pages 63 – 64).

At all times relevant hereto, the appellant was employed by the Defense Contracting Management Agency (DCMA) assigned to its regional office located in Philadelphia, Pennsylvania.  IAF, Tab 1 and Tab 4 (p. 24 of 35).  DCMA is a subcomponent of the DOD.  *Vassallo v. Department of Defense,* 122 M.S.P.R. 156, ¶ 2 (2015).  Because DCMA is a part of the DOD, it was required to follow the directive of the SECDEF to implement the furloughs within its workforce.  AR, Part A, Tab 12 (page 72) (DCMA Director Williams Message on Furloughs, dated 5/14/12).

The agency issued the appellant a furlough proposal notice, which he received on May 29, 2013.  IAF, Tab 4 (p.p. 30-32).  The proposal informed the appellant that Captain Russell G. Pendergrass (USN) would serve as the Deciding Official, and it also told him of his right to reply as required by U.S. Code, Chapter 75.  *Id.*

The appellant elected to reply to the proposed action.  In an email sent to Capt. Pendergrass on June 5, 2013, the appellant requested that he be exempt from the furlough on the grounds that a reduction of "…approximately 20 percent of my bi-weekly salary would pose an undue financial hardship upon myself and family." IAF, Tab 4 (p. 29).

After considering the appellant's response, Capt. Pendergrass issued a letter of decision letter received by the appellant on July 2, 2013, in which he informed him that he would be furloughed for up to eleven workdays.  IAF, Tab 4 (p.p. 26-28).  Ultimately, the appellant was only furloughed for six days.  *Id.* (p.p. 20-23).

The appellant filed a timely petition for appeal challenging his furlough.  IAF, Tab 1.  Originally, his appeal was consolidated with those filed by other DCMA employees assigned to the agency's Philadelphia Office, and was designated as *DCMA Phila v. Department of Defense,* Docket No. PH-0752-14-

0405-I-1.  See Consolidated Appeal File (CAF), Tab 3.[3]  On April 1, 2015, I issued a Hearing Order in the *DCMA Phila* group consolidation, directing the appellants to file their prehearing submissions by May 11, 2015 and participate in a prehearing teleconference on May 18, 2015. See CAF, Tab 13.  The agency filed its prehearing submission and its representative participated in the prehearing teleconference. *Id.,* Tabs 15 and 16.  Of the 33 appellants in the consolidated hearing group appeal, only appellant Stuart R. Harrow complied with the Hearing Order. *Id.*  None of the other appellants filed a prehearing submission or participated in the prehearing teleconference. They also failed to explain why they did not comply with the Hearing Order. *Id.,* Tab 16.  Therefore, on May 19, 2015, I issued an Order cancelling the hearing in *DCMA Phila,* Docket No. PH-0752-14-0405-I-1. *Id.* This Order also directed that the appeals of the 32 appellants who had failed to comply with the Hearing Order from the *DCMA Phila* group would have their appeals decided based upon the written record. *Id.*

Because appellant Stuart Harrow did comply with the Hearing Order, he preserved his right to have his issues decided after a hearing.  CAF, Tab 16. The hearing he requested was held on June 25, 2015.  IAF, Tab 15.  During the hearing, the agency presented the testimony of Capt. Pendergrass, who explained the furlough process as it pertained to the appellant, to include the issuance of a Notice Letter by the proposing official informing him of the agency's intent to furlough him and providing him with an opportunity to respond. *Id.* (Testimony of Capt. Pendergrass). He also testified that after considering the appellant's email response to the proposal, he concluded that furloughing the appellant was necessary to promote the efficiency of the service. *Id.*

---

[3] All pleadings and Orders in the Consolidated Appeal File (CAF) are docketed as *DCMA Phila v. Department of Defense,* Docket No. PH-0752-14-0405-I-1.

The appellant's testimony during the hearing dovetailed into his closing argument. When this testimony is considered in combination with the statements made in his petition for appeal and his prehearing submissions, it becomes apparent that he has made a multipronged legal and fact based attack on the legitimacy of the agency's furlough action.

In both his response to the deciding official and in his petition for appeal, the appellant stated that the agency should have exempted him from being furloughed because the loss of pay resulting from the action would subject him to severe financial hardship. IAF, Tab 1 and Tab 4 (p. 29). The appellant also took issue in his appeal with the decision by Capt. Pendergrass to have him serve the furlough on a "discontinuous" basis rather than on consecutive days, noting that "[h]ad I been offered the opportunity of consecutive days, I might have been able to find temporary employment during those furlough days, ameliorating the loss of income." IAF, Tab 1.

During the hearing and in his petition for appeal, the appellant challenged the agency's claim that his furlough promoted the efficiency of the service. IAF, Tab 1 and Tab 15. He stated that given the critical work he performs for DCMA, his absence during the furlough resulted in "...a weakening of DCMA's mission to provide Contract Administration Services to the Department of Defense Acquisition Enterprise and its partners to ensure delivery of quality products and services to the warfighter; on time and on cost." IAF, Tab 1.

He also challenged the agency's claim that furloughing him and his coworkers had on promoting the efficiency of the service by arguing that the deciding official failed to consider the negative impact it had on worker morale and productivity, which in turn harmed DCMA's ability to fulfill its goals and mission. IAF, Tab 15.

The appellant believes that the agency applied an overly narrow construction of what the term "efficiency of the service" means. *Id.* He also argues that the Board's definition of the term is too narrow, and advocates

expanding it and establishing a formula by which it can be measured. *Id.* and Tab 11. In support of this argument, the appellant advocates the adoption of Vice Chairman Anne M. Wagner's opinion in *Chandler v. Department of the Treasury,* 120 M.S.P.R. 163 (2013), which dissented with the majority's decision to apply Reduction in Force principles when assessing appeals challenging furlough actions. *Id.*

Applicable law and burden of proof

Federal agencies have broad discretion to take action to avoid a deficit. *See Waksman v. Department of Commerce,* 37 M.S.P.R. 640, 645 (1988) (discussing reductions in force), *aff'd sub nom. Harris v. Department of Commerce,* 878 F.2d 1447 (Fed. Cir. 1989) (Table). Among other things, an agency may furlough employees by placing them in a temporary status without duties and pay because of a lack of funds. 5 U.S.C. §§ 7511(a)(5), 7512.

The term "furlough" means the placing of an employee in a temporary status without duties and pay because of a lack of work or funds or other nondisciplinary reasons. 5 U.S.C. § 7511(a)(5); 5 C.F.R. § 752.402. A furlough of 30 days or less is appealable to the Board under 5 U.S.C. § 7512(5). *See* 5 C.F.R. § 752.401(a)(5). Agencies may conduct furloughs of 30 days or less without following reduction in force (RIF) procedures. Furloughs are reviewable by the Board under the "efficiency of the service" standard of 5 U.S.C. § 7513(a), and the RIF principles are instructive. *Chandler,* 120 M.S.P.R. at 170-71.

An agency bears the burden of proving by a preponderance of the evidence the factual basis for the furlough and that the furlough promotes the efficiency of the service.[4] 5 U.S.C. § 7513(a); 5 C.F.R. § 1201.56(a)(1)(ii) (2013). An agency satisfies this "efficiency of the service" standard in a furlough appeal by showing,

---

[4] A preponderance of the evidence means that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.56(c)(2).

in general, that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a "fair and even manner." *Clark v. Office of Personnel Management,* 24 M.S.P.R. 224, 225 (1984).

According to *Chandler,* "fair and even manner," means that the agency applied the adverse action furlough "uniformly and consistently" just as it is required to apply a RIF. *Chandler,* at 171. It does not, however, mean that the agency is required to apply the furlough in such a way as to satisfy the Board's sense of equity. *Id.* Rather, it means that the agency is required to treat similar employees similarly and to justify any deviations with legitimate management reasons. *Id.; see also,* 5 C.F.R. § 752.404(b)(2) ("When some but not all employees in a given competitive level are being furloughed, the notice of proposed action must state the basis for selecting a particular employee for furlough, as well as the reasons for the furlough.").

The determination as to which employees are similarly situated for purposes of an adverse action furlough must be made on a case-by-case basis, but the Board will look to the RIF principles for guidance. *Chandler* at 171-72. Additionally, an agency's failure to obtain additional furlough exemptions does not establish that the agency's action was an unreasonable management solution to financial restrictions placed on it or that the agency failed to apply the furlough in a fair and even manner. *Kelly v. Department of the Army*, MSPB Docket No. PH-0752-13-5622-I-1, ¶8.

Finally, the Board's efficiency of the service determination does not encompass agency spending decisions *per se,* including spending on personnel matters. *See Schroeder v. Department of Transportation,* 60 M.S.P.R. 566, 570 (1994) (even if the agency might have avoided a RIF had it manipulated its budget in a different manner, it is within the agency's broad management discretion to take action to avoid a budget deficit, and the Board lacks the authority to look behind the agency's decision to remedy that deficit); *Griffin v.*

*Department of Agriculture,* 2 M.S.P.R. 168, 171 (1980) (the agency's decision to replace certain employees with private contractors was a matter committed by law to agency discretion and was unreviewable by the Board in the context of a RIF proceeding).   Nor does it encompass an agency's decision to allocate furlough days in a certain manner among employees who are not similarly situated.  *See Waksman v. Department of Commerce,* 37 M.S.P.R. 640, 645-46 (1988), *aff'd sub nom. Harris v. Department of Commerce,* 878 F.2d 1447 (Fed. Cir. 1989) (Table) (an agency has broad discretion to avoid a deficit by conducting a RIF, and the Board will not second guess an agency's decision to reorganize its work force as it lacks authority to review the management considerations underlying that exercise of discretion).  Such matters belong to the judgment of agency managers, who are in the best position to decide what allocation of funding will best allow the agency to accomplish its mission.  *Chandler* at 171-72.

What the efficiency of the service determination does encompass are issues relating to the uniform and consistent application of the furlough, including whether the agency used a furlough to target employees for personal reasons or attempted to exempt certain employees from the furlough without legitimate management reasons.  *Chandler* at 172.

Before the Board reaches the issue of whether or not the furlough promotes the efficiency of the service, the agency must first prove that there is cause for the action.  *Dye v. Department of the Army,* 121 M.S.P.R. 142, ¶ 9 (2014).  However, in order to have "cause" to furlough an employee, an agency must establish that an appellant met the established criteria for being subject to, and was not excepted from the furlough.  *Id.* If the agency fails to allege or prove cause for the action, the Board's inquiry stops there.  *Id.*

1.    <u>There was a legitimate factual basis for the furloughs</u>
      <u>which promoted the efficiency of the service</u>

As summarized above, the SECDEF memorandum and the other memorandums and affidavits set out in detail the factual basis for the DOD-wide furloughs. Based on this documentary evidence, I have no doubt that the DOD was facing a serious budget shortfall even after taking various cost-cutting measures, such as reducing travel and training expenditures and terminating numerous temporary and term employees, in an attempt to avoid the furloughs. Therefore, the agency demonstrated that furloughing the appellant promoted the efficiency of the service because it represented a reasonable management solution to the financial restrictions confronting it during the second half of Fiscal Year 2013. See *Clark v. Office of Personnel Management,* 24 M.S.P.R. at 225.

The appellant's effort to expand the term "efficiency of the service" is contrary to the meaning of that term as set forth in the Board's controlling case law. While the appellant's prehearing submissions constitute a Herculean effort on his part to broaden that term, I am without authority to rule in a manner that contradicts prevailing Board case law. I also lack the authority to adopt the dissenting opinion in *Chandler.*

2.    <u>The appellant's opinion of the mission critical nature of</u>
      <u>his job is not sufficient to exempt him from furlough</u>

The appellant argues he should have been entitled to a furlough exemption based upon the importance of his work. He also claims that his absence during the furlough was detrimental to the agency's mission. While I have no doubt that the appellant performed valuable work for the agency, he has not shown that he was erroneously excluded from any of the categories of employees exempted for mission-specific reasons.

The Board lacks the authority to analyze the nature and job duties of every positon classification within an agency to determine whether or not they are of

such a mission critical nature as to warrant a furlough exemption.    See *Department of Labor v. Avery,* 120 M.S.P.R. 150, 155 (2013)(Holding that "[t]he Board will not scrutinize an agency's decision to determine whether the agency has structured a furlough in a manner that second-guesses the agency's assessment of its mission requirements and priorities.")  Because agencies have primary discretion in managing their own workforces, such matters belong to the judgment of agency managers, who are in the best position to decide what allocation of funding will best allow the agency to accomplish its mission. *Chandler,* 120 M.S.P.R. 163, 172.

> 3.    Individual financial hardship does not delegitimize the furlough action

The furlough, by its very nature, undoubtedly created regrettable financial hardship for the appellant and his family.  In light of governing law, however, such essentially equitable considerations cannot establish a basis for concluding that the furlough action was improper or that it failed to promote the efficiency of the service.

> 4.    The refusal of the agency to permit the appellant to serve his furlough as a single continuous block of days is beyond the Board's jurisdictional scope to consider

The appellant argues that the furlough was implemented improperly, because the requirement that he serve it over a period of days spread out over a number of weeks prevented him from minimizing the financial impact it caused him.  This claim fails because the Board does not have jurisdiction over this issue.

The appellate jurisdiction of the Board is limited to those matters specifically conferred on it by statute or regulation.  5 U.S.C. § 7701(a); *Saunders v. Merit Systems Protection Board,* 757 F.2d 1288, 1290 (Fed. Cir. 1985).  While the Board has jurisdiction to consider appeals challenging an

agency's decision to impose a furlough, it does not have jurisdiction over the decision on when it must be served. See *Salo v. Department of Defense,* 122 M.S.P.R. 417, ¶ 10 (2015)(The Board holds that the "efficiency of the service determination does not encompass the issue of whether the furlough days for DCMA employees should have been continuous or discontinuous.") Accordingly, this claim fails on jurisdictional grounds.

The agency has satisfied its burden of proof by establishing the factual basis for the furlough and that it promoted the efficiency of the service. Accordingly, I affirm the agency's action.

## DECISION

The agency's action is AFFIRMED.

FOR THE BOARD:          _____
                        Daniel F. McLaughlin
                        Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **August 23, 2016**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important

because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

### Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an

erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record.  A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first.  If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt.  You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim.  The date of filing by mail is determined by the postmark date.  The date of filing by fax or by electronic filing is the date of submission.  The date of filing by personal delivery is the date on which the Board receives the document.  The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service.  Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party.  *See* 5 C.F.R. § 1201.4(j).  If the petition is filed electronically, the online process itself will serve the petition on other e-filers.  *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date this initial decision becomes final. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, that is, representation at no cost to you, the Federal Circuit Bar Association may be able to assist you in finding an attorney. To find out more, please click on this link or paste it into the address bar on your browser:

https://fedcirbar.org/Pro-Bono-Scholarships/Government-Employees-Pro-Bono/Overview-FAQ

The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

CERTIFICATE OF SERVICE

     I certify that the attached Initial Decision was sent as indicated this day to each of the following:

<u>Appellant</u>

Electronic Mail

Stuart R. Harrow
83-44 Lefferts Blvd
Kew Gardens, NY 11415

<u>Agency Representative</u>

Electronic Mail

Lida v. Kianoury, Esq.
Department of Defense
DCMAE-MPG
700 Robbins Avenue/Bldg. 4A/P.O. Box 11427
Philadelphia, PA 19111-0427

| July 19, 2016 | | |
| --- | --- | --- |
| (Date) | | Roy D. Mazique |
| | | Paralegal Specialist |

5 U.S.C. §7512 provides:

**Actions covered**

This subchapter applies to—

> (1) a removal;
>
> (2) a suspension for more than 14 days;
>
> (3) a reduction in grade;
>
> (4) a reduction in pay; and
>
> (5) a furlough of 30 days or less;

but does not apply to—

> (A) a suspension or removal under section 7532 of this title,
>
> (B) a reduction-in-force action under section 3502 of this title,
>
> (C) the reduction in grade of a supervisor or manager who has not completed the probationary period under section 3321(a)(2) of this title if such reduction is to the grade held immediately before becoming such a supervisor or manager,
>
> (D) a reduction in grade or removal under section 4303 of this title,
>
> (E) an action initiated under section 1215 or 7521 of this title, or
>
> (F) a suitability action taken by the Office under regulations prescribed by the Office, subject to the rules prescribed by the President under this title for the administration of the competitive service.

5 U.S.C. §7513 provides:

**Cause and procedure**

(a) Under regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service.

(b) An employee against whom an action is proposed is entitled to—

(1) at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action;

(2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

(3) be represented by an attorney or other representative; and

(4) a written decision and the specific reasons therefor at the earliest practicable date.

(c) An agency may provide, by regulation, for a hearing which may be in lieu of or in addition to the opportunity to answer provided under subsection (b)(2) of this section.

(d) An employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title.

(e) Copies of the notice of proposed action, the answer of the employee when written, a summary thereof when made orally, the notice of decision and reasons therefor, and any order effecting an action covered by this subchapter, together with any supporting material, shall be maintained by the agency and shall be furnished to the Board upon its request and to the employee affected upon the employee's request.

5 U.S.C. §7703 provides:

**Judicial review of decisions of the Merit Systems Protection Board**

(a)(1) Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision.

(2) The Board shall be named respondent in any proceeding brought pursuant to this subsection, unless the employee or applicant for employment seeks review of a final order or decision on the merits on the underlying personnel action or on a request for attorney fees, in which case the agency responsible for taking the personnel action shall be the respondent.

(b)(1)(A) Except as provided in subparagraph (B) and paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. Notwithstanding any other provision of law, any petition for review shall be filed within 60 days after the Board issues notice of the final order or decision of the Board.

. . .

(c) In any case filed in the United States Court of Appeals for the Federal Circuit, the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence;

except that in the case of discrimination brought under any section referred to in subsection (b)(2) of this section, the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court.

. . .

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

**CERTIFICATE OF COMPLIANCE
<u>WITH THE TYPE-VOLUME LIMITATIONS</u>**


Case Number:  2022-2254
Short Case Caption:  Harrow v. Dep't of Defense

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 9,726 words, excluding those items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), and Fed. Cir. R. 32(b)(2).


Date: November 20, 2024          */s/ Joshua P. Davis*
                                 Joshua P. Davis