No. 2022-2254

# In the United States Court of Appeals for the Federal Circuit

STUART R. HARROW,

*Petitioner,*

*v.*

DEPARTMENT OF DEFENSE,

*Respondent.*

**On Appeal from the Merit Systems Protection Board No. PH-0752-13-3305-I-1**

**BRIEF OF RESPONDENT DEPARTMENT OF DEFENSE**

YAAKOV M. ROTH
*Acting Assistant Attorney General*

PATRICIA M. MCCARTHY
*Director*

FRANKLIN E. WHITE, JR.
*Assistant Director*

GALINA I. FOMENKOVA
*Senior Trial Counsel*
*Commercial Litigation Branch,*
*Civil Division, U.S. Department of Justice*
*P.O. Box 480 | Ben Franklin Station*
*Washington, DC 20044*
*(202) 514-5495*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

STATEMENT OF RELATED CASES .......................................................1

JURISDICTIONAL STATEMENT ...........................................................2

STATEMENT OF THE ISSUES................................................................2

STATEMENT OF THE CASE ...................................................................3

    I.     The 2013 Sequestration And Mr. Harrow's Resulting Furlough ............................................................................... 3

    II.    Proceedings Before The MSPB ............................................... 6

    III.   Proceedings in this Court and the Supreme Court.................. 8

SUMMARY OF THE ARGUMENT ....................................................... 10

ARGUMENT ...........................................................................................13

    I.     Standard of Review................................................................. 13

    II.    The Court Should Dismiss Mr. Harrow's Appeal as Untimely ................................................................................. 13

        A.    The Court Should Address Whether the Deadline in Section 7703(b)(1) is Mandatory .................................. 13

        B.    The Deadline in Section 7703(b)(1) is Mandatory and Not Subject to Equitable Tolling ................................... 16

        C.    Even if the Deadline in Section 7703(b)(1) Could Theoretically be Tolled, Tolling is Not Available to Mr. Harrow............................................................ 19

            1.    Any Equitable Tolling to the Deadline in Section 7703(b)(1) Cannot be Based on Delay in the Petitioner's Receipt of the Board's Final Decision .................................................... 19

            2.    Mr. Harrow has not Demonstrated Either Diligence or Extraordinary Circumstances Beyond his Control ............................................20

    III.   If the Court Does not Dismiss the Appeal, it Should Affirm the Board's Decision Because the Board Applied the Correct Law and the Decision is Supported by Substantial Evidence..............24

CONCLUSION ........................................................................................31

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A/S v. Lupin Ltd.*,
    87 F.4th 1361 (Fed. Cir. 2023) ...................................................16

*Calhoun v. Dep't of the Army*,
    845 F.3d 1176 (Fed. Cir. 2017) ......................................12, 13, 27

*Dixon v. McDonald*,
    815 F.3d 799 (Fed. Cir. 2016) ...................................................14

*Eberhart v. United States*,
    546 U.S. 12 (2005) .............................................................14, 15

*Einboden v. Dep't of the Navy*,
    802 F.3d 1321 (Fed. Cir. 2015) ............................12, 13, 26, 27

*Fedora v. Merit Sys. Prot. Bd.*,
    848 F.3d 1013 (Fed. Cir. 2017) ...................................................8

*Harrow v. Dep't of Defense*,
    601 U.S. 480 (2024) ...........................................2, 9, 10, 16

*Hayes v. Dep't of Navy*,
    727 F.2d 1535 (Fed. Cir. 1984) .................................................27

*Holland v. Florida*,
    560 U.S. 631 (2010) .........................................................20, 21

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
    589 U.S. 178 (2020) .........................................................11, 20

*Irwin v. Department of Veterans Affairs*,
    498 U.S. 89 (1990) ...........................................................17, 24

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ...............................................25, 26, 27, 28

*Menominee Indian Tribe v. United States*,
    577 U.S. 250 (2016) .....................................................11, 20, 21

*Nat'l Fed'n of Fed. Emples., Local 1442 v. Dep't of the Army*,
  810 F.3d 1272 (Fed. Cir. 2015) ........................................................ 27, 28

*Nutraceutical Corp. v. Lambert*,
  586 U.S. 188 (2019) ............................................................................. 16

*Oja v. Dep't of the Army*,
  405 F.3d 1349 (Fed. Cir. 2005) ............................................... 10, 17, 18

*Polaroid Corp. v. Eastman Kodak Co.*,
  789 F.2d 1556 (Fed. Cir. 1986) ..........................................................25

*Santos-Zacaria v. Garland*,
  22 F.4th 570 (5th Cir. 2022) .............................................................. 14

*Snyder v. Dep't of the Navy*,
  854 F.3d 1366 (Fed. Cir. 2017) ...................................... 12, 26, 27, 28, 30

*United States v. Olano*,
  507 U.S. 725 (1993) .......................................................................... 14

*Wood v. Milyard*,
  566 U.S. 463 (2012) .......................................................................... 14

*Yeschick v. Mineta*,
  675 F.3d 622 (6th Cir. 2012) ..............................................................23

## STATUTES

5 U.S.C. § 7511............................................................................................30

5 U.S.C. § 7513......................................................................................2, 24, 26

5 U.S.C. § 7703 (2010) ............................................................................... 11

5 U.S.C. § 7703........................................................2, 9, 10, 13, 18, 19, 27

28 U.S.C. § 1295 ........................................................................................... 2

28 U.S.C. § 2074 ..........................................................................................18

Pub. L. No. 95-454, 92 Stat. 1111 (1978) ............................................. 18, 19

Pub. L. 97-164, 96 Stat. 25 (1982)............................................................ 18, 19

Pub. L. 105-311, 112 Stat. 2950 (1998) ................................................... 18, 19

Pub. L. 112-199, 126 Stat. 1465 (2012) ............................................11, 18, 20

## REGULATIONS AND RULES

5 C.F.R. § 1201.14 ................................................................................. 21, 22

Fed. R. App. P. 15 .......................................................................................17

Fed. R. App. P. 26 (1976)............................................................................18

Fed. R. App. P. 26 ..................................................................9, 10, 17, 19

## OTHER AUTHORITIES

Br. in Opp., *Harrow v. Dep't of Defense,*
    601 U.S. 480 (2024) (No. 23-21)................................................. 9, 15, 16

Office of the Clerk of the Board, MSPB, *Notice To Parties With A*
    *Pending Petition For Review Or Case Before The Full Board,* available at
    https://perma.cc/3Y6T-CMXT ................................................................23

## STATEMENT OF RELATED CASES

No appeal from this civil action was previously before this or any other appellate court.  Counsel is not aware of any case that is currently pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

This Court possesses jurisdiction to review a final decision of the Merit Systems Protection Board (MSPB or board).  28 U.S.C. § 1295(a)(9).  On May 11, 2022, the board issued a final decision that affirmed Mr. Harrow's six-day furlough as a result of the sequestration requiring across-the-board reductions within the Department of Defense (DOD) during Fiscal Year 2013.  Mr. Harrow filed his petition for review on September 16, 2022, *i.e.* more than "60 days after the [b]oard issue[d] notice of the final order or decision."  5 U.S.C. § 7703(b)(1)(A); *see* Order, ECF 9.  Because the Supreme Court held that this deadline is not jurisdictional, *Harrow v. Dep't of Defense*, 601 U.S. 480 (2024), the Court still possesses jurisdiction to entertain the petition; however, as addressed below, the petition should be dismissed as untimely.

## STATEMENT OF THE ISSUES

1.      Whether Mr. Harrow's undisputedly untimely petition must be dismissed either because the deadline in section 7703(b)(1)(A) is mandatory or because Mr. Harrow cannot meet the standard for equitable tolling.

2.      If the petition is not dismissed, whether the board's decision should be affirmed because the board applied the correct law and its finding that the agency proved that Mr. Harrow's furlough was taken for "such cause as will promote the efficiency of the service," 5 U.S.C. § 7513(a), is supported by

substantial evidence.

## STATEMENT OF THE CASE

### I.     The 2013 Sequestration And Mr. Harrow's Resulting Furlough

In 2011, the Budget Control Act was enacted, imposing discretionary spending limits for fiscal years 2012 through 2021, and establishing a Joint Select Committee on Deficit Reduction tasked with proposing legislation to reduce the deficit by $1.2 trillion during that timeframe. *See* Appx15. When the Committee failed to reach agreement on how to reduce the deficit, a mandatory sequestration process was triggered and on March 1, 2013, the President ordered sequestration requiring across-the-board reductions in Federal spending. *See* Appx15.

The DOD was no exception to the sequestration and faced an approximately $40 billion reduction in funding. *See* Appx16; Appx302 (Hale Decl. ¶ 10). In response, the DOD determined that "it would have to consider furloughs and other actions to ensure it could execute its core mission and to bring its expenditures down to appropriated levels." Appx302 (Hale Decl. ¶ 11). The DOD sought to minimize furloughs—"understand[ing] that the decision to impose furloughs imposes financial burdens on our valued employees, harms overall morale, and corrodes the long-term ability of the Department to carry out the national defense mission"—while remaining faithful to its "overriding objective" of "protect[ing] the warfighter." Appx302, Appx308 (Hale Decl. ¶¶ 11, 21);

3

Appx312 (SecDef Memo); *see* Appx16.

Thus, the DOD first took various other measures including "freezing new hiring, laying off temporary and term employees, sharply cutting training, travel and facility maintenance expenditures, and shutting down some flying exercises." Appx16; *see* Appx303, Appx305 (Hale Decl. ¶¶ 12, 16).   However, even with these efforts, the DOD was still facing a shortfall, and in May 2013, the Secretary of Defense decided to "impose furloughs on civilian personnel rather than making even larger cuts in training and maintenance that would have further eroded military readiness."  Appx305 (Hale Decl. ¶ 17); Appx310-312 (SecDef Memo); *see* Appx15-16.  Although the DOD initially projected that it would need to furlough employees for 22 days, it was subsequently able to reduce that estimate first to a maximum of 11 days, and ultimately to just 6 days.  Appx16-17; Appx305-306, Appx308 (Hale Decl. ¶¶ 17, 21).

The DOD identified "limited exceptions driven by law and by the need to minimize harm to mission execution," such as civilians deployed in combat zones, but otherwise "[f]urloughs [were to] be imposed in every military department as well as almost every agency and in [the] working capital funds," affecting approximately 85% of all civilian employees paid directly by Department funds. Appx311 (SecDef Memo); Appx305-306 (Hale Decl. ¶ 17); *see* Appx16.

Mr. Harrow was among those 85%.  In 2013 he was employed by the

Defense Contracting Management Agency (DCMA), a DOD component.  Appx2; Appx17.  On May 29, 2013, Mr. Harrow received a furlough proposal notice. Appx32-34.  The notice explained that the proposed furlough was "necessitated by the extraordinary and serious budgetary challenges facing the Department of Defense," and further, because the DOD "must and will protect wartime operations funding for our troops in harm's way," "[t]his inevitably means larger cuts in base-budget funding for the Operation and Maintenance [] accounts" from which many civilian employees are paid.  Appx32; *see* Appx15.  Thus, the "furlough [was] proposed to help meet" the need for funding that "can be used to provide the warfighters with what they need to protect national security and fight this war," "while avoiding a deficit of funds in FY 2013."  Appx32.

The notice also informed Mr. Harrow of his opportunity to respond to the proposed furlough.  Appx33-34.  Mr. Harrow submitted a written response, requesting that he be exempt from the furlough because a "reduction of approximately 20 percent of [his] bi-weekly salary would pose an undue financial hardship upon [him] and [his] family."  Appx72; Appx17.  After considering Mr. Harrow's response, Captain Pendergrass, the deciding official, sustained the proposed furlough.  *See* Appx35-37.  Captain Pendergrass "recognize[d] the difficult financial implications of any furlough," but "determined that the reasons provided in the Notice of Proposed Furlough remain valid."  *Id.*  The decision

letter also informed Mr. Harrow of his MSPB appeal rights.  *Id.*

## II.     Proceedings Before The MSPB

Mr. Harrow—along with 32 other DCMA employees furloughed from his office—appealed to the MSPB.  *See* Appx17-18.  The petitions were consolidated, though ultimately only Mr. Harrow's proceeded to a hearing; the other 32 were decided based on the written record.  During the hearing, Captain Pendergrass testified that he "considered whether any of the exemptions identified by the Secretary of Defense applied to the employees in the Eastern Region," where Mr. Harrow worked, but "concluded that none of the employees met any of the exemptions and thus, they should be furloughed."  Appx154.  Captain Pendergrass further testified that he "considered [Mr. Harrow's] response" to the notice of proposed furlough, "but concluded that the furlough was necessary to promote the efficiency of the service."  Appx165.

Mr. Harrow argued that "the agency should have exempted him from being furloughed because the loss of pay resulting from the action would subject him to severe financial hardship," that he should have been permitted to serve his furlough on consecutive rather than discontinuous days, and that his furlough did not promote the efficiency of the service because the work he performed was "critical" and because furloughs would have a "negative impact … on worker morale and productivity."  Appx19.

The administrative judge affirmed the furlough. Appx14-25. Upon considering the evidence presented at Mr. Harrow's hearing and the exhibits contained in the DCMA consolidated administrative record, *see* Appx149, the administrative judge found that "the agency demonstrated that furloughing [Mr. Harrow] promoted the efficiency of the service because it represented a reasonable management solution to the financial restrictions confronting it during the second half of Fiscal Year 2013." Appx23. The administrative judge recognized that the "efficiency of the service determination does not encompass agency spending decisions *per se*, including spending on personnel matters," "[n]or does it encompass an agency's decision to allocate furlough days in a certain manner among employees who are not similarly situated." Appx21-22. "Such matters belong to the judgment of agency managers, who are in the best position to decide what allocation of funding will best allow the agency to accomplish its mission." Appx22; *see* Appx23-24.

As such, the administrative judge observed that "[w]hile [he] ha[d] no doubt that [Mr. Harrow] performed valuable work for the agency, he has not shown that he was erroneously excluded from any of the categories of employees exempted for mission-specific reasons." Appx23. The administrative judge similarly observed that "[t]he furlough, by its very nature, undoubtedly created regrettable financial hardship for the appellant and his family," but "such essentially equitable

considerations cannot establish a basis for concluding that the furlough action was improper or that it failed to promote the efficiency of the service." Appx24.

Mr. Harrow petitioned for full board review. The board denied the petition and affirmed the administrative judge's initial decision, making it the board's final decision. Appx1-8. As relevant to Mr. Harrow's appeal to this Court, the board also rejected Mr. Harrow's request to "reconsider [the] standard … for determining whether a furlough decision promotes the efficiency of the service," finding that Mr. Harrow's "preferences on this issue are insufficient reason for the [b]oard to disturb settled law." Appx7-8.

## III.    Proceedings in this Court and the Supreme Court

Mr. Harrow filed a petition with this Court on September 16, 2022, 128 days after the board issued its final decision. *See* Order, ECF 9. Before any briefing was due, the Court *sua sponte* stayed the briefing schedule and issued an order to "show cause why this case should not be dismissed" in light of the then-existing precedent holding that the 60-day deadline in section 7703(b)(1)(A) was "mandatory and jurisdictional and not subject to equitable tolling." Order, ECF 7 (citing *Fedora v. Merit Sys. Prot. Bd.*, 848 F.3d 1013, 1016 (Fed. Cir. 2017)).

The Government did not file a response to the show cause order. Mr. Harrow responded by asking the Court to excuse his "failure to timely file his petition for review" because "he did not become aware of the decision" until after

the deadline had already passed "as a result of his failure to notify the [b]oard of his new email address."  Order, ECF 9 (cleaned up).  The Court rejected that argument, holding that it "cannot excuse a failure to timely file based on individual circumstances."  *Id.*  The Court also observed that it is aware of no authority that would have permitted the *board* to extend the deadline to petition this Court for review either.  *Id.*  Thus, the Court dismissed the petition.  Mr. Harrow sought panel rehearing, which was also denied.  Order on Pet. for Panel Reh'g., ECF 12.

Mr. Harrow then petitioned the Supreme Court for a writ of certiorari.  We filed a brief in opposition.  In addition to arguing that the deadline in section 7703(b)(1)(A) is properly jurisdictional, we explicitly also argued that even if not jurisdictional, it is nevertheless mandatory and not subject equitable tolling because Federal Rule of Appellate Procedure 26(b)(2) forbids the court from extending the time to file "a petition to … review an order of an administrative agency, board, commission, or officer of the United States, unless specifically authorized by law" and no such authorization exists for the deadline in section 7703(b)(1)(A).  *See* Br. in Opp. at 18-19, *Harrow v. Dep't of Defense*, 601 U.S. 480 (2024) (No. 23-21).

The Supreme Court granted Mr. Harrow's petition for a writ of certiorari to address whether the 60-day filing deadline in section 7703(b)(1)(A) is jurisdictional, and ultimately held that it was not.  *Harrow*, 601 U.S. at 482.  In doing so, the Court did *not* address whether the deadline was therefore subject to equitable tolling.

9

Recognizing our alternative argument that "[e]ven if non-jurisdictional, … the 60-day limit would still" be mandatory, the Court declined to resolve that question. *Id.* at 489-90 (quotation marks omitted). Instead, it "le[ft] the matter (including any waiver issues involved) to [this Court] on remand." *Id.* Upon recalling the mandate and reinstating the appeal, this Court therefore directed the parties to "address the issue of untimeliness of the appeal in their briefs." Order, ECF 20.

## SUMMARY OF THE ARGUMENT

The Court should dismiss Mr. Harrow's undisputedly untimely petition. Even if not a jurisdictional limitation, the deadline in section 7703(b)(1)(A) is mandatory and not subject to equitable tolling. Rule 26(b)(2) of the Federal Rules of Appellate Procedure prohibits the Court from "extend[ing] the time to file …a petition to enjoin, set aside, suspend, modify, enforce, or otherwise review an order of an administrative agency, board, commission, or officer of the United States, unless specifically authorized by law," and section 7703(b)(1)(A) contains no such specific authorization. Thus, the Supreme Court's jurisdictional holding does not dislodge this Court's existing precedent that Rule 26(b)(2) "surely provide[s] the necessary expression of congressional intent to avoid the tolling presumption." *Oja v. Department of Army*, 405 F.3d 1349, 1359 (Fed. Cir. 2005).

Moreover, even if the Court could theoretically toll section 7703(b)(1)(A)'s deadline, such tolling would remain unavailable to Mr. Harrow.

First, Mr. Harrow's sole reason for missing the deadline was delay in receiving the board's final decision.  But Congress specifically amended section 7703(b)(1)(A) to change the trigger that starts the running of the clock from "the date the *petitioner received notice* of the final order or decision of the [b]oard" to when "*the [b]oard issues notice of* the final order or decision."  *Compare* 5 U.S.C. §7703(b)(1) (2010), *with* Pub. L. 112-199, Title I, § 108, 126 Stat. 1469 (2012) (emphasis added to both).  Tolling the deadline because of delay in receipt of the board's final decision would therefore directly undermine that amendment and contravene the presumption that "[w]hen Congress acts to amend a statute, … it intends its amendment to have real and substantial effect." *Intel Corp. Inv. Policy Comm. v. Sulyma*, 589 U.S. 178, 189 (2020).

Second, the sole reason Mr. Harrow did not receive the board's decision when it was issued was because, having voluntarily agreed to electronic service, *see* Appx39 (Q. 13), he failed to update his email address with the board when it changed.  Failing to update his email address does not constitute diligence in the face of extraordinary circumstances beyond Mr. Harrow's control.  *See Menominee Indian Tribe v. United States*, 577 U.S. 250, 255-57 (2016).

If the Court nevertheless excuses Mr. Harrow's untimeliness, his petition should be denied on the merits.  Contrary to the premise of Mr. Harrow's argument, this case does not implicate *Chevron* deference and, as such, the Supreme

Court's *Loper Bright* decision simply has no bearing on this Court's review of the board's decision.

The board expressly found that "the agency demonstrated that furloughing the appellant promoted the efficiency of the service because it represented a reasonable management solution to the financial restrictions confronting it during the second half of Fiscal Year 2013." Appx23. Thus, the board applied the correct law and held the Department to the correct standard, as confirmed by this Court's precedent. *E.g.*, *Einboden v. Dep't of the Navy*, 802 F.3d 1321, 1325 (Fed. Cir. 2015).

And the board's finding was supported by substantial evidence, including the testimony of Captain Pendergrass, the deciding official in Mr. Harrow's case, as well as the Memorandum from then-Secretary of Defense Hagel and the declaration of then-Under Secretary Hale describing the historic budgetary shortfall facing the DOD, the other cost-cutting efforts the DOD undertook before turning to furloughs, and the prioritization of the DOD's warfighting mission that ultimately still required civilian furloughs across approximately 85% of the Department. *See* Appx164-166; Appx299-312; Appx320-321.

Indeed, this Court has already repeatedly held that agency-wide furloughs of the Department's civilian employees was a reasonable response to the "sudden, dramatic, agency-wide funding shortfall" as a result of sequestration. *Snyder v. Dep't of the Navy*, 854 F.3d 1366, 1374 (Fed. Cir. 2017); *e.g.*, *Calhoun v. Dep't of the Army*,

845 F.3d 1176, 1178 (Fed. Cir. 2017); *Einboden*, 802 F.3d at 1325-26.  Mr. Harrow's furlough is no exception.  If the petition is not dismissed, the board's decision should be affirmed.

## ARGUMENT

### I.    Standard of Review

The Court must affirm the MSPB's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." § 7703(c).

### II.    The Court Should Dismiss Mr. Harrow's Appeal as Untimely

There is no dispute that Mr. Harrow did not file his petition "within 60 days after the [b]oard issue[d] notice of" its final order, as required by section 7703(b)(1)(A).  Mr. Harrow's attempts to escape the consequences of that untimeliness fail, and the Court should dismiss.

#### A.    The Court Should Address Whether the Deadline in Section 7703(b)(1) is Mandatory

At the outset, Mr. Harrow argues that "the [G]overnment has forfeited any argument that (1) Mr. Harrow's appeal was untimely filed or (2) that the time bar is mandatory."  Pet. Br. 21-27.  Not so.

To begin, there is no tribunal "below" this Court where the Government would have needed to preserve this argument.  *Contra* Pet. Br. 25.  By necessity this

Court *is* the "court of first instance" with respect to the timelines of Mr. Harrow's petition under section 7703(b)(1)(A). *Cf.* Pet. Br. 26 (quoting *Wood v. Milyard*, 566 U.S. 463, 473 (2012)). And as the procedural history of this case demonstrates, there was no forfeiture.

Mr. Harrow's appeal was originally dismissed *sua sponte* by the Court before any briefing was due. *See* Orders, ECF 7 & ECF 9. So while the Government could have also filed a stand-alone motion to dismiss, it was not required to do so before the merits briefing had occurred. *See* Fed. Cir. R. 27(f) ("After the appellant or petitioner has filed its principal brief, the argument supporting dismissal, transfer, or remand should be made in the response brief of the appellee or respondent."). Thus, at the time the Court *sua sponte* dismissed the appeal, the Government retained what would have been a still-timely opportunity to raise the untimeliness of Mr. Harrow's petition in the future. *Cf. United States v. Olano*, 507 U.S. 725, 733 (1993) ("[F]orfeiture is the failure to make the *timely* assertion of a right.") (emphasis added); *contra Santos-Zacaria v. Garland*, 22 F.4th 570 (5th Cir. 2022) (fully briefed and decided in part on the merits in addition to the later vacated jurisdictional holding); *Dixon v. McDonald*, 815 F.3d 799, 801 & n.1 (Fed. Cir. 2016) (Secretary affirmatively waiving his objection to timeliness); *Eberhart v. United States*, 546 U.S. 12, 19 (2005) ("[W]here the Government failed to raise a defense of untimeliness *until after the District Court had reached the merits*, it forfeited

that defense.") (emphasis added); *see* Pet. Br. 25-26.

Moreover, both the show cause order and the Practice Notes to the Court's rules already reflected the Government's position, namely that the case should be dismissed. *See* Order, ECF 7 (asking "why this case should *not* be dismissed"); Practice Note to Rule 4 ("Existing case law broadly requires this court to enforce statutory deadlines that limit the time allowed for the filing of a notice of appeal or petition for review, and to *dismiss a case if the applicable deadline is not met, even if no party objects to such a filing as untimely and even if the filer asserts equitable grounds for excusing untimeliness*.") (emphasis added to both). And importantly, had the Government filed a response to the show cause order to reiterate that position, we would have had no reason to make the alternative argument—that even if not jurisdictional, the deadline in section 7703(b)(1)(A) is nevertheless mandatory and not subject to tolling—before the case reached the Supreme Court. This Court's nearly 40 years of then-existing precedent was emphatic that the deadline was jurisdictional.

But at the Supreme Court, we made that alternative argument at every step. Mr. Harrow's assertion that we "failed to raise [nonjurisdictional] timeliness arguments during certiorari briefing before the Supreme Court," Pet. Br. 23, is just wrong. Our brief in opposition explicitly argued: "In any event, even if [s]ection 7703(b)(1)(A) were nonjurisdictional, it would not be subject to equitable tolling. Although 'nonjurisdictional limitations periods are presumptively subject to

equitable tolling,' some such periods are 'mandatory' and cannot be tolled.  At a minimum, [s]ection 7703(b)(1)(A) falls within that class."  Br. in Opp. at 18-19, *Harrow*, 601 U.S. 480 (No. 23-21) (citations omitted).  And there is of course no dispute that we also made the same argument during the merits briefing stage.  *See* Pet. Br. 24.

Finally, even if the Court were to conclude that the Government's failure to respond to the initial show cause order amounted to forfeiture, it should still exercise its discretion to address whether the deadline in section 7703(b)(1)(A) is mandatory or subject to equitable tolling.  "[W]hether to excuse a forfeiture is generally within [the Court's] discretion."  *A/S v. Lupin Ltd.*, 87 F.4th 1361, 1368-69 (Fed. Cir. 2023) (first alteration in original, collecting cases).

## B. The Deadline in Section 7703(b)(1) is Mandatory and Not Subject to Equitable Tolling

The Court may not excuse Mr. Harrow's untimeliness by tolling the deadline in section 7703(b)(1)(A).  As Mr. Harrow recognizes, the Supreme Court's decision holding that the deadline is not jurisdictional did not address whether the deadline is nevertheless mandatory and still not subject to tolling, expressly leaving that question to this Court.  Pet. Br. 9; *Harrow*, 601 U.S. at 489-90; *see Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019).  However, contrary to Mr. Harrow's assertion that "[t]he issue of whether equitable tolling applies to [s]ection 7703(b)(1)(A)'s

appeal deadline has not yet been properly before this Court," Pet. Br. 12, in fact,

existing precedent has already (correctly) resolved that question in the negative.

In *Oja v. Department of Army*, this Court held that it was "clear that the time

period of section 7703(b)(1) is not subject to equitable tolling" even if the time

limit is not considered jurisdictional.  405 F.3d at 1357-60.  In doing so, the Court

expressly recognized that the Supreme Court had held that a rebuttable

presumption of equitable tolling applies to suits against the United States, *see Irwin

v. Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990); Pet. Br. 13-14, but

concluded that any such presumption has been rebutted with respect to the time

limit in section 7703(b)(1).  *Oja*, 405 F.3d at 1357-59.

The Court relied on Federal Rules of Appellate Procedure 15(a)(1) and

26(b)(2)—which Mr. Harrow surprisingly fails to address[1]—and which provide

that "[r]eview of an agency order is commenced by filing, *within the time prescribed by

law*, a petition for review" and that "the court *may not extend the time to file … a

notice of appeal from or a petition to enjoin, set aside, suspend, modify, enforce,

or otherwise review an order of an administrative agency, board, commission, or

officer of the United States, *unless specifically authorized by law*." (emphasis added).

*See Oja*, 405 F.3d at 1359.  No such authorization exists in section 7703(b)(1).  *Id.* at

---

[1] Mr. Harrow's silence regarding Rule 26(b)(2) is all the more notable given that it was the central basis for our alternative argument at the Supreme Court.

1360.  To the contrary, section 7703(b)(1)(A) states in absolute and mandatory

terms that "[n]otwithstanding any other provision of law, any petition for review

shall be filed within 60 days after the [b]oard issues notice of the final order or

decision of the [b]oard."

As the Court explained, these rules were "presented to Congress pursuant to

28 U.S.C. § 2074 before going into effect," and Congress declined to alter them.

*Oja*, 405 F.3d at 1359.  Congress thereafter enacted section 7703(b)(1)'s time limit

for petitions for review of MSPB decisions against the legal backdrop formed by

Rule 26(b), and included no authorization for extending that deadline.  *See* Pub. L.

No. 95-454 § 205, 92 Stat. 1143; Fed. R. App. P. 26(b) (1976).  Congress's

subsequent amendments to section 7703(b)(1) changed both the length of the time

limit and trigger for the time limit, but continued to not provide any authorization

for the courts to further extend the statutory deadline.  *See* Pub. L. 97-164, Title I,

§ 144, 96 Stat. 45 (1982); Pub. L. 105-311, § 10(a), 112 Stat. 2954 (1998); Pub. L.

112-199, Title I, § 108, 126 Stat. 1469 (2012).  Thus, as this Court concluded in *Oja*,

Rules 15(a)(1) and 26(b)(2) "surely provide the necessary expression of

congressional intent to avoid the tolling presumption."  405 F.3d at 1359.

The deadline in section 7703(b)(1)(A) falls squarely within the plain text of

Rule 26(b)'s directive because it governs the time to file a petition to review a final

order or final decision of the MSPB.  Section 7703(b)(1)(A) does not include any

authorization to extend the time to file, nor are there other provisions authorizing an extension of time to file a petition.  That is, contrary to Mr. Harrow's argument, Pet. Br. 14, the combination of Rule 26(b)(2) and the plain text of section 7703(b)(1)(A) *do* "expressly prohibit" equitable tolling.  And his remaining arguments, Pet. Br. 15-17, therefore, become beside the point.

Accordingly, the Court "may not extend the time" in which Mr. Harrow is permitted to file his petition and his untimely petition should be dismissed.  Fed. R. App. P. 26(b)(2).

## C.    Even if the Deadline in Section 7703(b)(1) Could Theoretically be Tolled, Tolling is Not Available to Mr. Harrow

### 1.    Any Equitable Tolling to the Deadline in Section 7703(b)(1) Cannot be Based on Delay in the Petitioner's Receipt of the Board's Final Decision

Mr. Harrow seeks equitable tolling on the basis that he had not *received* the board's final decision and so was not aware that it had issued until after the 60-day deadline to file a petition in this Court had run.  Pet. Br. 5-6, 18.  Congressional action in amending section 7703(b)(1) confirms that such delay in the receipt of the decision cannot be the basis for equitable tolling.

Up until 2012, the deadline in section 7703(b)(1) in fact ran from "the date the *petitioner received notice* of the final order or decision of the [b]oard."  Pub. L. 95-454, Title II, § 205, 92 Stat. 1143 (1978) (emphasis added); *see* Pub. L. 97-164, Title I, § 144, 96 Stat. 45 (1982); Pub. L. 105-311, § 10(a), 112 Stat. 2954 (1998).  But in

the Whistleblower Protection Enhancement Act, Congress specifically amended

section 7703(b)(1) to change that trigger from when "petitioner received notice" to

when "*the [b]oard issues notice of* the final order or decision." Pub. L. 112-199, Title I,

§ 108, 126 Stat. 1469 (2012) (emphasis added).

Permitting Mr. Harrow to invoke delay in his receipt of the final decision as

a basis to extend section 7703(b)(1)'s deadline would contravene that specific

change in the statute. *Cf. Intel Corp.*, 589 U.S. at 189 ("When Congress acts to

amend a statute, we presume it intends its amendment to have real and substantial

effect."). Thus, even if the Court were to hold that equitable tolling could,

theoretically, be available with respect to the deadline in section 7703(b)(1), it

should further hold that such tolling cannot, as a matter of law, be based on delay

in receipt of the board's final decision. Dismissal of Mr. Harrow's petition would

still be required.

### 2.    Mr. Harrow has not Demonstrated Either Diligence or Extraordinary Circumstances Beyond his Control

Even if equitable tolling could be permitted, and could be based on a delay

in petitioner's receipt of the board's final decision, Mr. Harrow cannot show that

such tolling would be warranted here. "[A] litigant is entitled to equitable-tolling of

a statute of limitations only if the litigant establishes two elements: '(1) that he has

been pursuing his rights diligently, and (2) that some extraordinary circumstance

stood in his way and prevented timely filing.'" *Menominee Indian Tribe*, 577 U.S. at 255 (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *accord* Pet. Br. 17.  The Supreme Court has further "reaffirm[ed] that the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe*, 577 U.S. at 257 (emphasis in original).

Mr. Harrow can meet neither prong.  The only reason he did not receive the final board decision when it was issued—the sole basis he identifies for missing the deadline to file his petition in this Court—is because of his own lack of diligence in the face of ordinary circumstances entirely within his control:  he knew that the board would serve its final decision by email, knew that his email address had changed, and yet failed to update his new email address with the board.

There is no dispute that Mr. Harrow chose to register as an e-filer for his appeal, and in making that selection was warned that "[r]egistration also means you consent to accept service of … all documents issued by the [b]oard in electronic form" and "[y]ou will receive these as PDF documents at the e-mail address you provided the [b]oard." Appx39 (Q. 13).  The board's regulations further explicitly require that "[e]ach e-filer must promptly update their e-Appeal profile and notify the MSPB and other participants of any change in their address, telephone number, or email address by filing a pleading in each pending proceeding with which they

are associated." 5 C.F.R. § 1201.14(e)(6).  Mr. Harrow did not do so.  And even if his then-*pro se* status could excuse some lack of awareness of the board's specific regulations, ordinary common-sense diligence would have dictated updating the sole point of contact at which he, indisputably, knew the board would serve its final decision.

A change in contact information is not an extraordinary occurrence.  And updating his email address with the board was undoubtedly within Mr. Harrow's control.  Once Mr. Harrow decided to do so, he apparently had no trouble updating his email address with the board.  *See* Br. 19 ("The next day, he sent a follow-up email to the [b]oard informing it that he had updated his email address.").

Mr. Harrow suggests that the Supreme Court "stated that it was not [Mr.] Harrow's fault, by any stretch, that he missed the 60-day deadline" and that the "Department agreed."  Br. 8-9.  Not so.  As the transcript reveals, the colloquy was actually discussing that the *lapse in quorum* at the board was not Mr. Harrow's fault.  Appx263-264.  But the board's lapse in quorum is at best tangential to the reason for Mr. Harrow's untimeliness, and the Government did not waver from its position that Mr. Harrow had an obligation to keep his email address updated.  Appx264.

To be sure, had the board not lost its quorum it might have decided Mr.

Harrow's petition before his email address changed, which would have forestalled Mr. Harrow's need to update it with the board.  Of course Mr. Harrow's email address also could have changed during the pendency of his MSPB appeal before the quorum lapsed or even if there had never been a lapse in quorum, and it still would have been incumbent on him to update his new contact information with the board to ensure receipt of the final decision.  *Cf. Yeschick v. Mineta*, 675 F.3d 622, 629-30 (6th Cir. 2012) (affirming district court's denial of a motion for relief from judgment where counsel neglected to check docket or update his email address on file with the district court).

The fact that Mr. Harrow might have avoided the consequences of his failure to provide his new email address to the board if the final decision had been issued earlier does not absolve that failure.  No matter what happened to the board's quorum—or the timing of the issuance of the final decision—Mr. Harrow's ability to be "aware of the [b]oard's decision when it issued," Pet. Br. 18, was entirely within his control by exercising the simplest diligence in updating his email address when it changed.[2]  That is not the kind of situation that calls for

---

[2]  Notably, in light of the lapse in quorum, the board also issued a notice as a public courtesy on May 5, 2022—six days before its final order in Mr. Harrow's case—reminding parties with pending cases before the full board to update their contact information.  Office of the Clerk of the Board, MSPB, *Notice To Parties With A Pending Petition For Review Or Case Before The Full Board*, available at https://perma.cc/3Y6T-CMXT.

equitable tolling.  *See Irwin*, 498 U.S. at 96 (refusing equitable tolling based on delay in petitioner's personal receipt of the triggering notice, where his attorney's office received the notice two weeks earlier but while his attorney was out of the country because "the principles of equitable tolling … do not extend to what is at best a garden variety claim of excusable neglect").

At bottom, whether the Court concludes that the deadline in section 7703(b)(1) is not subject to equitable tolling at all, or considers Mr. Harrow's particular circumstances, the end result in this case is the same.  Because Mr. Harrow cannot demonstrate that equitable tolling is warranted—even if theoretically permitted—this appeal should be dismissed.

## III.  If the Court Does not Dismiss the Appeal, it Should Affirm the Board's Decision Because the Board Applied the Correct Law and the Decision is Supported by Substantial Evidence

The foundational claim upon which Mr. Harrow's argument on the merits rests is that DOD failed to prove, and the board failed to apply, the requirement that Mr. Harrow's furlough be taken for "such cause as will promote the efficiency of the service."  Pet. Br. 27-42; *see* § 7513(a).  As such, he argues that the board's decision was "not in accordance with the law."  Pet. Br. 36.

But the board *did* apply that requirement; it expressly found that "the agency demonstrated that furloughing [Mr. Harrow] promoted the efficiency of the service because it represented a reasonable management solution to the financial

24

restrictions confronting it during the second half of Fiscal Year 2013." Appx23; *see* Appx20 (explaining that under the applicable law and burden of proof "[a]n agency bears the burden of proving by a preponderance of the evidence the factual basis for the furlough and that the furlough promotes the efficiency of the service"); *see also Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1569 (Fed. Cir. 1986) (The Court will not assume that the lower tribunal "which … repeatedly articulated the correct standard … veered from the proper standard."); Appx2 (adopting the initial decision as the final decision of the board).

Thus, although Mr. Harrow frames his argument as the board purportedly "setting aside" the requirement to show "efficiency of the service," *e.g.* Pet. Br. 31, 35, what he is actually disputing is what "efficiency of the service" *means* in the context of a furlough action. He further argues that because the board's approach to that question recognizes the "primary discretion" agencies have "in managing their own workforces" and defers to "the judgment of agency managers, who are in the best position to decide what allocation of funding will best allow the agency to accomplish its mission," that deference has been upended by *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). Appx24; Pet. Br. 10-11, 37. As such, he invites this Court to "interpret and apply [s]ection 7513(a) … [without] defer[ence] to the Department or the [b]oard" and conclude that, contrary to the board's express finding, Mr. Harrow's furlough was *not* for "such cause as will promote the

efficiency of the service."  Pet Br. 37; *see* Pet. Br. 42 (seeking reversal and an order awarding Mr. Harrow back pay).

The Court should reject that invitation.  Put simply, this case does not implicate *Chevron* deference, and therefore, *Loper Bright* is equally irrelevant.  The board applied the correct law and its decision is supported by substantial evidence; that is enough.[3]

At the outset, despite Mr. Harrow's attempt to bury it in a footnote, Pet. Br. 37 n.3, we note that binding precedent from this Court has already addressed what "promot[ing] the efficiency of the service" means in the context of a furlough action, and held that the standard applied by the board is "correct."  *Einboden*, 802 F.3d at 1325.  In so holding, the Court made no mention of *Chevron*:

> The [b]oard interpreted the statute's requirement that the furlough 'will promote the efficiency of the service' as requiring that the decision be a reasonable management solution to the financial restrictions placed on the agency and that the agency determine which employees to furlough in a fair and even manner.  This interpretation is correct.

*Id.* (citing to the board's decision in the supplemental appendix); *see Snyder*, 854

---

[3] To the extent the Court does consider *Chevron* deference to be implicated, Mr. Harrow also fails to address the Supreme Court's warning that it was "not call[ing] into question prior cases that relied on the *Chevron* framework. … Mere reliance on *Chevron* cannot constitute a 'special justification' for overruling such a holding." *Loper Bright*, 603 U.S. at 412.

F.3d at 1372 (same); *Calhoun*, 845 F.3d at 1178 (same); *Nat'l Fed'n of Fed. Emples., Local 1442 v. Dep't of the Army*, 810 F.3d 1272, 1277 (Fed. Cir. 2015) (same).

Moreover, the "deference" this Court owes to the board in the application of section 7513(a)'s "such cause as will promote the efficiency of the service" requirement to the facts of Mr. Harrow's case is dictated by the standard of review imposed by statute. That is, the Court "give[s] wide berth to agency decisions as to what type of adverse action is necessary to 'promote the efficiency of the service,' provided that the agency's decision bears some nexus to the reason for the adverse action," because "[t]he court is not the fact finder. It is not [this Court's] duty to find nexus but rather to decide, under [its] statutory scope of review in 5 U.S.C. § 7703(c), whether the MSPB affirmance of the agency conclusion on the nexus issue meets the statutory criteria for our affirmance." *Einboden*, 802 F.3d at 1325-26; *Hayes v. Dep't of Navy*, 727 F.2d 1535, 1539 (Fed. Cir. 1984). Nothing in *Loper Bright* changed—or could change—this court's statutorily prescribed standard of review.

And the deference the board—and this Court—extends to the agency's spending and management judgment when determining whether the agency has met its burden to prove that the furlough action was "for such cause as will promote the efficiency of the service" is also not affected by *Loper Bright*. That deference does not impinge on the field of "legal interpretation" that the Supreme Court emphasized as being "the province and duty of the judicial department."

27

*Loper Bright*, 603 U.S. at 412.  Instead it implicates the particular expertise and judgment of the agency.  Resolving the "difficult set of trade offs" faced by then-Secretary Hagel in making the "unpleasant" choice between "putting into even greater jeopardy our military readiness in future fiscal years" and furloughing civilian employees, like Mr. Harrow, does, and must, properly fall within the "broad discretion" of the DOD "to take actions to control spending, preserve flexibility, and adjust priorities in response to sequestration." *Snyder*, 854 F.3d at 1374; Appx311.

The board's finding in this case that "the agency demonstrated that furloughing the appellant promoted the efficiency of the service" is also supported by substantial evidence.  Appx23.  As the board explained, the documentary evidence left "no doubt that the DOD was facing a serious budget shortfall even after taking various cost-cutting measures, such as reducing travel and training expenditures and terminating numerous temporary and term employees, in an attempt to avoid the furloughs."  Appx23; *see Nat'l Fed'n of Fed. Emples.*, 810 F.3d at 1281 ("The sequester placed extraordinary financial constraints on DOD during ongoing wartime conditions.").

The Memorandum from then-Secretary Hagel further described the "difficult set of trade offs" and "unpleasant set of choices" that led to his "reluctant[]" decision to direct furloughs:  the Department could "make even larger

cutbacks in training and maintenance, further reducing readiness to handle contingency operations and putting into even greater jeopardy our military readiness in future fiscal years" or it could "furlough civilian personnel to help close the gap [], knowing that morale, productivity and readiness would be affected."  Appx311, Appx320.  Then-Under Secretary Hale also testified (via declaration) that the DOD's "initial overriding objective" was "to protect the warfighter," but that this "objective meant [] that there would be larger and more disproportionate cuts in the" accounts "from which most civilian positions are funded."  Appx302-303 (Hale Decl. ¶ 11).

Mr. Harrow's notice of proposed furlough similarly reflected the DOD's balancing of these priorities.  The notice explained that the Department "must and will protect wartime operations funding for our troops in harm's way," which "inevitably means larger cuts in base-budget funding for the Operation and Maintenance [] accounts."  Appx32.  Thus, Mr. Harrow's "furlough [was] proposed to help meet the[] need" for "funding in other accounts that can be used to provide the warfighters with what they need to protect national security and fight this war," "while avoiding a deficit of funds in FY 2013."  Appx32.  And Captain Pendergrass, the deciding official in Mr. Harrow's case, testified at the hearing that in making his determination to sustain the furlough, he "considered the appellant's response, but concluded that the furlough was necessary to promote the efficiency

29

of the service." Appx165; *see* Appx163.

Mr. Harrow does not really dispute that substantial evidence supported the global tradeoff calculus that led the DOD to impose furloughs. Rather, he argues that furloughing his job was "inefficient" because he provided "cost-saving[s]" and the absence of his "contributions" would "weaken[]" the agency's mission. Pet. Br. 41. The Court has repeatedly rejected such a siloed approach, holding instead that "when faced with sequestration, it is reasonable for an agency 'to consider its budget situation holistically,' rather than isolating the situation of each individual organization or component." *Snyder*, 854 F.3d at 1374.

Mr. Harrow's approach to "efficiency" is simply ill-suited to a furlough action, which, by definition, is an adverse action that is the result of "lack of work or funds or other nondisciplinary reasons"—not a reflection on Mr. Harrow's performance. 5 U.S.C. § 7511(a)(5). Indeed, then-Secretary Hagel was explicit in his memorandum that "[e]ach of the Department's civilian employees makes an important contribution to the readiness of our Department to meet the nation's national security needs," and he "would prefer not to furlough any of them." Appx311-312. But ultimately he determined that by May 2013, the efficiency of the service *overall* was better served by "furloughs on civilian personnel rather than making even larger cuts in training and maintenance that would have further eroded military readiness." Appx305 (Hale Decl. ¶ 17); *see* Appx320. Mr. Harrow's

apparent disagreement with that assessment does not make it unreasonable.

At bottom, Mr. Harrow has not demonstrated any error in the board's decision. Because the board found that the agency proved by preponderant evidence that furloughing Mr. Harrow "promoted the efficiency of the service" and that finding is supported by substantial evidence, this Court must affirm.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this appeal, or alternatively, affirm the decision of the board.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

PATRICIA M. McCARTHY
  *Director*

/s/  Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
  *Assistant Director*

/s/  Galina I. Fomenkova
GALINA I. FOMENKOVA
  *Senior Trial Counsel*
  *Commercial Litigation Branch,*
  *Civil Division, U.S. Department of Justice*
  *P.O. Box 480 | Ben Franklin Station*
  *Washington, DC 20044*
  *(202) 514-5495*

March 14, 2025        *Attorneys for the Respondent*

**CERTIFICATE OF COMPLIANCE
PURSUANT TO FED. R. APP. P. 32(g)(1)**

This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1).  The brief contains 7,058 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14.5-point Garamond.


March 14, 2025                              /s/  Galina I. Fomenkova
                                             GALINA I. FOMENKOVA