2022-2254

_____

# United States Court of Appeals
# for the Federal Circuit

_____

**STUART R. HARROW,**
*Petitioner,*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent.*

_____

Petition for review of the Merit Systems Protection Board
in No. PH-0752-13-3305-I-1.

_____

**REPLY BRIEF FOR PETITIONER**

_____

Joshua P. Davis
Kyla J. Gibboney
**BERGER MONTAGUE PC**
505 Montgomery St., Ste. 625
San Francisco, CA 94111
Telephone: (800) 424-6690
*jdavis@bm.net*
*kgibboney@bm.net*

*Counsel for Petitioner*
*Stuart R. Harrow*

May 30, 2025

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES ........................................................ iii

REPLY BRIEF FOR PETITIONER .................................................. 1

I.    Introduction ............................................................. 1

II.    Argument ............................................................... 5

    A.    The Court Should Hear Mr. Harrow's Appeal. ...................... 5

        1.    Equitable tolling is available to Mr. Harrow under Section 7703(b)(1)(A). .......................................... 5

            a.    FRAP 26(b)(2) does not rebut the presumption that tolling is available ........................... 7

            b.    FRAP 15(a)(1) does not rebut the presumption that tolling is available ........................... 9

        2.    Mr. Harrow is entitled to tolling. ...................... 10

    B.    The Department Cannot Justify Mr. Harrow's Furlough. .................................................. 14

        1.    Efficiency means efficiency. .............................. 15

        2.    This Court can—and should—review the Board's interpretation of Section 7513(a)'s "efficiency-of-the-service" standard. .............................. 19

            a.    The standard of review does not prevent this Court from reviewing the Board's statutory interpretation. .............................. 20

            b.    *Einboden* does not require the Court to affirm Mr. Harrow's furlough. .............................. 21

III.    Conclusion ............................................................. 26

i

CERTIFICATE OF COMPLIANCE WITH THE TYPE-VOLUME LIMITATIONS ................................................................... 27

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Acuna v. Equal Emp. Opportunity Comm'n,*
    2025 WL 685915 (Fed. Cir. Mar. 4, 2025) ........................................... 21

*Banks v. Merit Sys. Prot. Bd.,*
    854 F.3d 1360 (Fed. Cir. 2017) ....................................................... 21

*Berlin v. Dep't of Labor,*
    772 F.3d 890 (Fed. Cir. 2014) ................................................ 23, 24, 25

*Boechler, P.C. v. Comm'r of Internal Revenue,*
    596 U.S. 199 (2022) ................................................................ 5, 9, 10

*Bowen v. City of New York,*
    476 U.S. 467 (1986) ..................................................................... 10

*Butler v. Soc. Sec. Admin.,*
    331 F.3d 1368 (Fed. Cir. 2003) ....................................................... 23

*Checo v. Shinseki,*
    748 F.3d 1373 (Fed. Cir. 2014) .................................................... 13, 14

*Chevron v. Natural Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) .................................................................. 3, 25

*Cornelius v. Nutt,*
    472 U.S. 648 (1985) ...................................................................... 3

*Cross v. Dep't of Transp.,*
    127 F.3d 1443 (Fed. Cir. 1997) ....................................................... 17

*Diaz v. Kelly,*
    515 F.3d 149 (2d. Cir. 2008) ...................................................... 12, 14

*Doe v. Dep't of Justice,*
    565 F.3d 1375 (Fed. Cir. 2009) ....................................................... 23

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. and Const. Trades*
    *Council,*
    485 U.S. 568 (1988) ..................................................................... 24

*Einboden v. Dep't of the Navy,*
    802 F.3d 1321 (Fed. Cir. 2015) ...................................................... passim

*Gamble v. United States,*
    587 U.S. 678 (2019) ................................................................................ 25

*Garcia v. Dep't of Homeland Sec.,*
    437 F.3d 1322 (Fed. Cir. 2006) ........................................................... 3

*Grier v. Dep't of Health and Human Servs.,*
    750 F.2d 944 (Fed. Cir. 1984) .............................................................. 17

*Harrington v. Dep't of Veterans Affs.,*
    981 F.3d 1356 (Fed. Cir. 2020) ........................................................... 20

*Harrow v. Dep't of Def.,*
    601 U.S. 480 (2024) ...................................................................... passim

*Irwin v. Dep't of Veterans Affs.,*
    498 U.S. 89 (1990) ............................................................................ 5, 8

*Kaplan v. Conyers,*
    733 F.3d 1148 (Fed. Cir. 2013) ........................................................... 24

*Long v. Soc. Sec. Admin.,*
    635 F.3d 526 (Fed. Cir. 2011) .............................................................. 25

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024) ........................................................... 3, 19, 20, 21

*Lovshin v. Dep't of the Navy,*
    767 F.2d 826 (Fed. Cir. 1985) .............................................................. 24

*Marbury v. Madison,*
    5 U.S. 137 (1803) .................................................................................. 19

*Nance v. Off. of Pers. Mgmt.,*
    2025 WL 400218 (Fed. Cir. Feb. 5, 2025) ......................................... 6

*Nat'l Res. Def. Council v. Nat'l Highway Traffic Safety Admin.,*
    894 F.3d 95 (2d Cir. 2018) .................................................................... 8

*Nutraceutical Corp. v. Lambert,*
    586 U.S. 188 (2019) ................................................................................ 8

iv

*Oja v. Dep't of Army*,
    405 F.3d 1349 (Fed. Cir. 2005) .......................................... 6, 8

*Pace v. DiGuglielmo*,
    544 U.S. 408 (2005) .......................................................... 10

*Polaroid Corp. v. Eastman Kodak Co.*,
    789 F.2d 1556 (Fed. Cir. 1986) ............................................ 22

*Res. Conservation Grp., LLC v. United States*,
    597 F.3d 1238 (Fed. Cir. 2010) ............................................ 18

*Sebelius v. Auburn Reg'l Med. Ctr.*,
    568 U.S. 145 (2013) ............................................................ 9

*Solid Waste Agency of N. Cook Cnty.*,
    531 U.S. 159 (2001) .......................................................... 24

*Tunik v. Merit Sys. Prot. Bd.*,
    407 F.3d 1326 (Fed. Cir. 2005) ............................................ 24

*United States v. Brockamp*,
    519 U.S. 347 (1997) .......................................................... 10

*United States v. Wong*,
    575 U.S. 402 (2015) ............................................................ 5

*Wynn v. Dep't of the Army*,
    2025 WL 751113 (Fed. Cir. Mar. 10, 2025) ............................ 6

*Yeshnick v. Mineta*,
    675 F.3d 622 (6th Cir. 2012) .............................................. 12

*Zipes v. Trans World Airlines, Inc.*,
    455 U.S. 387 (1982) .......................................................... 10

**STATUTES**

5 U.S.C. § 7511 ........................................................................ 17

5 U.S.C. § 7512 ........................................................................ 17

5 U.S.C. § 7513 ....................................................... 1, 14, 16, 17

5 U.S.C. § 7703 .................................................................. 15, 20

## OTHER AUTHORITIES

Black's Law Dictionary
(4th ed. rev. 1968) ......................................................................... 18

Pub. L. 112-199, Title I, § 108,
126 Stat. 1469 (2012) ................................................................... 13

Pub. L. 95-454, Title II, § 205,
92 Stat. 1143 (1978) ..................................................................... 13

Webster's Third New International Dictionary
(1976) .............................................................................................. 18

## RULES

Fed. Cir. R. 40 ........................................................................................ 25

Fed. R. App. P. 15 ................................................................................... 9

Fed. R. App. P. 26 ................................................................................... 7

## REGULATIONS

5 C.F.R. § 1201.56 ............................................................................ 14, 16

## ADMINISTRATIVE DECISIONS

*Chandler v. Department of Treasury,*
120 M.S.P.R. 163 (2013) ............................................................... 15

## REPLY BRIEF FOR PETITIONER

### I. Introduction

The law requires the Department to justify Mr. Harrow's furlough in terms of efficiency. 5 U.S.C. § 7513(a). It has never done so—not below and not in this Court. Instead, the Department has flouted Congress' plain language. For that reason, the Court should reverse.

Nothing in the Department's Response Brief, ECF No. 31, changes these basic facts. The Department does not point to any evidence of efficiency in its response. Nor does it explain how the Board's interpretation of Section 7513(a)—which does not mention efficiency—can be reconciled with the statutory language that does. Rather, the Department advocates for an extreme level of deference to the Board, one that would require this Court to adopt the Board's legal interpretation even where it contradicts the statute's plain language.

In other words, the Department tells this Court—as it told the Board—that efficiency doesn't mean efficiency.

But the words Congress writes into law mean something. In Section 7513(a), Congress authorized furloughs like Mr. Harrow's *only for such cause as will promote the efficiency of the service*. 5 U.S.C. § 7513(a). And it created a process for oversight of executive agencies' actions against federal employees to ensure that the efficiency standard was met. That process starts with the Department's burden to prove, by a preponderance of the evidence, that its adverse employment actions

1

are justified in terms of efficiency. On the other end, it makes the
Department accountable to this Court to show—*de novo*—that the
Board's legal and statutory interpretations are correct, and that the
Board's application of the facts to that law is supported by substantial
evidence.

The Department does neither here. Confronted with Mr. Harrow's
arguments that the Board's interpretation of Section 7513(a) applied in
this case cannot be reconciled with the plain language of the statute, its
structure, or the legislative history, the Department says nothing. It
does not defend the Board's interpretation of Section 7513(a) as
consistent with the statutory language, leaving Mr. Harrow's
arguments that it is *inconsistent* unrebutted. It does not defend—or
even mention—the Board's *Chandler* decision, which it relied on below
to justify Mr. Harrow's furlough. In effect, the Department concedes
that the standard applied in Mr. Harrow's case cannot be reconciled
with the statutory language; it is indefensible. Nor does the
Department point to anything in the Board's decision below that
suggests that it met its burden of justifying Mr. Harrow's furlough in
terms of efficiency.

Instead, the Department argues that the standard of review and
this Court's earlier cases mean that the Court need not—and cannot—
question the Board's legal interpretation. But neither the standard of

review nor the Court's earlier cases mandate the extreme level of deference the Department is asking the Court to show the Board.

This is especially true after the Supreme Court in *Loper Bright* held, unambiguously, that "*binding* deference to agency interpretations" is gone, and interpretations that are inconsistent with a statute's plain language cannot stand. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392, 399 (2024) (emphasis in original). The Department tries to escape *Loper Bright* too, arguing that this case "does not implicate *Chevron [v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)]" and so *Loper Bright* is "equally irrelevant." Response at 26. That is not true. Both this Court and the Supreme Court have previously applied *Chevron* deference to Board interpretations of the Civil Service Reform Act, of which Section 7513(a) is a part. *See, e.g., Cornelius v. Nutt*, 472 U.S. 648, 659 (1985); *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1338 (Fed. Cir. 2006) (*en banc*).

The Department cannot simply ignore Supreme Court decisions it does not like. *Loper Bright* represents a sea change in the way courts view agency interpretations of laws, and the level of deference those interpretations are entitled to. Here, the Department asks this Court to defer to an agency interpretation that is irreconcilable with the plain language of Section 7513(a). *Loper Bright* is relevant.

The Department also tells the Court that its decision in *Einboden v. Department of the Navy*, 802 F.3d 1321 (Fed. Cir. 2015), requires

affirmance here. But the Department did not satisfy—and the Board did not apply—the standard this Court articulated in *Einboden*. There, this Court made clear that the efficiency-of-the-service standard has teeth and that satisfying it requires *evidence*. The record below in this case shows none. For *Einboden* to help the Department, it would have to mean that the Court must defer to the Board's interpretation of Section 7513(a) *even if it cannot be reconciled with the statutory language*. If that is true, then *Einboden* is no longer good law after *Loper Bright* and should be overturned. Either way, the Board's decision fails even on the Department's own terms. This is an independent and sufficient additional basis for reversing the Board's order.

The Board's arguments that the Court should not even hear Mr. Harrow's appeal based on timeliness fare no better. Equitable tolling is presumptively available, and the Department has failed to rebut the presumption here. The well-established history of Mr. Harrow's case show he is entitled to it.

For the reasons below and those stated in Mr. Harrow's Opening Brief, the Court should reverse the Board's decision and order the Department to award Mr. Harrow back pay with interest.

## II. Argument

### A.    The Court Should Hear Mr. Harrow's Appeal.

#### 1. *Equitable tolling is available to Mr. Harrow under Section 7703(b)(1)(A).*

The Supreme Court is clear that nonjurisdictional limitations periods such as the one in Section 7703(b)(1)(A) are "presumptively subject to equitable tolling." *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 201 (2022) (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95-96 (1990)); *Harrow v. Dep't of Def.*, 601 U.S. 480, 489 (2024). Absent a clear and "affirmative indication from Congress that it intends to preclude equitable tolling in a suit against the Government" a time limitation is treated as a claims processing rule, for which equitable tolling is the standard. *United States v. Wong*, 575 U.S. 402, 420 (2015). The Department has not shown that any exception applies to the presumption here. In fact, the overwhelming evidence points to a Congressional intent in favor of tolling for Section 7703(b)(1)(A). *See* Opening Br. at 14-15.[1]

---

[1] The Department contends that, despite its repeated failures to raise the argument that the deadline is mandatory, it has not forfeited this argument. It asserts there was no forfeiture because it did ultimately make this "newly raised back-up argument" before the Supreme Court when the case was appealed. *Harrow*, 601 U.S. at 489. But by that time, the argument was already waived. As the Supreme Court summarized, "The Government did not broach the issue below . . . and it is not included in the question presented." *Id.* at 490. Mr. Harrow agrees. The Department has waived any argument that the deadline is mandatory. *See* Opening Br. at 22-27.

The Department nevertheless contends that the question of whether equitable tolling is available for Section 7703(b)(1)(A) has "already been . . . resolved . . . in the negative" by this Court. Response at 17. This assertion is incorrect. *Wynn v. Dep't of the Army*, 2025 WL 751113, *2 (Fed. Cir. Mar. 10, 2025) ("It remains an open question after *Harrow*, however, whether the statute is eligible for equitable tolling.") (citing *Harrow*, 601 U.S. at 482); *Nance v. Off. of Pers. Mgmt.*, 2025 WL 400218, *2 (Fed. Cir. Feb. 5, 2025) (same).

To support its position that Section 7703(b)(1)(A)'s deadline is mandatory and not subject to equitable tolling, the Department relies on *Oja v. Department of Army*, 405 F.3d 1349 (Fed. Cir. 2005)—a decades-old case that was overturned by *Harrow*. *See* Response at 17-18. The decision in *Oja* was premised on the now-overturned conclusion that Section 7703(b)(1) was jurisdictional. *See Oja*, 405 F.3d at 1361 (dismissing a delayed petition for review under Section 7703(b)(1) "for lack of jurisdiction"). This Court in *Oja* did not—and could not have—decided that Section 7703(b)(1)(A)'s deadline was mandatory *if it did not have jurisdiction in that case*. The inquiry ended when the Court declined to hear the case on jurisdictional grounds. *See id.*

The Department nevertheless relies on *dicta* in *Oja* to argue that, even if not jurisdictional, Section 7703(b)(1)(A)'s deadline is mandatory under the Federal Rules of Appellate Procedure. Response at 17-19. The Department claims that Rule 26(b)(2) *requires* this Court to find that

any statutory deadline covering federal appeals from "an order of an administrative agency, board, commission, or officer of the United States" is mandatory. *Id.* at 17 (citing Fed. R. App. P. 26(b)). But Rule 26(b)(2) applies only to procedural rules and court orders—not to statutory deadlines. Fed. R. App. P. 26(b). Moreover, the Department's interpretation of Rule 26(b)(2) would turn the equitable tolling presumption on its head.

        a.    <u>FRAP 26(b)(2) does not rebut the presumption that tolling is available.</u>

Rule 26(a) is a federal appellate procedural rule that sets forth methods for "computing any time period specified in these rules, in any local rule or court order, or *in any statute that does not specify a method of computing time.*" Fed. R. App. P. 26(a) (emphasis added). Rule 26(b) subsequently permits an appellate court to extend time for a deadline "*prescribed by these rules or by its order.*" Fed. R. App. P. 26(b) (emphasis added). Finally, Rule 26(b)(2) creates an exception to Rule 26(b) for appeals from "an order of an administrative agency, board, commission, or officer of the United States, unless specifically authorized by law." Fed. R. App. P. 26(b)(2).

Rule 26(b) thus creates a framework to extend time for deadlines set *by federal procedural rules or court orders*—not statutory deadlines. *See* Fed. R. App. P. 26(b). Consistent with this view, Courts have construed *statutory* deadlines to appeal agency decisions—which would

otherwise fall within the scope of Rule 26(b)(2)—to be presumptively subject to equitable tolling. *See, e.g., Harrow*, 601 U.S. at 482 (noting that statutory deadlines to appeal agency orders like Section 7703(b)(1)(A) are presumptively subject to equitable tolling); *Nat'l Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 106-07 (2d Cir. 2018) (holding statutory deadline to appeal administrative rule under 49 U.S.C. § 32909(b) to be both non-jurisdictional *and* subject to equitable tolling).[2]

Indeed, it is up to *Congress*, not this Court, to rebut the presumption of equitable tolling for any statutory deadline, including Section 7703(b)(1)(A)'s. *Irwin*, 498 U.S. at 96 ("Congress, of course, may provide otherwise if it wishes to do so."). The Department twists itself into logical knots to argue that Congress *did* intend to rebut the tolling presumption for Section 7703(b)(1)(A) merely because Rule 26(b) was "presented to Congress" at some point before Section 7703(b)(1)(A) was enacted. Response at 18 (citing *Oja*, 405 F.3d at 1359). This assertion defies logic. First, the Supreme Court "do[es] not understand Congress to alter age-old procedural doctrines lightly." *Harrow*, 601 U.S. at 489.

---

[2] The Department cites *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019) for the proposition that whether a deadline is jurisdictional is a separate question from whether it is subject to tolling. That is not in dispute. Moreover, *Nutraceutical* is consistent with Mr. Harrow's position because it applies Rule 26(b)(1) to a *federal procedural rule*— not to a statutory deadline like Section 7703(b)(1)(A).

Moreover, the plain language of Rule 26(b) shows it applies to federal procedural rules and court orders, not statutory deadlines.

> b.    FRAP 15(a)(1) does not rebut the presumption that tolling is available.

The Department also makes a perfunctory attempt to cite Federal Rule of Appellate Procedure 15(a)(1) in support of its argument that equitable tolling is not available, noting that the *Oja* decision references both Rule 15(a)(1) and Rule 26(b)(1) in dicta. *See* Response at 17. The Department never directly argues that Rule 15(a)(1) rebuts the tolling presumption for Section 7703(b)(1)(A)—nor could it. Rule 15(a)(1) merely states, "Review of an agency order is commenced by filing, within the time prescribed by law, a petition for review with the clerk of a court of appeals authorized to review the agency order." Fed. R. App. P. 15(a)(1). Section 7703(b)(1)(A) sets forth the "time prescribed by law" to appeal an order from the Board. But nothing in Rule 15(a)(1) purports to rebut the presumption of equitable tolling for statutory deadlines like Section 7703(b)(1)(A)'s.

In any event, the Department has failed to address *any* of the factors that demonstrate a Congressional intent *in favor* of tolling for Section 7703(b)(1)(A). *See* Opening Br. at 14-15. First, Section 7703(b)(1)(A) does not expressly prohibit tolling. *Boechler*, 596 U.S. at 209 (citing *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 160 (2013)). Second, the deadline is directed at litigants, not courts. *Id.* Nor

is the statutory language setting the deadline "unusually emphatic" such that it could not be read as accommodating exceptions. *Cf. United States v. Brockamp*, 519 U.S. 347, 350 (1997). Importantly, Section 7703(b)(1)(A) is within a statutory scheme that is "unusually protective of claimants." *Bowen v. City of New York*, 476 U.S. 467, 480 (1986) (citation omitted); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 387, 397 (1982) (finding tolling available where, like here, the statutory scheme was particularly solicitous of unrepresented litigants). Finally, tolling is administratively feasible given the number of potential claims at issue. *See Boechler*, 596 U.S. at 210 (distinguishing *Brockamp*, 519 U.S. at 352). The Department has remained silent about each of these factors. Accordingly, equitable tolling is available under Section 7703(b)(1)(A).

   *2. Mr. Harrow is entitled to tolling.*

   Mr. Harrow's diligence in the face of the extraordinary circumstances in this case demonstrates that he is entitled to equitable tolling. Equitable tolling is warranted when a claimant can show: (1) that he has pursued his rights diligently, and (2) extraordinary circumstances stood in the way of satisfying a deadline. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Mr. Harrow satisfies that burden here. As the Supreme Court observed, "it was not Mr. Harrow's fault, by any stretch" that he missed the 60-day statutory deadline. APPX0263-APPX0264.

When Mr. Harrow was furloughed along with nearly all Defense Contract Management Agency (DCMA) employees, he timely appealed the decision to the Board. APPX0003. An administrative law judge affirmed Mr. Harrow's furlough, and again, Mr. Harrow timely petitioned the Board for review—all without the help of an attorney. APPX0173-APPX0184. But in early 2017—with Mr. Harrow's petition still pending—the Board lost its quorum, rendering it unable to resolve case. *See* Pet'r's Resp. to Order to Show Cause 8-9, ECF No. 8. The lack of quorum *lasted for over five years. Id.* "That long delay led Harrow to miss his next deadline" under Section 7703(b)(1)(A). *Harrow*, 601 U.S. at 482.

During the five-year delay imposed by the Board's lack of quorum, the Department changed Harrow's email address. *See* Opening Br. at 5-6. And, after a protracted period in which the Department forwarded messages to Mr. Harrow's new government email address, it stopped doing so. *Id.* So, when the Board sent notice of its order to Mr. Harrow's old email address, he never received it. *Id.* at 6. Instead, out of an abundance of caution, Mr. Harrow searched the Board's website himself after hearing that the Board reestablished a quorum five years later. *Id.* By then, the 60-day period had run. *Id.*

Once Mr. Harrow saw that the decision had issued, he acted immediately: he wrote to the Board and asked for an extension of the deadline to file his appeal. *Id.* He faxed an extension request to the

11

Board. *Id.* He emailed and asked for the underlying documents. *Id.* And he filed a Petition for Review in this Court—again, all without the help of an attorney. *Id.*

The Supreme Court has stated—and the Department has conceded—that the Board's five-year lack of quorum was beyond Mr. Harrow's control. APPX0263-APPX0264. It was also what caused Mr. Harrow's untimeliness. *Harrow*, 601 U.S. at 482 (the Board's delay "led Harrow to miss his next deadline"); *see also Diaz v. Kelly*, 515 F.3d 149, 155 (2d. Cir. 2008) (prolonged delay by state court in sending notice of ruling was extraordinary circumstance that provided basis for equitable tolling).

Here, the Department fails to acknowledge the effort and diligence Mr. Harrow has displayed to take his case all the way to the United States Supreme Court—primarily as a pro se litigant. It also overlooks the extraordinary delay by the Board—five years without a quorum—that led Mr. Harrow to miss the deadline.

Instead, it attempts to minimize Mr. Harrow's case to a "failure to provide his new email address." Response at 23. Incredibly, the Department likens this case to *Yeshnick v. Mineta*, 675 F.3d 622, 624, 629-30 (6th Cir. 2012), where *a represented litigant's attorney* missed the deadline to respond to a summary judgment motion after failing to check the case docket *for almost six months*—in addition to failing to receive notices of case filings after a change in his email address—

12

despite being aware of the deadlines for dispositive motions in the matter. *Yeshnick* was not a case of "diligence" in the face of "extraordinary circumstances" like Mr. Harrow's. It was a case of attorney negligence. *Cf. Checo v. Shinseki*, 748 F.3d 1373, 1378-79, 1381-82 (Fed. Cir. 2014) (homeless pro se litigant's inability to receive mail was an extraordinary circumstance that caused her to miss deadline).

Moreover, that Section 7703 was amended does not change the analysis for tolling. The Department notes that prior to 2012, "the deadline in Section 7703(b)(1) ran from 'the date the *petitioner received notice* of the final order or decision of the [b]oard.'" Response at 19 (citing Pub. L. 95-454, Title II, § 205, 92 Stat. 1143 (1978)) (emphasis added). The statute was amended in 2012 "to change that trigger to the date when 'the *[b]oard issues notice* of the final order or decision.'" *Id*. at 20 (citing Pub. L. 112-199, Title I, § 108, 126 Stat. 1469 (2012)) (emphasis in original).

The Department asserts that in response to this amendment, the Court *must* hold that any equitable tolling applicable to Section 7703(b)(1) "cannot, as a matter of law, be based on delay in receipt of the board's final decision." Response at 20. This argument does not make sense. If the statute were not amended in 2012, Mr. Harrow would not need to seek equitable tolling. He petitioned for review well within a 60-day window from the date he *received* notice by checking

the Board's website. Opening Br. at 6. But in the universe of the statute as currently written, nothing in the 2012 amendment indicates that equitable tolling is unavailable for Section 7703(b)(1)(A) when extraordinary circumstances—including circumstances that result in a delay in receipt of notice—cause a litigant to miss the applicable deadline. *See Checo*, 748 F.3d at 1378-79, 1381-82; *Kelly*, 515 F.3d at 155.

Accordingly, equitable tolling is available for Section 7703(b)(1)(A), and Mr. Harrow is entitled to it here.

### B.    The Department Cannot Justify Mr. Harrow's Furlough.

To sustain Mr. Harrow's furlough challenge, the Department was required to prove, by a preponderance of the evidence, that the furlough was justified by "such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a); 5 C.F.R. § 1201.56(b)(1)(ii). That meant that the Department had to come forward with evidence that supported the furlough in terms of efficiency. It did not do so below, and it does not do so here.

Instead, the Department tells this Court that the efficiency-of-the-service standard doesn't really require a showing of efficiency, and that the Court is bound by the standard of review and its earlier decisions to affirm. Nothing the Department says relieves it of its statutory obligation to prove Mr. Harrow's furlough was justified in terms of

efficiency. The Court should reject the Department's attempts to shirk that obligation and reverse the Board's decision.

    *1. Efficiency means efficiency.*

In his opening brief, Mr. Harrow showed that neither the Department nor the Board applied the efficiency-of-the-service standard to his furlough challenge. Opening Br. at 30. He showed that the standard they did apply, the Board's interpretation of Section 7513(a) from *Chandler v. Department of Treasury*, 120 M.S.P.R. 163 (2013), cannot be reconciled with the statutory language. *Id.* at 31-36. He showed that because the Board followed *Chandler* and affirmed Mr. Harrow's furlough without finding—or requiring the Department to prove—that it promoted the efficiency of the service, the Board's decision is not in accordance with the law. *Id.* at 36 (citing 5 U.S.C. § 7703(c)(1)). And he showed that the Board's decision is unsupported by substantial evidence because the Department failed to provide any—let alone substantial—evidence that the furlough promoted efficiency. *Id.* (citing 5 U.S.C. § 7703(c)(3)).

The Department does not defend *Chandler*'s interpretation of Section 7513(a) in its response. It does not argue that the standard the Board applied in Mr. Harrow's case is consistent with the statutory text. It does not explain how treating adverse action furloughs like reduction-in-force actions (RIFs) is consistent with the Civil Service Reform Act's statutory structure or the relevant legislative history, all

of which show that Congress intended to impose a higher burden on agencies imposing adverse action furloughs than RIFs. Nor does the Department point to any evidence that Mr. Harrow's furlough promoted efficiency.

Instead, the Department says that the Board needed to find only that "the DOD was facing a serious budget shortfall," to sustain its *ipse dixit* conclusion that "the agency demonstrated that furloughing [Mr. Harrow] promoted the efficiency of the service because it represented a reasonable management solution to the financial restrictions confronting it during the second half of Fiscal Year 2013." *See* Response at 24-25 (quoting APPX0023).

But that has nothing to do with efficiency. Efficiency is the word Congress chose to use in Section 7513(a). And the words Congress chooses to write into law mean something. Here, Congress authorized furloughs like Mr. Harrow's "*only for such cause as will promote the efficiency of the service.*" 5 U.S.C. § 7513(a) (emphasis added). The burden is on the agency—the Department—to prove by a preponderance of the evidence that the efficiency standard is met. 5 C.F.R. § 1201.56(b)(1)(ii). That means that the Department was required to come forward with preponderant evidence proving that Mr. Harrow's furlough promoted *efficiency*.

The Department did not provide such evidence before the Board. And it does not do so now. Indeed, the only evidence mentioned in the

Department's brief is in support of the fact that the Department faced a budget shortfall due to the sequestration. *See* Response at 28. That is the same lone finding the ALJ made below. APPX0023. But the fact of the budget shortfall is not in dispute. Furloughs are defined as being taken "because of lack of work or funds or other nondisciplinary reasons." 5 U.S.C. § 7511(a)(5). That doesn't mean that every time there is a budget shortfall, the government may furlough employees indiscriminately. That would make superfluous Section 7513(a)'s requirement that adverse action furloughs be taken for such cause as will promote the efficiency of the service.

That is not the law. Congress *did* choose to subject adverse action furloughs like Mr. Harrow's to the efficiency-of-the-service standard.[3] 5 U.S.C. §§ 7512(5); 7513(a). That means that the Department must provide evidence not only of the budget shortfall, but that the action it took to address it—the across-the-board furlough of Department employees—promoted *efficiency*.

---

[3] Congress did so in contrast to RIFs, which it explicitly excepted from having to meet the efficiency standard. 5 U.S.C. § 7512(B). Instead, "Generally, determining when a RIF is appropriate is a matter of an agency's independent managerial discretion." *Cross v. Dep't of Transp.*, 127 F.3d 1443, 1447 (Fed. Cir. 1997) (citing *Grier v. Dep't of Health and Human Servs.*, 750 F.2d 944, 945-46 (Fed. Cir. 1984); *see also id.* ("As long as a RIF is legitimately conducted for one of the reasons identified in the regulation, it will not be disturbed absent a clear abuse of discretion or a substantial departure from applicable procedures." (internal quotations and citation omitted)); *see* Opening Br. at 31-39.

Congress did not define efficiency in Section 7513(a) or the Civil Service Reform Act (CSRA) more broadly, but authoritative resources in use at the time the CSRA was passed do. *See Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1243-44 (Fed. Cir. 2010) (noting that, "In construing statutory language, we look to dictionary definitions published at the time that the statute was enacted," and citing Black's Law Dictionary and Webster's New International Dictionary).

At the time the CSRA was passed in 1978, the definition of "efficiency" was the "capacity to produce the desired results with a minimum expenditure of energy, time, money, or materials"; the "performance of a task with little or no waste effort." Webster's Third New International Dictionary 725 (1976). "Efficient," in turn, meant "marked by ability to choose and use the most effective and least wasteful means of doing a task or accomplishing a purpose." *Id.* In sum, efficiency is the ability to bring about the intended result in the most effective, and least wasteful, way. To *promote* efficiency is to further or advance that ability. *See* Black's Law Dictionary 1379 (4th ed. rev. 1968) (defining "promote" as "To contribute to growth, enlargement, or prosperity of; to forward; to further; to encourage; to advance").

This is a flexible standard. Mr. Harrow is not asking the Court to decide today what is required to satisfy it in all circumstances. Rather, Mr. Harrow asks the Court to look at the language Congress used in

18

Section 7513(a) and hold that it is not a an empty one. If Congress's admonition that adverse action furloughs may be taken "only for such cause as will promote the efficiency of the service" means anything, the Department has failed to carry its burden to sustain Mr. Harrow's here.

>    2.  *This Court can—and should—review the Board's interpretation of Section 7513(a)'s "efficiency-of-the-service" standard.*

Next, the Department tells this Court that it cannot look at what "efficiency of the service" means in the context of an adverse action furlough, or whether the Department's preferred interpretation is viable in light of longstanding rules of statutory interpretation. But nothing the Department says prevents the Court from interpreting the law, as the Supreme Court underscored is its duty in *Loper Bright*. *Loper Bright*, 603 U.S. at 412; *id.* at 385 (citing *Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("[i]t is emphatically the province and duty of the judicial department to say what the law is.") (alteration in *Loper Bright*).

The Department is asking this Court to allow the Board to disregard Congress, and for the Judicial Branch to defer to the Executive Branch, even when it ignores the Legislative Branch. The United States Constitution does not give the Executive Branch that type of power. The Supreme Court articulates this foundational tenet of separation of powers in *Loper Bright* in the context of the *Chevron* doctrine. *Id.* at 391. It is the courts—not administrative agencies—that

say what the law means. The Court should reject the Department's attempt to stop it from doing so here.

a. <u>The standard of review does not prevent this Court from reviewing the Board's statutory interpretation.</u>

The Department does not attempt to argue that its preferred interpretation of Section 7513(a) is consistent with the statutory language. Nor does the Department dispute that the Supreme Court in *Loper Bright* "emphasized" that the "the field of 'legal interpretation' . . . [is] 'the province and duty of the judicial department.'" Response at 27-28 (quoting *Loper Bright*, 603 U.S. at 412). In other words, the Department concedes that the Board's statutory interpretation of Section 7513(a) in *Chandler* is indefensible. And it concedes that statutory interpretation is not the Board's job.

Nonetheless, the Department tells the Court that it cannot perform its duty of legal interpretation because of the deferential standard of review. Response at 27. But as the Department concedes, "the 'deference' this Court owes to the board" is "in the *application* of section 7513(a)'s 'such cause as will promote the efficiency of the service' requirement *to the facts of Mr. Harrow's case.*" *Id.* (citing 5 U.S.C. § 7703(c) (emphases added).) The Court does *not* owe the Board's *legal interpretations* deference. *Harrington v. Dep't of Veterans Affs.*, 981 F.3d 1356, 1358 (Fed. Cir. 2020) ("We review the Board's determinations of law for correctness without deference to the Board's decision."); *Banks*

*v. Merit Sys. Prot. Bd.*, 854 F.3d 1360, 1361 (Fed. Cir. 2017) ("The Board's statutory interpretations are reviewed for correctness as a matter of law."). And this Court exercises "'*independent judgment*' about the correctness of an agency's statutory interpretation." *Acuna v. Equal Emp. Opportunity Comm'n*, 2025 WL 685915, *2 (Fed. Cir. Mar. 4, 2025) (quoting *Loper Bright*, 603 U.S. at 412) (emphasis added).

The Department is asking this Court to show an extreme level of deference to the Board's legal interpretation—a degree of deference that would allow the Board's interpretation to stand even though it is *inconsistent with* the plain language of the law. That level of deference is not mandated by the standard of review in Section 7703. Instead, the Court should exercise its independent judgment and conclude that the Board's decision cannot stand.

b.   <u>*Einboden* does not require the Court to affirm Mr. Harrow's furlough.</u>

Next, the Department tells the Court it is bound by "binding precedent" that has "already addressed what 'promot[ing] the efficiency of the service' means in the context of a furlough action, and held that the standard applied by the [B]oard is 'correct.'" Response at 26 (quoting *Einboden*, 802 F.3d at 1325).

In *Einboden*, the Court stated the "Board interpreted the statute's requirement that the furlough 'will promote the efficiency of the service' as requiring that the decision be a reasonable management solution to

the financial restrictions placed on the agency and that the agency determine which employees to furlough in a fair and even manner." 802 F.3d at 1325. That is the standard the Department says the Court adopted. Response at 26.

But that is not the standard the Board applied in Mr. Harrow's case.[4] Instead, the Board affirmed Mr. Harrow's furlough based on a single finding: that the Department faced a budget shortfall due to the sequestration. *See* Opening Br. at 30 (citing APPX0023); *see also* APPX0002 (adopting the initial decision as the Board's final decision). The Board made no additional findings about the reasonableness of the Department's furlough decision or whether the Department applied the furlough to employees in a fair and even manner. APPX0023. Nor did the Board address the nexus requirement this Court described in *Einboden. Einboden*, 802 F.3d at 1325-26 ("We give wide berth to agency decisions as to what type of adverse action is necessary to 'promote the efficiency of the service,' *provided that the agency's decision bears some nexus to the reason for the adverse action*." (emphasis added) (citing *Doe v. Dep't of Justice*, 565 F.3d 1375, 1379

---

[4] The Department cites *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1569 (Fed. Cir. 1986) for the proposition that "The Court will not assume that the lower tribunal 'which . . . repeatedly articulated the correct standard . . . veered from the proper standard.'" Response at 25. Mr. Harrow is not asking the Court to assume anything. Rather, Mr. Harrow respectfully requests that the Court look at the *evidence* (or lack of evidence) that the Board cited below and decide if it supports the Board's conclusion. Reciting the standard is not evidence.

(Fed. Cir. 2009)); *see generally* APPX0014-APPX0025. So the Board's decision fails under *Einboden*.

To the extent the Department argues that *Einboden* requires this Court to defer to the Board's interpretation of Section 7513(a) even if that interpretation defies the statutory language, *Einboden* is no longer good law after *Loper Bright* and should be overruled.

Contrary to the Department's assertions, *Loper Bright* is relevant here. According to the Department, the Court "made no mention" of *Chevron* in *Einboden*, and so *Loper Bright* is "irrelevant." Response at 26. But just before the language the Department quotes—and twice more in *Einboden*—this Court cites *Berlin v. Dep't of Labor*, 772 F.3d 890, 894-95 (Fed. Cir. 2014). *Einboden*, 802 F.3d at 1325, 1326. That makes sense. In *Berlin*, this Court, citing *Chevron*, adopted the Board's interpretation of "good cause" for adverse actions against administrative law judges under Section 7521. *Berlin*, 772 F.3d at 894. As this Court has held, the similarity of Sections 7521 and 7512—which defines the adverse actions covered by Section 7513(a), and so applies here—dictates that they be "must be construed consistently." *Butler v. Soc. Sec. Admin.*, 331 F.3d 1368, 1372 (Fed. Cir. 2003); *see also id.* (describing Sections 7521 and 7512 as "sister provision[s]"). Indeed, this Court has said that "*Chevron* would normally apply to the Board's interpretation of the CSRA," of which Section 7513(a) is a part. *Kaplan*

*v. Conyers*, 733 F.3d 1148, 1156 n.8 (Fed. Cir. 2013).[5] *See also Garcia*, 437 F.3d at 1338; *Tunik v. Merit Sys. Prot. Bd.*, 407 F.3d 1326, 1336 (Fed. Cir. 2005); *Lovshin v. Dep't of the Navy*, 767 F.2d 826, 840 (Fed. Cir. 1985).

The structure of the *Einboden* decision also suggests it is based on the deference standard articulated in *Chevron* that has now been overturned. In *Einboden*, the Court stated that *Chandler*'s interpretation is "correct," but it did not examine Section 7513(a)'s plain language, the structure or legislative history of the CSRA, or otherwise perform statutory interpretation to support its conclusion. *See Einboden*, 802 F.3d at 1325. Instead, the Court declined to engage with Mr. Einboden's specific challenge to the way the Navy implemented the furlough in his case, saying "It is not our role to second guess agency decisions as to how to prioritize funding when faced with a budget shortfall." *Id.* (citing *Berlin*, 772 F.3d at 894-95). In support, the Court cited *Berlin*, 772 F.3d at 894-95, which, as discussed above, cites

---

[5] Notably, in *Kaplan*, this Court declined to apply *Chevron* deference after stating that "where the agency's interpretation raises serious constitutional doubts, courts are required to inquire whether there exists another permissible interpretation." *Id.* (citing *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. and Const. Trades Council,* 485 U.S. 568, 575-76 (1988)). *See also id.* ("The principle of separation of powers dictates here and we do not read the CSRA to 'assum[e] that Congress . . . casually authorize [sic] administrative agencies to interpret a statute to push the limit of congressional authority.'" (quoting *Solid Waste Agency of N. Cook Cnty.*, 531 U.S. 159, 172-73 (2001)). The Court's reasoning applies with equal force here, despite *Chevron* being overturned.

*Chevron*. *Berlin*, 722 F.3d at 894 ("And we have made clear that, as a general matter, we defer to the Board's reasonable interpretation of 'good cause' because 'the Board has exclusive rulemaking and adjudicatory authority with respect to section 7521.'" (quoting *Long v. Soc. Sec. Admin.*, 635 F.3d 526, 534 (Fed. Cir. 2011) and citing *Chevron*, 467 U.S. at 842-43). Accordingly, with *Chevron* overturned, *Einboden* is no longer good law.

The Department tells this Court that it is nonetheless bound by *Einboden* to affirm Mr. Harrow's furlough. But to the extent *Einboden* adopts an interpretation of Section 7513(a) that is inconsistent with the statutory language, this Court "should exercise the judicial power—not perpetuate a usurpation of the legislative power—and correct the error." *Gamble v. United States*, 587 U.S. 678, 719 (2019) (Thomas, J., concurring); *see also id.* at 718 ("When faced with a demonstrably erroneous precedent, my rule is simple: We should not follow it."). Here, it appears that the Department is asking the Court to follow demonstrably erroneous precent. The Court need not—and should not—accept the Department's invitation.

To the extent necessary, Mr. Harrow requests *en banc* review to formally overrule *Einboden*. *See* Fed. Cir. R. 40(a)(4) (permitting a party to "argue, in its brief and at oral argument, to overrule a binding precedent without petitioning for a hearing *en banc*," after which the

"panel will decide whether to ask the judges in regular active service to consider hearing the case *en banc*").

## III.  Conclusion

For these reasons, and those articulated in Mr. Harrow's Opening Brief, this Court should grant Mr. Harrow's Petition, reverse Mr. Harrow's furlough, and order the Department to award Mr. Harrow back pay with interest.

Date: May 30, 2025                    Respectfully Submitted,

*/s/ Joshua P. Davis*
Joshua P. Davis
Kyla J. Gibboney
**BERGER MONTAGUE PC**
505 Montgomery St., Ste. 625
San Francisco, CA 94111
Telephone: (800) 424-6690
*jdavis@bm.net*
*kgibboney@bm.net*

*Counsel for Petitioner*
*Stuart R. Harrow*

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

**CERTIFICATE OF COMPLIANCE
<u>WITH THE TYPE-VOLUME LIMITATIONS</u>**


         Case Number:  2022-2254
Short Case Caption:  Harrow v. Dep't of Defense

     The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 6,078 words, excluding those items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), and Fed. Cir. R. 32(b)(2).


Date: May 30, 2025                    */s/Joshua P. Davis*
                                     Joshua P. Davis